ORIGINAL

1  David Allen CO-000683-3
   P.O. Box 503-Unit#1
2  Coalinga, Ca 93210-5003
   In Pro. Per.
3  Tel: (559) 934-0892

E-filing

RECEIVED

AUG 26 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

4

5

6              IN THE UNITED STATES DISTRICT COURT

7             FOR THE NORTHERN DISTRICT OF CALIFORNIA

               SAN FRANCISCO DIVISION

8                                                           JSW

9  DAVID OLIVER ALLEN

10         Petitioner                CV  08      4080
                                         Case No.
11 v.                               NOTICE AND INDEX OF EXHIBITS TO
                                    BE LODGED IN SUPPORT OF PETITION
12 PAM AHLIN, EXECUTIVE DIRECTOR       FOR WRIT OF HABEAS CORPUS

13         Respondent
   _____/
14                                                      (PR)

15              NOTICE AND INDEX OF EXHIBITS TO BE
                LODGED IN SUPPORT OF PETITION FOR
16              WRIT OF HABEAS CORPUS

17      Comes now petitioner with the following exhibits in support of the Petition

18 for Writ of Habeas Corpus:

19      1. Exhibit A- Copy of Detention Order dated July 6, 2007

20      2. Exhibit B- Copy of California's Proposition 83

21      3. Exhibit C- Miscellanous Decisions of the California Board of Parole
           Hearings, dated April 29, 2007
22
        4. Exhibit D- Reporter's Transcript of Proceeding for January 10, 1997
23
        5. Exhibit E- SVP petition filed May 24, 2007
24
        6. Exhibit F- Clinical Evaluator Handbook and Standardized Assesment Protocol
25         (2004)

26      7. Exhibit G- Consent Judgement CV06-2667GPS

27

28

1 | **DATED:** August 21, 2008                          Respectfully Submitted,

2

3                                                    David Allen CO-000683-3
                                                     P.O. Box 5003-Unit#1
4                                                    Coalinga, Ca 93210-5003
                                                     In Pro. Per.
5                                                    Tel: (559) 934-0892

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

1

ENDORSED
FILED
ALAMEDA COUNTY

JUL 06 2007
Janet Schoenmann
, Exec. Off./Clerk

2

3

4

5  ## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

6  ## IN AND FOR THE COUNTY OF ALAMEDA

7  ### RENE C. DAVIDSON COURTHOUSE

8  THE PEOPLE OF THE STATE OF CALIFORNIA,    )    No. 155532
                                            )
9                              Petitioner,  )    PROBABLE CAUSE FINDING
                                            )    AND DETENTION ORDER
10                                          )    PURSUANT TO WELFARE &
                                            )    INSTITUTIONS CODE SECTION
11                    v.                     )    6602
                                            )
12  DAVID ALLEN,                            )
                                            )
13                              Respondent. )
    ─────────────────────────────────────── )

14

15      Pursuant to Welfare & Institutions Code section ("WIC") 6602 and Cooley v. Superior

16  Court (Marentez) (2002) 29 Cal.4th 228, the Court reviewed the Petition and supporting evidence

17  produced at the hearing in the above entitled cause and finds probable cause to believe that the

18  Respondent, David Allen, is a sexually violent predator as defined in WIC 6600(a) in that:

19  (1)    The Respondent has been convicted of at least one sexually violent offense described in

20         WIC 6600;

21  (2)    The Respondent currently has a diagnosed mental disorder;

22  (3)    The diagnosed mental disorder makes the Respondent a danger to the health and safety of

23         others in that he will likely engage in sexually violent, predatory criminal conduct without

24         appropriate treatment and custody.

25  Pursuant to this finding, it is hereby ordered that the Respondent be detained in a secure facility

26  until a trial on the above entitled matter is completed. The Sheriff of Alameda County shall

27  transport the Respondent to Coalinga State Hospital, where he shall be retained until further order

28

1    of the Court.

2

3

4    **JOAN S. CARTWRIGHT**    $\underline{7 \cdot 6 \cdot 07}$
                                          Date

5    The Honorable Joan Cartwright
     Judge of the Superior Court

6

7

8

9

10

11

12

13

14                                        

15

16

17

18

19

20

21

22

23

24

25

26

27

28
OFFICE OF

# EXHIBIT "B"

*include a bond counsel opinion to the effect that the interest on the bonds is excluded from gross income for federal tax purposes under designated conditions, the Treasurer may maintain separate accounts for the bond proceeds invested and for the investment earnings on those proceeds, and may use or direct the use of those proceeds or earnings to pay any rebate, penalty, or other payment required under federal law or take any other action with respect to the investment and use of those bond proceeds, as may be required or desirable under federal law in order to maintain the tax-exempt status of those bonds and to obtain any other advantage under federal law on behalf of the funds of this state.*

*5096.963   For the purposes of carrying out this chapter, the Director of Finance may authorize the withdrawal from the General Fund of an amount or amounts not to exceed the amount of the unsold bonds that have been authorized by the committee to be sold for the purpose of carrying out this chapter. Any amounts withdrawn shall be deposited in the fund. Any money made available under this section shall be returned to the General Fund, with interest at the rate earned by the money in the Pooled Money Investment Account, from proceeds received from the sale of bonds for the purpose of carrying out this chapter.*

*5096.964.   All money deposited in the fund that is derived from premium and accrued interest on bonds sold pursuant to this chapter shall be reserved in the fund and shall be available for transfer to the General Fund as a credit to expenditures for bond interest.*

*5096.965.   Pursuant to Chapter 4 (commencing with Section 16720) of Part 3 of Division 4 of Title 2 of the Government Code, the cost of bond issuance shall be paid out of the bond proceeds. These costs shall be shared proportionally by each program funded through this bond act.*

*5096.966.   The bonds issued and sold pursuant to this chapter may be refunded in accordance with Article 6 (commencing with Section 16780) of Chapter 4 of Part 3 of Division 4 of Title 2 of the Government Code, which is a part of the State General Obligation Bond Law. Approval by the electors of the state for the issuance of the bonds under this chapter shall include approval of the issuance of any bonds issued to refund any bonds originally issued under this chapter or any previously issued refunding bonds.*

*5096.967.   The Legislature hereby finds and declares that, inasmuch as the proceeds from the sale of bonds authorized by this chapter are not "proceeds of taxes" as that term is used in Article XIII B of the California Constitution, the disbursement of these proceeds is not subject to the limitations imposed by that article.*

## PROPOSITION 83

This initiative measure is submitted to the people in accordance with the provisions of Section 8 of Article II of the California Constitution.

This initiative measure amends and adds sections to the Penal Code and amends sections of the Welfare and Institutions Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW

SECTION 1.   SHORT TITLE

This Act shall be known and may be cited as "The Sexual Predator Punishment and Control Act: Jessica's Law."

SEC. 2.   FINDINGS AND DECLARATIONS

The People find and declare each of the following:

(a) The State of California currently places a high priority on maintaining public safety through a highly skilled and trained law enforcement as well as laws that deter and punish criminal behavior.

(b) Sex offenders have very high recidivism rates. According to a 1998 report by the U.S. Department of Justice, sex offenders are the least likely to be cured and the most likely to reoffend, and they prey on the most innocent members of our society. More than two-thirds of the victims of rape and sexual assault are under the age of 18. Sex offenders have a dramatically higher recidivism rate for their crimes than any other type of violent felon.

(c) Child pornography exploits children and robs them of their innocence. FBI studies have shown that pornography is very influential in the actions of sex offenders. Statistics show that 90% of the predators

who molest children have had some type of involvement with pornography. Predators often use child pornography to aid in their molestation.

(d) The universal use of the Internet has also ushered in an era of increased risk to our children by predators using this technology as a tool to lure children away from their homes and into dangerous situations. Therefore, to reflect society's disapproval of this type of activity, adequate penalties must be enacted to ensure predators cannot escape prosecution.

(e) With these changes, Californians will be in a better position to keep themselves, their children, and their communities safe from the threat posed by sex offenders.

(f) It is the intent of the People in enacting this measure to help Californians better protect themselves, their children, and their communities; it is not the intent of the People to embarrass or harass persons convicted of sex offenses.

(g) Californians have a right to know about the presence of sex offenders in their communities, near their schools, and around their children.

(h) California must also take additional steps to monitor sex offenders, to protect the public from them, and to provide adequate penalties for and safeguards against sex offenders, particularly those who prey on children. Existing laws that punish aggravated sexual assault, habitual sexual offenders, and child molesters must be strengthened and improved. In addition, existing laws that provide for the commitment and control of sexually violent predators must be strengthened and improved.

(i) Additional resources are necessary to adequately monitor and supervise sexual predators and offenders. It is vital that the lasting effects of the assault do not further victimize victims of sexual assault.

(j) Global Positioning System technology is an useful tool for monitoring sexual predators and other sex offenders and is a cost effective measure for parole supervision. It is critical to have close supervision of this class of criminals to monitor these offenders and prevent them from committing other crimes.

(k) California is the only state, of the number of states that have enacted laws allowing involuntary civil commitments for persons identified as sexually violent predators, which does not provide for indeterminate commitments. California automatically allows for a jury trial every two years irrespective of whether there is any evidence to suggest or prove that the committed person is no longer a sexually violent predator. As such, this act allows California to protect the civil rights of those persons committed as a sexually violent predator while at the same time protect society and the system from unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person.

SEC. 3.   Section 209 of the Penal Code is amended to read:

209.   (a) Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another person by any means whatsoever with intent to hold or detain, or who holds or detains, that person for ransom, reward or to commit extortion or to exact from another person any money or valuable thing, or any person who aids or abets any such act, is guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the state prison for life without possibility of parole in cases in which any person subjected to any such act suffers death or bodily harm, or is intentionally confined in a manner which exposes that person to a substantial likelihood of death, or shall be punished by imprisonment in the state prison for life with the possibility of parole in cases where no such person suffers death or bodily harm.

(b)(1) Any person who kidnaps or carries away any individual to ~~commit robbery, rape, spousal rape, oral copulation, sodomy, or sexual penetration in~~ *any* violation of Section *261, 262, 286, or 289,* shall be punished by imprisonment in the state prison for life *with the* possibility of parole.

(2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense.

(c) In all cases in which probation is granted, the court shall, except in unusual cases where the interests of justice would best be served by a lesser penalty, require as a condition of the probation that the person be confined in the county jail for 12 months. If the court grants probation without requiring the defendant to be confined in the county jail for 12 months, it shall specify its reason or reasons for imposing a lesser penalty.

(d) Subdivision (b) shall not be construed to supersede or affect




# TEXT OF PROPOSED LAWS ★ ★ ★

Section 667.61 A person may be charged with a violation of subdivision (b) and Section 667.61. However, a person may not be punished under subdivision (b) and Section 667.61 for the same act that constitutes a violation of both subdivision (b) and Section 667.61.

SEC. 4.    Section 220 of the Penal Code is amended to read:

220.    ~~Every~~ *(a) Except as provided in subdivision (b),* any person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 ~~is punishable~~ *shall be punished* by imprisonment in the state prison for two, four, or six years.

*(b) Any person who, in the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460, assaults another with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for life with the possibility of parole.*

SEC. 5.    Section 269 of the Penal Code is amended to read:

269.    (a) Any person who commits any of the following acts upon a child who is under 14 years of age and ~~10~~ *seven* or more years younger than the person is guilty of aggravated sexual assault of a child:

(1) ~~A~~ *Rape, in* violation of paragraph (2) *or (6)* of subdivision (a) of Section 261.

(2) ~~A~~ *Rape or sexual penetration, in concert, in* violation of Section 264.1.

(3) Sodomy, in violation of *paragraph (2) or (3) of subdivision (c), or subdivision (d), of* Section 286~~, when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person~~.

(4) Oral copulation, in violation of *paragraph (2) or (3) of subdivision (c), or subdivision (d), of* Section 288a~~, when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person~~.

(5) ~~A~~ *Sexual penetration, in* violation of subdivision (a) of Section 289.

(b) Any person who violates this section is guilty of a felony and shall be punished by imprisonment in the state prison for 15 years to life.

*(c) The court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6.*

SEC. 6.    Section 288.3 is added to the Penal Code, to read:

288.3.    *(a) Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 288, 288a, 288.2, 289, 311.1, 311.2, 311.4 or 311.11 involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense.*

*(b) As used in this section, "contacts or communicates with" shall include direct and indirect contact or communication that may be achieved personally or by use of an agent or agency, any print medium, any postal service, a common carrier or communication common carrier, any electronic communications system, or any telecommunications, wire, computer, or radio communications device or system.*

*(c) A person convicted of a violation of subdivision (a) who has previously been convicted of a violation of subdivision (a) shall be punished by an additional and consecutive term of imprisonment in the state prison for five years.*

SEC. 7.    Section 290.3 of the Penal Code is amended to read:

290.3.    (a) Every person who is convicted of any offense specified in subdivision (a) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for ~~violation~~ *commission* of the underlying offense, be punished by a fine of ~~two~~ *three* hundred dollars (~~$200~~) *($300)* upon the first conviction or a fine of ~~three~~ *five* hundred dollars (~~$300~~) *($500)* upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine.

An amount equal to all fines collected pursuant to this subdivision during the preceding month upon conviction of, or upon the forfeiture of bail by, any person arrested for, or convicted of, committing an offense specified in subdivision (a) of Section 290, shall be transferred once a month by the county treasurer to the Controller for deposit in the General Fund. Moneys deposited in the General Fund pursuant to this subdivision shall be transferred by the Controller as provided in subdivision (b).

(b) ~~Out~~ *Except as provided in subdivision (d), out* of the moneys deposited pursuant to subdivision (a) as a result of second and subsequent convictions of Section 290, one-third shall first be transferred to the Department of Justice Sexual Habitual Offender Fund, as provided in paragraph (1) of this subdivision. Out of the remainder of all moneys deposited pursuant to subdivision (a), 50 percent shall be transferred to the Department of Justice Sexual Habitual Offender Fund, as provided in paragraph (1), 25 percent shall be transferred to the Department of Justice DNA Testing Fund, as provided in paragraph (2), and 25 percent shall be allocated equally to counties that maintain a local DNA testing laboratory, as provided in paragraph (3).

(1) Those moneys so designated shall be transferred to the Department of Justice Sexual Habitual Offender Fund created pursuant to paragraph (5) of subdivision (b) of Section 11170 and, when appropriated by the Legislature, shall be used for the purposes of Chapter 9.5 (commencing with Section 13885) and Chapter 10 (commencing with Section 13890) of Title 6 of Part 4 for the purpose of monitoring, apprehending, and prosecuting sexual habitual offenders.

(2) Those moneys so designated shall be directed to the Department of Justice and transferred to the Department of Justice DNA Testing Fund, which is hereby created, for the exclusive purpose of testing deoxyribonucleic acid (DNA) samples for law enforcement purposes. The moneys in that fund shall be available for expenditure upon appropriation by the Legislature.

(3) Those moneys so designated shall be allocated equally and distributed quarterly to counties that maintain a local DNA testing laboratory. Before making any allocations under this paragraph, the Controller shall deduct the estimated costs that will be incurred to set up and administer the payment of these funds to the counties. Any funds allocated to a county pursuant to this paragraph shall be used by that county for the exclusive purpose of testing DNA samples for law enforcement purposes.

(c) Notwithstanding any other provision of this section, the Department of Corrections or the Department of the Youth Authority may collect a fine imposed pursuant to this section from a person convicted of a violation of any offense listed in subdivision (a) of Section 290, that results in incarceration in a facility under the jurisdiction of the Department of Corrections or the Department of the Youth Authority. All moneys collected by the Department of Corrections or the Department of the Youth Authority under this subdivision shall be transferred, once a month, to the Controller for deposit in the General Fund, as provided in subdivision (a), for transfer by the Controller, as provided in subdivision (b).

*(d) An amount equal to one hundred dollars for every fine imposed pursuant to subdivision (a) in excess of one hundred dollars shall be transferred to the Department of Corrections and Rehabilitation to defray the cost of the global positioning system used to monitor sex offender parolees.*

SEC. 8.    Section 311.11 of the Penal Code is amended to read:

311.11.    (a) Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a public offense *felony* and shall be punished by imprisonment in the *state prison, or a* county jail for up to one year, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both the fine and imprisonment.

(b) If ~~a~~ *Every* person *who commits a violation of subdivision (a), and who* has been previously convicted of a violation of this section, ~~or of a violation of subdivision (b) of Section 311.2, or subdivision (b) of Section 311.4, he or she~~ *an offense described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290, or an attempt to commit any of the above-mentioned offenses,* is guilty of a felony and shall be punished by imprisonment *in the state prison* for two, four, or six years.

(c) It is not necessary to prove that the matter is obscene in order to establish a violation of this section.

(d) This section does not apply to drawings, figurines, statues, or any film rated by the Motion Picture Association of America, nor does it apply to live or recorded telephone messages when transmitted, disseminated, or distributed as part of a commercial transaction.

SEC. 9. Section 667.5 of the Penal Code is amended to read:

667.5. Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows:

(a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition to and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior offense was one of the violent felonies specified in subdivision (c). However, no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction.

(b) Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction.

(c) For the purpose of this section, "violent felony" shall mean any of the following:

(1) Murder or voluntary manslaughter.

(2) Mayhem.

(3) Rape as defined in paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 262.

(4) Sodomy by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person *as defined in subdivision (c) or (d) of Section 286.*

(5) Oral copulation by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person *as defined in subdivision (c) or (d) of Section 288a.*

(6) Lewd acts on a child under the age of 14 years *or lascivious act* as defined in *subdivision (a) or (b) of* Section 288.

(7) Any felony punishable by death or imprisonment in the state prison for life.

(8) Any felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7, *12022.8,* or 12022.9 on or after July 1, 1977, or as specified prior to July 1, 1977, in Sections 213, 264, and 461, or any felony in which the defendant uses a firearm which use has been charged and proved as provided in *subdivision (a) of Section 12022.3, or* Section 12022.5 or 12022.55.

(9) Any robbery.

(10) Arson, in violation of subdivision (a) or (b) of Section 451.

(11) The offense *Sexual penetration as* defined in subdivision (a) *or (j)* of Section 289 where the act is accomplished against the victim's will by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.

(12) Attempted murder.

(13) A violation of Section 12308, 12309, or 12310.

(14) Kidnapping.

(15) Assault with the intent to commit mayhem, rape, sodomy, or oral copulation *a specified felony,* in violation of Section 220.

(16) Continuous sexual abuse of a child, in violation of Section 288.5.

(17) Carjacking, as defined in subdivision (a) of Section 215.

(18) A *Rape, spousal rape, or sexual penetration, in concert, in* violation of Section 264.1.

(19) Extortion, as defined in Section 518, which would constitute a felony violation of Section 186.22 of the Penal Code.

(20) Threats to victims or witnesses, as defined in Section 136.1, which would constitute a felony violation of Section 186.22 of the Penal Code.

(21) Any burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary.

(22) Any violation of Section 12022.53.

(23) A violation of subdivision (b) or (c) of Section 11418. The Legislature finds and declares that these specified crimes merit special consideration when imposing a sentence to display society's condemnation for these extraordinary crimes of violence against the person.

(d) For the purposes of this section, the defendant shall be deemed to remain in prison custody for an offense until the official discharge from custody or until release on parole, whichever first occurs, including any time during which the defendant remains subject to reimprisonment for escape from custody or is reimprisoned on revocation of parole. The additional penalties provided for prior prison terms shall not be imposed unless they are charged and admitted or found true in the action for the new offense.

(e) The additional penalties provided for prior prison terms shall not be imposed for any felony for which the defendant did not serve a prior separate term in state prison.

(f) A prior conviction of a felony shall include a conviction in another jurisdiction for an offense which, if committed in California, is punishable by imprisonment in the state prison if the defendant served one year or more in prison for the offense in the other jurisdiction. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense which includes all of the elements of the particular felony as defined under California law if the defendant served one year or more in prison for the offense in the other jurisdiction.

(g) A prior separate prison term for the purposes of this section shall mean a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration.

(h) Serving a prison term includes any confinement time in any state prison or federal penal institution as punishment for commission of an offense, including confinement in a hospital or other institution or facility credited as service of prison time in the jurisdiction of the confinement.

(i) For the purposes of this section, a commitment to the State Department of Mental Health as a mentally disordered sex offender following a conviction of a felony, which commitment exceeds one year in duration, shall be deemed a prior prison term.

(j) For the purposes of this section, when a person subject to the custody, control, and discipline of the Director of Corrections is incarcerated at a facility operated by the Department of the Youth Authority, that incarceration shall be deemed to be a term served in state prison.

(k) Notwithstanding subdivisions (d) and (g) or any other provision of law, where one of the new offenses is committed while the defendant is temporarily removed from prison pursuant to Section 2690 or while the defendant is transferred to a community facility pursuant to Section 3416, 6253, or 6263, or while the defendant is on furlough pursuant to Section 6254, the defendant shall be subject to the full enhancements provided for in this section.

This subdivision shall not apply when a full, separate, and consecutive term is imposed pursuant to any other provision of law.

SEC. 10. Section 667.51 of the Penal Code is amended to read:

667.51. (a) Any person who is found guilty *convicted* of violating Section 288 *or 288.5* shall receive a five-year enhancement for a prior conviction of an offense listed *specified* in subdivision (b); provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense that results in a felony conviction.

(b) Section 261, 262, 264.1, 269, 285, 286, 288, 288a, 288.5, or 289, or any offense committed in another jurisdiction that includes all of the elements of any of the offenses set forth *specified* in this subdivision.

(c) Section 261, 264.1, 286, 288, 288a, 288.5, or 289, or any offense committed in another jurisdiction that includes all of the elements of any of the offenses set forth in this subdivision.

(d) A violation of Section 288 *or 288.5* by a person who has been



previously convicted two or more times of an offense ~~listed~~ *specified* in subdivision ~~(c) is punishable as a felony~~ *(b) shall be punished* by imprisonment in the state prison for 15 years to life. ~~However, if the two or more prior convictions were for violations of Section 288, this subdivision is applicable only if the current violation or at least one of the prior convictions is for an offense other than a violation of subdivision (a) of Section 288. For purposes of this subdivision, a prior conviction is required to have been for charges brought and tried separately. The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section, but that person shall not otherwise be released on parole prior to that time.~~

SEC. 11.   Section 667.6 of the Penal Code is amended to read:

667.6.   (a) Any person who is ~~found guilty of violating paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261, paragraph (1), (4), or (5) of subdivision (a) of Section 262, Section 264.1, subdivision (b) of Section 288, Section 288.5 or subdivision (a) of Section 289, of committing sodomy in violation of subdivision (k) of Section 286, of committing oral copulation in violation of subdivision (k) of Section 288a, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person~~ *convicted of an offense specified in subdivision (e) and* who has been convicted previously of any of those offenses shall receive a five-year enhancement for each of those prior convictions ~~provided that no enhancement shall be imposed under this subdivision for any conviction occurring prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction. In addition to the five-year enhancement imposed under this subdivision, the court also may impose a fine not to exceed twenty thousand dollars ($20,000) for anyone sentenced under these provisions. The fine imposed and collected pursuant to this subdivision shall be deposited in the Victim Witness Assistance Fund to be available for appropriation to fund child sexual exploitation and child sexual abuse victim counseling centers and prevention programs established pursuant to Section 13837.~~

(b) Any person ~~who~~ *is* convicted of an offense specified in subdivision ~~(a)~~ *(e) and* who has served two or more prior prison terms as defined in Section 667.5 for any ~~offense specified in subdivision (a),~~ *of those offenses* shall receive a 10-year enhancement for each of those prior terms ~~provided that no additional enhancement shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction. In addition to the 10-year enhancement imposed under this subdivision, the court also may impose a fine not to exceed twenty thousand dollars ($20,000) for any person sentenced under this subdivision. The fine imposed and collected pursuant to this subdivision shall be deposited in the Victim Witness Assistance Fund to be available for appropriation to fund child sexual exploitation and child sexual abuse victim counseling centers and prevention programs established pursuant to Section 13837.~~

(c) In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of ~~Section 220, other than an assault with intent to commit mayhem, provided that the person has been convicted previously of violating Section 220 for an offense other than an assault with intent to commit mayhem, paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261, paragraph (1), (4), or (5) of subdivision (a) of Section 262, Section 264.1, subdivision (b) of Section 288, Section 288.5 or subdivision (a) of Section 289, of committing sodomy in violation of subdivision (k) of Section 286, of committing oral copulation in violation of subdivision (k) of Section 288a, of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person whether or not the crimes were committed during a single transaction~~ *an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e).* If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but

shall commence at the time the person otherwise would have been released from prison.

(d) A full, separate, and consecutive term shall be ~~served~~ *imposed* for each violation of ~~Section 220, other than an assault with intent to commit mayhem, provided that the person has been convicted previously of violating Section 220 for an offense other than an assault with intent to commit mayhem, paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261, paragraph (1), (4), or (5) of subdivision (a) of Section 262, Section 264.1, subdivision (b) of Section 288, subdivision (a) of Section 289, of committing sodomy in violation of subdivision (k) of Section 286, of committing oral copulation in violation of subdivision (k) of Section 288a, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person~~ *an offense specified in subdivision (e)* if the crimes involve separate victims or involve the same victim on separate occasions.

In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions.

The term shall be served consecutively to any other term of imprisonment and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison.

(e) This section shall apply to the following offenses:

(1)  Rape, in violation of paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261.

(2)  Spousal rape, in violation of paragraph (1), (4), or (5) of subdivision (a) of Section 262.

(3)  Rape, spousal rape, or sexual penetration, in concert, in violation of Section 264.1.

(4)  Sodomy, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d) or (k), of Section 286.

(5)  Lewd or lascivious act, in violation of subdivision (b) of Section 288.

(6)  Continuous sexual abuse of a child, in violation of Section 288.5.

(7)  Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d) or (k), of Section 288a.

(8)  Sexual penetration, in violation of subdivision (a) or (g) of Section 289.

(9)  As a present offense under subdivision (c) or (d), assault with intent to commit a specified sexual offense, in violation of Section 220.

(10)  As a prior conviction under subdivision (a) or (b), an offense committed in another jurisdiction that includes all of the elements of an offense specified in this subdivision.

(f)  In addition to any enhancement imposed pursuant to subdivision (a) or (b), the court may also impose a fine not to exceed twenty thousand dollars ($20,000) for anyone sentenced under those provisions. The fine imposed and collected pursuant to this subdivision shall be deposited in the Victim-Witness Assistance Fund to be available for appropriation to fund child sexual exploitation and child sexual abuse victim counseling centers and prevention programs established pursuant to Section 13837. If the court orders a fine to be imposed pursuant to *this* subdivision ~~(a)~~ or ~~(b),~~ the actual administrative cost of collecting that fine, not to exceed 2 percent of the total amount paid, may be paid into the general fund of the county treasury for the use and benefit of the county.

SEC. 12.   Section 667.61 of the Penal Code is amended to read:

667.61.   (a) ~~A~~ *Any* person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 25 years to life ~~and shall not be eligible for release on parole for 25 years~~

except as provided in subdivision (j).

(b) Except as provided in subdivision (a), a *any* person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for *15 years to* life and shall not be eligible for release on parole for 15 years except as provided in subdivision (j).

(c) This section shall apply to any of the following offenses:

(1) A *Rape, in* violation of paragraph (2) *or (6)* of subdivision (a) of Section 261.

(2) A *Spousal rape, in* violation of paragraph (1) *or (4)* of subdivision (a) of Section 262.

(3) A *Rape, spousal rape, or sexual penetration, in concert, in* violation of Section 264.1.

(4) A *Lewd or lascivious act, in* violation of subdivision (b) of Section 288.

(5) A *Sexual penetration, in* violation of subdivision (a) of Section 289.

(6) Sodomy or oral copulation *Sodomy,* in violation of *paragraph (2) or (3) of subdivision (c), or subdivision (d), of* Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.

(7) A *Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of* Section 288a.

(8) *Lewd or lascivious act, in* violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066.

(9) *Continuous sexual abuse of a child, in violation of Section 288.5.*

(d) The following circumstances shall apply to the offenses specified in subdivision (c):

(1) The defendant has been previously convicted of an offense specified in subdivision (c), including an offense committed in another jurisdiction that includes all of the elements of an offense specified in subdivision (c).

(2) The defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c).

(3) The defendant inflicted aggravated mayhem or torture on the victim or another person in the commission of the present offense in violation of Section 205 or 206.

(4) The defendant committed the present offense during the commission of a burglary *of the first degree,* as defined in subdivision (a) of Section 460, with intent to commit an offense specified in subdivision (c).

(5) *The defendant committed the present offense in violation of Section 264.1, subdivision (d) of Section 286, or subdivision (d) of Section 288a, and, in the commission of that offense, any person committed any act described in paragraph (2), (3), or (4) of this subdivision.*

(e) The following circumstances shall apply to the offenses specified in subdivision (c):

(1) Except as provided in paragraph (2) of subdivision (d), the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5.

(2) Except as provided in paragraph (4) of subdivision (d), the defendant committed the present offense during the commission of a burglary, as defined in subdivision (a) of Section 460, or during the commission of a burglary of a building, including any commercial establishment, which was then closed to the public, in violation of Section 459.

(3) The defendant personally inflicted great bodily injury on the victim or another person in the commission of the present offense in violation of Section 12022.53, 12022.7, or 12022.8.

(4) The defendant personally used a dangerous or deadly weapon or *a* firearm in the commission of the present offense in violation of Section 12022, 12022.3, 12022.5, or 12022.53.

(5) The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim.

(6) The defendant engaged in the tying or binding of the victim or another person in the commission of the present offense.

(7) The defendant administered a controlled substance to the victim by force, violence, or fear in the commission of the present offense in violation of Section 12022.75.

*(8) The defendant committed the present offense in violation of Section 264.1, subdivision (d) of Section 286, or subdivision (d) of Section 288a, and, in the commission of that offense, any person committed any act described in paragraph (1), (2), (3), (4), (6), or (7) of this subdivision.*

(f) If only the minimum number of circumstances specified in subdivision (d) or (e) which *that* are required for the punishment provided in subdivision (a) or (b) to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) or (b), *whichever is greater,* rather than being used to impose the punishment authorized under any other *provision of* law, unless another *provision of* law provides for a greater penalty *or the punishment under another provision of law can be imposed in addition to the punishment provided by this section.* However, if any additional circumstance or circumstances specified in subdivision (d) or (e) have been pled and proved, the minimum number of circumstances shall be used as the basis for imposing the term provided in subdivision (a), and any other additional circumstance or circumstances shall be used to impose any punishment or enhancement authorized under any other *provision of* law.

*(g)* Notwithstanding *Section 1385 or* any other *provision of* law, the court shall not strike any *allegation, admission, or finding of any* of the circumstances specified in subdivision (d) or (e) *for any person who is subject to punishment under this section.*

(g) The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable.

(h) Probation *Notwithstanding any other provision of law, probation* shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person who is subject to punishment under this section for any offense specified in paragraphs (1) to (6), inclusive, of subdivision (c).

(i) For the *any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), the court shall impose* a consecutive sentence for each *offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6.*

*(j) The* penalties provided in this section to *shall* apply; *only if* the existence of any fact required under *circumstance specified in* subdivision (d) or (e) shall be *is* alleged in the accusatory pleading *pursuant to this section,* and *is* either admitted by the defendant in open court or found to be true by the trier of fact.

(j) Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce the minimum term of 25 years in the state prison imposed pursuant to subdivision (a) or 15 years in the state prison imposed pursuant to subdivision (b). However, in no case shall the minimum term of 25 or 15 years be reduced by more than 15 percent for credits granted pursuant to Section 2933, 4019, or any other law providing for conduct-credit reduction. In no case shall any person who is punished under this section be released on parole prior to serving at least 85 percent of the minimum term of 25 or 15 years in the state prison.

SEC. 12. Section 667.71 of the Penal Code is amended to read:

667.71. (a) For the purpose of this section, a habitual sexual offender is a person who has been previously convicted of one or more of the offenses listed *specified* in subdivision (c) and who is convicted in the present proceeding of one of those offenses.

(b) A habitual sexual offender is punishable *shall be punished* by imprisonment in the state prison for 25 years to life. Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term of 25 years in the state prison imposed pursuant to this section. However, in no case shall the minimum term of 25 years be reduced by more than 15 percent for credits granted pursuant to Section 2933, 4019, or any other law providing for conduct credit reduction. In no case shall any person who is punished under this section be released on parole prior to serving at least 85 percent of the minimum term of 25



## TEXT OF PROPOSED LAWS ★ ★ ★

~~years in the state prison.~~

(c) This section shall apply to any of the following offenses:

(1) ~~A~~ *Rape, in* violation of paragraph (2) *or (6)* of subdivision (a) of Section 261.

(2) ~~A~~ *Spousal rape, in* violation of paragraph (1) *or (4)* of subdivision (a) of Section 262.

(3) ~~A~~ *Rape, spousal rape, or sexual penetration, in concert, in* violation of Section 264.1.

(4) ~~A~~ *Lewd or lascivious act, in* violation of subdivision (a) or (b) of Section 288.

(5) ~~A~~ *Sexual penetration, in* violation of subdivision (a) *or (j)* of Section 289.

(6) ~~A~~ *Continuous sexual abuse of a child, in* violation of Section 288.5.

(7) ~~A~~ *Sodomy, in* violation of subdivision (c) *or (d)* of Section 286 ~~by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.~~

(8) ~~A violation of subdivision (d) of Section 286.~~

~~(9) A~~ *Oral copulation, in* violation of subdivision (c) or (d) of Section 288a ~~by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.~~

~~(10) A~~ *(9) Kidnapping, in* violation of subdivision (b) of Section 207.

~~(11) A~~ *(10) Kidnapping, in* violation of former subdivision (d) of Section 208 (kidnapping to commit specified sex offenses).

~~(12)~~ *(11)* Kidnapping, in violation of ~~subdivision (b) of~~ Section 209 with the intent to commit ~~rape, spousal rape, oral copulation, or sodomy or sexual penetration in violation of Section 289~~ *a specified sexual offense.*

~~(13) A~~ *(12) Aggravated sexual assault of a child, in* violation of Section 269.

~~(14)~~ *(13)* An offense committed in another jurisdiction that ~~has~~ *includes* all *of* the elements of an offense specified in ~~paragraphs (1) to (13), inclusive, of~~ this subdivision.

(d) *Notwithstanding Section 1385 or any other provision of law, the court shall not strike any allegation, admission, or finding of any prior conviction specified in subdivision (c) for any person who is subject to punishment under this section.*

*(e) Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person who is subject to punishment under this section.*

*(f)* This section shall apply only if the defendant's status as a habitual sexual offender is alleged in the ~~information~~ *accusatory pleading,* and either admitted by the defendant in open court, or found to be true by the ~~jury trying the issue of guilt or by the court where guilt is established by a plea of guilty or nolo contendere or by trial by court sitting without a jury~~ *trier of fact.*

SEC. 14. Section 1203.06 of the Penal Code is amended to read:

1203.06. ~~Notwithstanding Section 1203.~~

(a) ~~Probation~~ *Notwithstanding any other provision of law, probation* shall not be granted to, nor shall the execution or imposition of sentence be suspended for, ~~nor shall a finding bringing the defendant within this section be stricken pursuant to Section 1385 for,~~ any of the following persons:

(1) Any person who personally used a firearm during the commission or attempted commission of any of the following crimes:

(A) Murder.

(B) Robbery, in violation of Section 211.

(C) Kidnapping, in violation of Section 207, 209, or 209.5.

(D) ~~Kidnapping in violation of Section 209~~ *Lewd or lascivious act, in violation of Section 288.*

(E) Burglary of the first degree, as defined in Section 460.

(F) ~~Except as provided in Section 1203.065, rape~~ *Rape, in* violation of ~~paragraph (2) of subdivision (a) of~~ Section 261, 262, *or 264.1.*

(G) Assault with intent to commit ~~rape or sodomy~~ *a specified sexual offense, in* violation of Section 220.

(H) Escape, in violation of Section 4530 or 4532.

(I) Carjacking, in violation of Section 215.

(J) ~~Any person convicted of aggravated~~ *Aggravated* mayhem, in

violation of Section 205.

(K) Torture, in violation of Section 206.

(L) ~~Kidnapping, in violation of Section 209.5~~ *Continuous sexual abuse of a child, in violation of Section 288.5.*

(M) A felony violation of Section 136.1 or 137.

*(N) Sodomy, in violation of Section 286.*

*(O) Oral copulation, in violation of Section 288a.*

*(P) Sexual penetration, in violation of Section 289 or 264.1.*

*(Q) Aggravated sexual assault of a child, in violation of Section 269.*

(2) Any person previously convicted of a felony specified in ~~subparagraphs (A) to (L), inclusive, of~~ paragraph (1), or assault with intent to commit murder under former Section 217, who is convicted of a subsequent felony and who was personally armed with a firearm at any time during its commission or attempted commission or was unlawfully armed with a firearm at the time of his or her arrest for the subsequent felony.

(3) Aggravated arson, in violation of Section 451.5.

(b)(1) The existence of any fact ~~which~~ *that* would make a person ineligible for probation under subdivision (a) shall be alleged in the accusatory pleading, and either admitted by the defendant in open court, or found to be true by the ~~jury trying the issue of guilt, by the court where guilt is established by plea of guilty or nolo contendere, or by trial by the court sitting without a jury~~ *trier of fact.*

(2) ~~This subdivision does not prohibit the adjournment of criminal proceedings pursuant to Division 6 (commencing with Section 6000) of the Welfare and Institutions Code.~~

~~(3)~~ As used in subdivision (a), "used a firearm" means to display a firearm in a menacing manner, to intentionally fire it, ~~or~~ to intentionally strike or hit a human being with it, *or to use it in any manner that qualifies under Section 12022.5.*

~~(4)~~ *(3)* As used in subdivision (a), "armed with a firearm" means to knowingly carry *or have available for use* a firearm as a means of offense or defense.

SEC. 15. Section 1203.065 of the Penal Code is amended to read:

1203.065. (a) Notwithstanding any other *provision of* law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person who is convicted of violating paragraph (2) *or (6)* of subdivision (a) of Section 261, Section 264.1, 266h, 266i, ~~or~~ 266j, *or 269, paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 286, paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 288a,* subdivision (a) of Section 289, ~~of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person,~~ or of ~~violating~~ subdivision (c) of Section 311.4.

(b)*(1)* Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person who is convicted of ~~a violation of~~ *violating* paragraph (7) of subdivision (a) of Section 261, subdivision (k) of Section 286, subdivision (k) of Section 288a, *subdivision (g) of Section 289,* or Section 220 for assault with intent to commit ~~any of the following: rape, sodomy, oral copulation, or any violation of Section 264.1, subdivision (b) of Section 288, or Section 289~~ *a specified sexual offense.*

*(2)* When probation is granted, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by the disposition.

SEC. 16. Section 1203.075 of the Penal Code is amended to read:

1203.075. ~~Notwithstanding the provisions of Section 1203.~~

~~(a)~~ ~~Probation~~ *Notwithstanding any other provision of law, probation* shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within this section be stricken pursuant to Section 1385 for, any person who, ~~with the intent to inflict the injury,~~ personally inflicts great bodily injury, *as defined in Section 12022.7,* on the person of another in the commission or attempted commission of any of the following crimes:

(1) Murder.

(2) Robbery, in violation of Section 211.

(3) Kidnapping, in violation of Section 207, 209, or 209.5.

(4) ~~Kidnapping, in violation of Section 209~~ *Lewd or lascivious act, in violation of Section 288.*

★ ★ ★ TEXT OF PROPOSED LAWS

(5) Burglary of the first degree, as defined in Section 460.

(6) Rape, in violation of paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 261, 262, or 264.1.

(7) Assault with intent to commit rape or sodomy *a specified sexual offense,* in violation of Section 220.

(8) Escape, in violation of Section 4530 or 4532.

(9) *A Sexual penetration, in* violation of subdivision (a) of Section 289 *or 264.1.*

(10) Sodomy, in violation of Section 286.

(11) Oral copulation, in violation of Section 288a.

(12) Carjacking, in violation of Section 215.

(13) Kidnapping, in violation of Section 209.5 *Continuous sexual abuse of a child, in violation of Section 288.5.*

*(14) Aggravated sexual assault of a child, in violation of Section 269.*

(b)(1) The existence of any fact which *that* would make a person ineligible for probation under subdivision (a) shall be alleged in the accusatory pleading, and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by a plea of guilty or nolo contendere or by a trial by the court sitting without a jury *trier of fact.*

(2) This subdivision does not prohibit the adjournment of criminal proceedings pursuant to Division 3 (commencing with Section 3000) or Division 6 (commencing with Section 6000) of the Welfare and Institutions Code.

(3) As used in subdivision (a), "great bodily injury" means "great bodily injury" as defined in Section 12022.7.

SEC. 17.   Section 3000 of the Penal Code is amended to read:

3000. (a)(1) The Legislature finds and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the supervision of and surveillance of parolees, including the judicious use of revocation actions, and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge. A sentence pursuant to Section 1168 or 1170 shall include a period of parole, unless waived, as provided in this section.

(2) The Legislature finds and declares that it is not the intent of this section to diminish resources allocated to the Department of Corrections for parole functions for which the department is responsible. It is also not the intent of this section to diminish the resources allocated to the Board of Prison Terms to execute its duties with respect to parole functions for which the board is responsible.

(3) The Legislature finds and declares that diligent effort must be made to ensure that parolees are held accountable for their criminal behavior, including, but not limited to, the satisfaction of restitution fines and orders.

(4) Any finding made pursuant to Article 4 (commencing with Section 6600) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code, that a person is *The parole period of any person found to be* a sexually violent predator shall not toll, discharge, or otherwise affect that person's *he tolled until that person is found to no longer be a sexually violent predator, at which time the* period of parole, *or any remaining portion thereof, shall begin to run.*

(b) Notwithstanding any provision to the contrary in Article 3 (commencing with Section 2930) of this, chapter the following shall apply:

(1) At the expiration of a term of imprisonment of one year and one day, or a term of imprisonment imposed pursuant to Section 1170 or at the expiration of a term reduced pursuant to Section 2931 or 2933, if applicable, the inmate shall be released on parole for a period not exceeding three years, except that any inmate sentenced for an offense specified in paragraph (3), (4), (5), (6), (11), (16), or (18) of subdivision (c) of Section 667.5 shall be released on parole for a period not exceeding five years, unless in either case the parole authority for good cause waives parole and discharges the inmate from the custody of the department.

(2) In the case of any inmate sentenced under Section 1168, the period of parole shall not exceed five years in the case of an inmate imprisoned for any offense other than first or second degree murder for which the inmate has received a life sentence, and shall not exceed three years in the case of any other inmate, unless in either case the parole authority for good cause

waives parole and discharges the inmate from custody of the department. This subdivision shall also be applicable to inmates who committed crimes prior to July 1, 1977, to the extent specified in Section 1170.2.

(3) Notwithstanding paragraphs (1) and (2), in the case of any offense for which the inmate has received a life sentence pursuant to Section 667.61 or 667.71, the period of parole shall be five *10* years. Upon the request of the Department of Corrections, and on the grounds that the paroled inmate may pose a substantial danger to public safety, the Board of Prison Terms shall conduct a hearing to determine if the parolee shall be subject to a single additional five-year period of parole. The board shall conduct the hearing pursuant to the procedures and standards governing parole revocation. The request for parole extension shall be made no less than 180 days prior to the expiration of the initial five-year period of parole.

(4) The parole authority shall consider the request of any inmate regarding the length of his or her parole and the conditions thereof.

(5) Upon successful completion of parole, or at the end of the maximum statutory period of parole specified for the inmate under paragraph (1), (2), or (3), as the case may be, whichever is earlier, the inmate shall be discharged from custody. The date of the maximum statutory period of parole under this subdivision and paragraphs (1), (2), and (3) shall be computed from the date of initial parole or from the date of extension of parole pursuant to paragraph (3) and shall be a period chronologically determined. Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation. However, in no case, except *the period of parole is subject to the following:*

*(A) Except* as provided in Section 3064, *in no case* may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole, and, except *parole.*

*(B) Except* as provided in Section 3064, in no case may a prisoner subject to five years on parole be retained under parole supervision or in custody for a period longer than seven years from the date of his or her initial parole or from the date of extension of parole pursuant to paragraph (3).

*(C) Except as provided in Section 3064, in no case may a prisoner subject to 10 years on parole be retained under parole supervision or in custody for a period longer than 15 years from the date of his or her initial parole.*

(6) The Department of Corrections shall meet with each inmate at least 30 days prior to his or her good time release date and shall provide, under guidelines specified by the parole authority, the conditions of parole and the length of parole up to the maximum period of time provided by law. The inmate has the right to reconsideration of the length of parole and conditions thereof by the parole authority. The Department of Corrections or the Board of Prison Terms may impose as a condition of parole that a prisoner make payments on the prisoner's outstanding restitution fines or orders imposed pursuant to subdivision (a) or (c) of Section 13967 of the Government Code, as operative prior to September 28, 1994, or subdivision (b) or (f) of Section 1202.4.

(7) For purposes of this chapter, the Board of Prison Terms shall be considered the parole authority.

(8) The sole authority to issue warrants for the return to actual custody of any state prisoner released on parole rests with the Board of Prison Terms, except for any escaped state prisoner or any state prisoner released prior to his or her scheduled release date who should be returned to custody, and Section 3060 shall apply.

*(9) It is the intent of the Legislature that efforts be made with respect to persons who are subject to subparagraph (C) of paragraph (1) of subdivision (a) of Section 290 who are on parole to engage them in treatment.*

SEC. 18.   Section 3000.07 is added to the Penal Code, to read:

*3000.07.   (a) Every inmate who has been convicted for any felony violation of a "registerable sex offense" described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290 or any attempt to commit any of the above-mentioned offenses and who is committed to prison and released on parole pursuant to Section 3000 or 3000.1 shall be monitored by a global positioning system for the term of his or her parole, or for the duration or any remaining part thereof, whichever period of time is less.*

*(b) Any inmate released on parole pursuant to this section shall be required to pay for the costs associated with the monitoring by a global positioning system. However, the Department of Corrections shall waive any*



*or all of that payment upon a finding of an inability to pay. The department shall consider any remaining amounts the inmate has been ordered to pay in fines, assessments and restitution fines, fees, and orders, and shall give priority to the payment of those items before requiring that the inmate pay for the global positioning monitoring. No inmate shall be denied parole on the basis of his or her inability to pay for those monitoring costs.*

SEC. 19.   Section 3001 of the Penal Code is amended to read:

3001.   (a) Notwithstanding any other provision of law, when any person referred to in paragraph (1) of subdivision (b) of Section 3000 who was not imprisoned for committing a violent felony, as defined in subdivision (c) of Section 667.5, has been released on parole from the state prison, and has been on parole continuously for one year since release from confinement, within 30 days, that person shall be discharged from parole, unless the Department of Corrections recommends to the Board of Prison Terms that the person be retained on parole and the board, for good cause, determines that the person will be retained. Notwithstanding any other provision of law, when any person referred to in paragraph (1) of subdivision (b) of Section 3000 who was imprisoned for committing a violent felony, as defined in subdivision (c) of Section 667.5, has been released on parole from the~state~prison for a period not exceeding three years and has been on parole continuously for two years since release from confinement, or has been released on parole from the state prison for a period not exceeding five years and has been on parole continuously for three years since release from confinement, the department shall discharge, within 30 days, that person from parole, unless the department recommends to the board that the person be retained on parole and the board, for good cause, determines that the person will be retained. The board shall make a written record of its determination and the department shall transmit a copy thereof to the parolee.

(b) Notwithstanding any other provision of law, when any person referred to in paragraph (2) or (3) of subdivision (b) of Section 3000 has been released on parole from the state prison, and has been on parole continuously for three years since release from confinement or~since~extension~of~parole, the board shall discharge, within 30 days, the person from parole, unless the board, for good cause, determines that the person will be retained on parole. The board shall make a written record of its determination and the department shall transmit a copy thereof to the parolee.

(c) *Notwithstanding any other provision of law, when any person referred to in paragraph (3) of subdivision (b) of Section 3000 has been released on parole from the state prison, and has been on parole continuously for six years since release from confinement, the board shall discharge, within 30 days, the person from parole, unless the board, for good cause, determines that the person will be retained on parole. The board shall make a written record of its determination and the department shall transmit a copy thereof to the parolee.*

*(d)* In the event of a retention on parole, the parolee shall be entitled to a review by the parole authority each year thereafter until the maximum statutory period of parole has expired.

(d) *(e)* The amendments to this section made during the 1987–88 Regular Session of the Legislature shall only be applied prospectively and shall not extend the parole period for any person whose eligibility for discharge from parole was fixed as of the effective date of those amendments.

SEC. 20.   Section 3003 of the Penal Code is amended to read:

3003.   (a) Except as otherwise provided in this section, an inmate who is released on parole shall be returned to the county that was the last legal residence of the inmate prior to his or her incarceration.

For purposes of this subdivision, "last legal residence" shall not be construed to mean the place where the inmate committed an offense while confined in a state prison or local jail facility or while confined for treatment in a state hospital.

(b) Notwithstanding subdivision (a), an inmate may be returned to another county if that would be in the best interests of the public. If the Board of Prison Terms setting the conditions of parole for inmates sentenced pursuant to subdivision (b) of Section 1168, as determined by the parole consideration panel, or the Department of Corrections setting the conditions of parole for inmates sentenced pursuant to Section 1170, decides on a return to another county, it shall place its reasons in writing in the parolee's permanent record and include these reasons in the notice to the sheriff or chief of police pursuant to Section 3058.6. In making its decision, the paroling authority shall consider, among others, the following

factors, giving the greatest weight to the protection of the victim and the safety of the community:

(1) The need to protect the life or safety of a victim, the parolee, a witness, or any other person.

(2) Public concern that would reduce the chance that the inmate's parole would be successfully completed.

(3) The verified existence of a work offer, or an educational or vocational training program.

(4) The existence of family in another county with whom the inmate has maintained strong ties and whose support would increase the chance that the inmate's parole would be successfully completed.

(5) The lack of necessary outpatient treatment programs for parolees receiving treatment pursuant to Section 2960.

(c) The Department of Corrections, in determining an out-of-county commitment, shall give priority to the safety of the community and any witnesses and victims.

(d) In making its decision about an inmate who participated in a joint venture program pursuant to Article 1.5 (commencing with Section 2717.1) of Chapter 5, the paroling authority shall give serious consideration to releasing him or her to the county where the joint venture program employer is located if that employer states to the paroling authority that he or she intends to employ the inmate upon release.

(e)(1) The following information, if available, shall be released by the Department of Corrections to local law enforcement agencies regarding a paroled inmate who is released in their jurisdictions:

(A) Last, first, and middle name.

(B) Birth date.

(C) Sex, race, height, weight, and hair and eye color.

(D) Date of parole and discharge.

(E) Registration status, if the inmate is required to register as a result of a controlled substance, sex, or arson offense.

(F) California Criminal Information Number, FBI number, social security number, and driver's license number.

(G) County of commitment.

(H) A description of scars, marks, and tattoos on the inmate.

(I) Offense or offenses for which the inmate was convicted that resulted in parole in this instance.

(J) Address, including all of the following information:

(i) Street name and number. Post office box numbers are not acceptable for purposes of this subparagraph.

(ii) City and ZIP Code.

(iii) Date that the address provided pursuant to this subparagraph was proposed to be effective.

(K) Contact officer and unit, including all of the following information:

(i) Name and telephone number of each contact officer.

(ii) Contact unit type of each contact officer such as units responsible for parole, registration, or county probation.

(L) A digitized image of the photograph and at least a single digit fingerprint of the parolee.

(M) A geographic coordinate for the parolee's residence location for use with a Geographical Information System (GIS) or comparable computer program.

(2) The information required by this subdivision shall come from the statewide parolee database. The information obtained from each source shall be based on the same timeframe.

(3) All of the information required by this subdivision shall be provided utilizing a computer-to-computer transfer in a format usable by a desktop computer system. The transfer of this information shall be continually available to local law enforcement agencies upon request.

(4) The unauthorized release or receipt of the information described in this subdivision is a violation of Section 11143.

(f) Notwithstanding any other provision of law, an inmate who is released on parole shall not be returned to a location within 35 miles of the actual residence of a victim of, or a witness to, a violent felony as defined in paragraphs (1) to (7), inclusive, of subdivision (c) of Section 667.5 or a



★ ★ ★ TEXT OF PROPOSED LAWS

felony in which the defendant inflicts great bodily injury on any person other than an accomplice that has been charged and proved as provided for in Section 12022.53, 12022.7, or 12022.9, if the victim or witness has requested additional distance in the placement of the inmate on parole, and if the Board of Prison Terms or the Department of Corrections finds that there is a need to protect the life, safety, or well-being of a victim or witness.

~~(g)(1) Notwithstanding any other law, an inmate who is released on parole for any violation of Section 288 or 288.5 shall not be placed or reside, for the duration of his or her period of parole, within one quarter mile of any public or private school, including any or all of kindergarten and grades 1 to 8, inclusive.~~

Notwithstanding any other law, an inmate who is released on parole for a violation of Section 288 or 288.5 whom the Department of Corrections and Rehabilitation determines poses a high risk to the public shall not be placed or reside, for the duration of his or her parole, within one-half mile of any public or private school including any or all of kindergarten and grades 1 to 12, inclusive.

~~(h)~~ Notwithstanding any other law, an inmate who is released on parole for an offense involving stalking shall not be returned to a location within 35 miles of the victim's actual residence or place of employment if the victim or witness has requested additional distance in the placement of the inmate on parole, and if the Board of Prison Terms or the Department of Corrections finds that there is a need to protect the life, safety, or well-being of the victim.

~~(i)~~ *(h)* The authority shall give consideration to the equitable distribution of parolees and the proportion of out-of-county commitments from a county compared to the number of commitments from that county when making parole decisions.

~~(j)~~ *(i)* An inmate may be paroled to another state pursuant to any other law.

~~(k)~~ *(j)*(1) Except as provided in paragraph (2), the Department of Corrections shall be the agency primarily responsible for, and shall have control over, the program, resources, and staff implementing the Law Enforcement Automated Data System (LEADS) in conformance with subdivision (e).

(2) Notwithstanding paragraph (1), the Department of Justice shall be the agency primarily responsible for the proper release of information under LEADS that relates to fingerprint cards.

SEC. 21.   Section 3003.5 of the Penal Code is amended to read:

3003.5.   *(a)* Notwithstanding any other provision of law, when a person is released on parole after having served a term of imprisonment in state prison for any offense for which registration is required pursuant to Section 290, that person may not, during the period of parole, reside in any single family dwelling with any other person also required to register pursuant to Section 290, unless those persons are legally related by blood, marriage, or adoption. For purposes of this section, "single family dwelling" shall not include a residential facility which serves six or fewer persons.

*(b) Notwithstanding any other provision of law, it is unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather.*

*(c) Nothing in this section shall prohibit municipal jurisdictions from enacting local ordinances that further restrict the residency of any person for whom registration is required pursuant to Section 290.*

SEC. 22.   Section 3004 of the Penal Code is amended to read:

3004.   *(a)* Notwithstanding any other law, the parole authority may require, as a condition of release on parole or reinstatement on parole, or as an intermediate sanction in lieu of return to prison, that an inmate or parolee agree in writing to the use of electronic monitoring or supervising devices for the purpose of helping to verify his or her compliance with all other conditions of parole. The devices shall not be used to eavesdrop or record any conversation, except a conversation between the parolee and the agent supervising the parolee which is to be used solely for the purposes of voice identification.

*(b) Every inmate who has been convicted for any felony violation of a "registerable sex offense" described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290 or any attempt to commit any of the above-mentioned offenses and who is committed to prison and released on parole pursuant to Section 3000 or 3000.1 shall be monitored by a global positioning system for life.*

*(c) Any inmate released on parole pursuant to this section shall be required to pay for the costs associated with the monitoring by a global positioning system. However, the Department of Corrections shall waive any or all of that payment upon a finding of an inability to pay. The department shall consider any remaining amounts the inmate has been ordered to pay in fines, assessments and restitution fines, fees, and orders, and shall give priority to the payment of those items before requiring that the inmate pay for the global positioning monitoring.*

SEC. 23.   Section 12022.75 of the Penal Code is amended to read:

12022.75.   ~~Any~~ *(a) Except as provided in subdivision (b), any* person who, for the purpose of committing a felony, administers by injection, inhalation, ingestion, or any other means, any controlled substance listed in Section 11054, 11055, 11056, 11057, or 11058 of the Health and Safety Code, against the victim's will by means of force, violence, or fear of immediate and unlawful bodily injury to the victim or another person, shall, in addition and consecutive to the penalty provided for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of three years.

*(b)(1) Any person who, in the commission or attempted commission of any offense specified in paragraph (2), administers any controlled substance listed in Section 11054, 11055, 11056, 11057, or 11058 of the Health and Safety Code to the victim shall be punished by an additional and consecutive term of imprisonment in the state prison for five years.*

*(2) This subdivision shall apply to the following offenses:*

*(A) Rape, in violation of paragraph (3) or (4) of subdivision (a) of Section 261.*

*(B) Sodomy, in violation of subdivision (f) or (i) of Section 286.*

*(C) Oral copulation, in violation of subdivision (f) or (i) of Section 288a.*

*(D) Sexual penetration, in violation of subdivision (d) or (e) of Section 289.*

*(E) Any offense specified in subdivision (c) of Section 667.61.*

SEC. 24.   Section 6600 of the Welfare and Institutions Code is amended to read:

6600.   As used in this article, the following terms have the following meanings:

(a)(1) "Sexually violent predator" means a person who has been convicted of a sexually violent offense against ~~two~~ *one* or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

(2) For purposes of this subdivision any of the following shall be considered a conviction for a sexually violent offense:

(A) A prior or current conviction that resulted in a determinate prison sentence for an offense described in subdivision (b).

(B) A conviction for an offense described in subdivision (b) that was committed prior to July 1, 1977, and that resulted in an indeterminate prison sentence.

(C) A prior conviction in another jurisdiction for an offense that includes all of the elements of an offense described in subdivision (b).

(D) A conviction for an offense under a predecessor statute that includes all of the elements of an offense described in subdivision (b).

(E) A prior conviction for which the inmate received a grant of probation for an offense described in subdivision (b).

(F) A prior finding of not guilty by reason of insanity for an offense described in subdivision (b).

(G) A conviction resulting in a finding that the person was a mentally disordered sex offender.

*(H) A prior conviction for an offense described in subdivision (b) for which the person was committed to the Department of the Youth Authority pursuant to Section 1731.5.*

*(I) A prior conviction for an offense described in subdivision (b) that resulted in an indeterminate prison sentence.*

(3) Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an

# TEXT OF PROPOSED LAWS ★ ★ ★

offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health. Jurors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

(4) The provisions of this section shall apply to any person against whom proceedings were initiated for commitment as a sexually violent predator on or after January 1, 1996.

(b) "Sexually violent offense" means the following acts when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim ,or another person, *or threatening to retaliate in the future against the victim or any other person,* and that are committed on, before, or after the effective date of this article and result in a conviction or a finding of not guilty by reason of insanity, as provided *defined* in subdivision (a): a felony violation of paragraph (2) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262, Section 264.1, *269, 286,* subdivision (a) or (b) of Section 288, *288a, 288.5,* or subdivision (a) of Section 289 of the Penal Code, or sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code *any felony violation of Section 207, 209, or 220 of the Penal Code, committed with the intent to commit a violation of Section 261, 262, 264.1, 286, 288, 288a, or 289 of the Penal Code.*

(c) "Diagnosed mental disorder" includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.

(d) "Danger to the health and safety of others" does not require proof of a recent overt act while the offender is in custody.

(e) "Predatory" means an act is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization.

(f) "Recent overt act" means any criminal act that manifests a likelihood that the actor may engage in sexually violent predatory criminal behavior.

(g) Notwithstanding any other provision of law and for purposes of this section, no more than one *a* prior juvenile adjudication of a sexually violent offense may constitute a prior conviction for which the person received a determinate term if all of the following applies *apply*:

(1) The juvenile was 16 years of age or older at the time he or she committed the prior offense.

(2) The prior offense is a sexually violent offense as specified in subdivision (b). Notwithstanding Section 6600.1, only an offense described in subdivision (b) shall constitute a sexually violent offense for purposes of this subdivision.

(3) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 because of the person's commission of the offense giving rise to the juvenile court adjudication.

(4) The juvenile was committed to the Department of the Youth Authority for the sexually violent offense.

(h) A minor adjudged a ward of the court for commission of an offense that is defined as a sexually violent offense shall be entitled to specific treatment as a sexual offender. The failure of a minor to receive that treatment shall not constitute a defense or bar to a determination that any person is a sexually violent predator within the meaning of this article.

SEC. 25.  Section 6600.1 of the Welfare and Institutions Code is amended to read:

6600.1.  (a) If the victim of an underlying offense that is specified in subdivision (h) of Section 6600 is a child under the age of 14 and the offending act or acts involved substantial sexual conduct, the offense shall constitute a "sexually violent offense" for purposes of Section 6600.

(b) "Substantial sexual conduct" means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender.

SEC. 26.  Section 6601 of the Welfare and Institutions Code is

amended to read:

6601.  (a)(1) Whenever the Director of Corrections determines that an individual who is in custody under the jurisdiction of the Department of Corrections, and who is either serving a determinate prison sentence or whose parole has been revoked, may be a sexually violent predator, the director shall, at least six months prior to that individual's scheduled date for release from prison, refer the person for evaluation in accordance with this section. However, if the inmate was received by the department with less than nine months of his or her sentence to serve, or if the inmate's release date is modified by judicial or administrative action, the director may refer the person for evaluation in accordance with this section at a date that is less than six months prior to the inmate's scheduled release date.

(2) A petition may be filed under this section if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed. A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law. This paragraph shall apply to any petition filed on or after January 1, 1996.

(b) The person shall be screened by the Department of Corrections and the Board of Prison Terms based on whether the person has committed a sexually violent predatory offense and on a review of the person's social, criminal, and institutional history. This screening shall be conducted in accordance with a structured screening instrument developed and updated by the State Department of Mental Health in consultation with the Department of Corrections. If as a result of this screening it is determined that the person is likely to be a sexually violent predator, the Department of Corrections shall refer the person to the State Department of Mental Health for a full evaluation of whether the person meets the criteria in Section 6600.

(c) The State Department of Mental Health shall evaluate the person in accordance with a standardized assessment protocol, developed and updated by the State Department of Mental Health, to determine whether the person is a sexually violent predator as defined in this article. The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder.

(d) Pursuant to subdivision (c), the person shall be evaluated by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist, designated by the Director of Mental Health. If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health shall forward a request for a petition for commitment under Section 6602 to the county designated in subdivision (i). Copies of the evaluation reports and any other supporting documents shall be made available to the attorney designated by the county pursuant to subdivision (i) who may file a petition for commitment.

(e) If one of the professionals performing the evaluation pursuant to subdivision (d) does not concur that the person meets the criteria specified in subdivision (d), but the other professional concludes that the person meets those criteria, the Director of Mental Health shall arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g).

(f) If an examination by independent professionals pursuant to subdivision (e) is conducted, a petition to request commitment under this article shall only be filed if both independent professionals who evaluate the person pursuant to subdivision (e) concur that the person meets the criteria for commitment specified in subdivision (d). The professionals selected to evaluate the person pursuant to subdivision (g) shall inform the person that the purpose of their examination is not treatment but to determine if the person meets certain criteria to be involuntarily committed pursuant to this article. It is not required that the person appreciate or understand that information.

(g) Any independent professional who is designated by the Director of Corrections or the Director of Mental Health for purposes of this section shall not be a state government employee, shall have at least five years of experience in the diagnosis and treatment of mental disorders, *it is*

(PROPOSITION 83 CONTINUED)  ★ ★ ★ TEXT OF PROPOSED LAWS

shall include psychiatrists and licensed psychologists who have a doctoral degree in psychology. The requirements set forth in this section also shall apply to any professionals appointed by the court to evaluate the person for purposes of any other proceedings under this article.

(h) If the State Department of Mental Health determines that the person is a sexually violent predator as defined in this article, the Director of Mental Health shall forward a request for a petition to be filed for commitment under this article to the county designated in subdivision (i). Copies of the evaluation reports and any other supporting documents shall be made available to the attorney designated by the county pursuant to subdivision (i) who may file a petition for commitment in the superior court.

(i) If the county's designated counsel concurs with the recommendation, a petition for commitment shall be filed in the superior court of the county in which the person was convicted of the offense for which he or she was committed to the jurisdiction of the Department of Corrections. The petition shall be filed, and the proceedings shall be handled, by either the district attorney or the county counsel of that county. The county board of supervisors shall designate either the district attorney or the county counsel to assume responsibility for proceedings under this article.

(j) The time limits set forth in this section shall not apply during the first year that this article is operative.

(k) If the person is otherwise subject to parole, a finding or placement made pursuant to this article shall ~~not toll, discharge, or otherwise affect~~ the term of parole pursuant to Article 1 (commencing with Section 3000) of Chapter 8 of Title 1 of Part 3 of the Penal Code.

(l) Pursuant to subdivision (d), the attorney designated by the county pursuant to subdivision (i) shall notify the State Department of Mental Health of its decision regarding the filing of a petition for commitment within 15 days of making that decision.

SEC. 27.  Section 6604 of the Welfare and Institutions Code is amended to read:

6604.  The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced, or that the person be unconditionally released at the end of parole, whichever is applicable. If the court or jury determines that the person is a sexually violent predator, the person shall be committed for ~~two years~~ *an indeterminate term* to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health, ~~and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment under this article or unless the term of commitment changes pursuant to subdivision (e) of Section 6605. Time spent on conditional release shall not count toward the two-year term of commitment, unless the person is placed in a locked facility by the conditional release program, in which case the time in a locked facility shall count toward the two-year term of commitment.~~ The facility shall be located on the grounds of an institution under the jurisdiction of the Department of Corrections.

SEC. 28.  Section 6604.1 of the Welfare and Institutions Code is amended to read:

6604.1.  (a) The ~~two-year~~ *indeterminate* term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The ~~initial two-year term shall not be reduced by any time spent in a secure facility prior to the order of commitment. For any subsequent extended commitments, the term of commitment shall be for two years commencing from the date of the termination of the previous commitment.~~

(b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments. The ~~rights,~~ requirements, and procedures set forth in Section 6603 shall apply *See extended all* commitment proceedings.

SEC. 29.  Section 6605 of the Welfare and Institutions Code is amended to read:

6605.  (a) A person found to be a sexually violent predator and committed to the custody of the State Department of Mental Health shall have a current examination of his or her mental condition made at least once every year. *The annual report shall include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community. The Department of Mental Health shall file this periodic report with the court that committed the person under this article. The report shall be in the form of a declaration and shall be prepared by a professionally qualified person. A copy of the report shall be served on the prosecuting agency involved in the initial commitment and upon the committed person.* The person may retain, or if he or she is indigent and so requests, the court may appoint, a qualified expert or professional person to examine him or her, and the expert or professional person shall have access to all records concerning the person.

(b) ~~The director shall provide the committed person with an annual written notice of his or her right to petition the court for conditional release under Section 6608. The notice shall contain a waiver of rights. The director shall forward the notice and waiver form to the court with the annual report. If the person does not affirmatively waive his or her right to petition the court for conditional release, the court shall set a show cause hearing to determine whether facts exist that warrant a hearing on whether the person's condition has so changed that he or she would not be a danger to the health and safety of others if discharged. The committed person shall have the right to be present and to have an attorney represent him or her at the show cause hearing.~~ *If the Department of Mental Health determines that either: (1) the person's condition has so changed that the person no longer meets the definition of a sexually violent predator, or (2) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, the director shall authorize the person to petition the court for conditional release to a less restrictive alternative or for an unconditional discharge. The petition shall be filed with the court and served upon the prosecuting agency responsible for the initial commitment. The court, upon receipt of the petition for conditional release to a less restrictive alternative or unconditional discharge, shall order a show cause hearing at which the court can consider the petition and any accompanying documentation provided by the medical director, the prosecuting attorney or the committed person.*

(c) If the court at the show cause hearing determines that probable cause exists to believe that the committed person's diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged, then the court shall set a hearing on the issue.

(d) At the hearing, the committed person shall have the right to be present and shall be entitled to the benefit of all constitutional protections that were afforded to him or her at the initial commitment proceeding. The attorney designated by the county pursuant to subdivision (i) of Section 6601 shall represent the state and shall have the right to demand a jury trial and to have the committed person evaluated by experts chosen by the state. The committed person also shall have the right to demand a jury trial and to have experts evaluate him or her on his or her behalf. The court shall appoint an expert if the person is indigent and requests an appointment. The burden of proof at the hearing shall be on the state to prove beyond a reasonable doubt that the committed person's diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged.

(e) If the court or jury rules against the committed person at the hearing conducted pursuant to subdivision (d), the term of commitment of the person shall run for ~~a~~ *an indeterminate* period of ~~two years~~ from the date of this ruling. If the court or jury rules for the committed person, he or she shall be unconditionally released and unconditionally discharged.

(f) In the event that the State Department of Mental Health has reason to believe that a person committed to it as a sexually violent predator is no longer a sexually violent predator, it shall seek judicial review of the person's commitment pursuant to the procedures set forth in Section 7250 in the superior court from which the commitment was made. If the superior court determines that the person is no longer a sexually violent predator, he

# TEXT OF PROPOSED LAWS ★ ★ ★

or she shall be unconditionally released and unconditionally discharged.

SEC. 30.  Section 6608 of the Welfare and Institutions Code is amended to read:

6608.  (a) Nothing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release and subsequent *or an* unconditional discharge without the recommendation or concurrence of the Director of Mental Health. If a person has previously filed a petition for conditional release without the concurrence of the director and the court determined, either upon review of the petition or following a hearing, that the petition was frivolous or that the committed person's condition had not so changed that he or she would not be a danger to others in that it is not likely that he or she will engage in sexually violent criminal behavior if placed under supervision and treatment in the community, then the court shall deny the subsequent petition unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted. Upon receipt of a first or subsequent petition from a committed person without the concurrence of the director, the court shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing. The person petitioning for conditional release and unconditional discharge under this subdivision shall be entitled to assistance of counsel.

(b) The court shall give notice of the hearing date to the attorney designated in subdivision (i) of Section 6601, the retained or appointed attorney for the committed person, and the Director of Mental Health at least 15 court days before the hearing date.

(c) No hearing upon the petition shall be held until the person who is committed has been under commitment for confinement and care in a facility designated by the Director of Mental Health for not less than one year from the date of the order of commitment.

(d) The court shall hold a hearing to determine whether the person committed would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community. If the court at the hearing determines that the committed person would not be a danger to others due to his or her diagnosed mental disorder while under supervision and treatment in the community, the court shall order the committed person placed with an appropriate forensic conditional release program operated by the state for one year. A substantial portion of the state-operated forensic conditional release program shall include outpatient supervision and treatment. The court shall retain jurisdiction of the person throughout the course of the program. At the end of one year, the court shall hold a hearing to determine if the person should be unconditionally released from commitment on the basis that, by reason of a diagnosed mental disorder, he or she is not a danger to the health and safety of others in that it is not likely that he or she will engage in sexually violent criminal behavior. The court shall not make this determination until the person has completed at least one year in the state-operated forensic conditional release program. The court shall notify the Director of Mental Health of the hearing date.

(e) Before placing a committed person in a state-operated forensic conditional release program, the community program director designated by the State Department of Mental Health shall submit a written recommendation to the court stating which forensic conditional release program is most appropriate for supervising and treating the committed person. If the court does not accept the community program director's recommendation, the court shall specify the reason or reasons for its order on the record. The procedures described in Sections 1605 to 1610, inclusive, of the Penal Code shall apply to the person placed in an forensic conditional release program.

(f) If the court determines that the person should be transferred to a state-operated forensic conditional release program, the community program director, or his or her designee, shall make the necessary placement arrangements and, within 21 days after receiving notice of the court's finding, the person shall be placed in the community in accordance with the treatment and supervision plan unless good cause for not doing so is presented to the court.

(g) If the court rules against the committed person at the trial for unconditional release from commitment, the court may place the committed person on outpatient status in accordance with the procedures described in Title 15 (commencing with Section 1600) of Part 2 of the Penal Code.

(h) If the court denies the petition to place the person in an appropriate forensic conditional release program or if the petition for unconditional discharge is denied, the person may not file a new application until one year has elapsed from the date of the denial.

(i) In any hearing authorized by this section, the petitioner shall have the burden of proof by a preponderance of the evidence.

(j) If the petition for conditional release is not made by the director of the treatment facility to which the person is committed, no action on the petition shall be taken by the court without first obtaining the written recommendation of the director of the treatment facility.

(k) Time spent in a conditional release program pursuant to this section shall not count toward the term of commitment under this article unless the person is confined in a locked facility by the conditional release program, in which case the time spent in a locked facility shall count toward the term of commitment.

SEC. 31.  Intent Clause

It is the intent of the People of the State of California in enacting this measure to strengthen and improve the laws that punish and control sexual offenders. It is also the intent of the People of the State of California that if any provision in this act conflicts with any other provision of law that provides for a greater penalty or longer period of imprisonment the latter provision shall apply.

SEC. 32.  Severability Clause

If any provision of this act, or part thereof, is for any reason held to be invalid or unconstitutional, the remaining provisions shall not be affected, but shall remain in full force and effect, and to this end the provisions of this act are severable.

SEC. 33.  Amendment Clause

The provisions of this act shall not be amended by the Legislature except by a statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership of each house concurring, or by a statute that becomes effective only when approved by the voters. However, the Legislature may amend the provisions of this act to expand the scope of their application or to increase the punishments or penalties provided herein by a statute passed by majority vote of each house thereof.

# PROPOSITION 84

This initiative measure is submitted to the people in accordance with the provisions of Article II, Section 8, of the California Constitution.

This initiative measure adds sections to the Public Resources Code; therefore, new provisions proposed to be added are printed in *italic type* to indicate that they are new.

## PROPOSED LAW

SECTION 1.   Division 43 is added to the Public Resources Code, to read:

### *DIVISION 43.   THE SAFE DRINKING WATER, WATER QUALITY AND SUPPLY, FLOOD CONTROL, RIVER AND COASTAL PROTECTION BOND ACT OF 2006*

#### *CHAPTER 1.   GENERAL PROVISIONS*

*75001.   This Division shall be known and may be cited as the Safe Drinking Water, Water Quality and Supply, Flood Control, River and Coastal Protection Bond Act of 2006.*

*75002.   The people of California find and declare that protecting the state's drinking water and water resources is vital to the public health, the state's economy, and the environment.*

*75002.5.   The people of California further find and declare that the state's waters are vulnerable to contamination by dangerous bacteria, polluted runoff, toxic chemicals, damage from catastrophic floods and the demands of a growing population. Therefore, actions must be taken to ensure safe drinking water and a reliable supply of water for farms, cities and businesses, as well as to protect California's rivers, lakes, streams, beaches, bays and coastal waters, for this and future generations.*

*75003   The people of California further find and declare that it is*




# EXHIBIT "C"

BOARD O      ILE HEARINGS                                                 st      alifornia

MISCELLANEOUS DECISIONS

## FACTS
### 45-DAY HOLD PURSUANT TO
### WELFARE AND INSTITUTIONS CODE 6601.3

The Board of Parole Hearings (BPH) and/or Department of Mental Health (DMH) have determined that the Subject, **ALLEN, DAVID CDC K39029** meets the initial screening criteria for civil proceedings as a Sexually Violent Predator (SVP) pursuant to the Welfare and Institutions Code (WIC) Sections 6600 et seq.

Effective 05/05/07, place a 45-day "No Bail" hold, pursuant to WIC 6601.3, to facilitate full SVP evaluations to be concluded by the DMH.

If Subject's release date is re-calculated, Institution or Records staff shall immediately notify the BPH Offender Screening Section.

**RECOMMENDATION**

Impose the 45-day WIC 6601.3 "No Bail" hold effective from 12:01 a.m.05/05/07 through 12:00 midnight on 06/19/07.
Or upon removal for the SVP proceedings prior to the expiration of the 45 days.

| STAFF (Name) | | TITLE | | DATE |
|---|---|---|---|---|
| F. STARMER | | Parole Agent II | | APR 2 9 2007 |

**DECISION(S)**

1.
Impose the 45-day WIC 6601.3 "No Bail" hold effective from 12:01 a.m.05/05/07 through 12:00 midnight on 06/19/07
Or upon removal for the SVP proceedings prior to the expiration of the 45 days.

2.
Absent any action from DMH, BPH or the District Attorney this shall act as release of this 45 day hold.

3.

CONFIDENTIAL
PATIENT'S COPY

| | RANEL HEARING CASE | DECISION DATE |
|---|---|---|
| NAME | Raquel Fassnacht | APR 2 9 2007 |

Raquel Fassnacht, Deputy Commissioner

| NAME | NUMBER | | INSTITUTION OR REGION |
|---|---|---|---|
| **ALLEN, DAVID** | **K39029** | **AVE** | |

PERMANENT ADDENDA

' BPH 1136 (Rev. 8/82)

# EXHIBIT "D"

1

FILED
ALAMEDA COUNTY

2

3

MAY 28 1997

CLERK OF THE SUPERIOR COURT

4

By ~~~~~~~~~~~~~~~~~
         DEPUTY

5

6 | IN THE MUNICIPAL COURT FOR THE BERKELEY-ALBANY JUDICIAL DISTRICT

7 | COUNTY OF ALAMEDA, STATE OF CALIFORNIA

8 | BEFORE THE HONORABLE CAROL S. BROSNAHAN, JUDGE

9 | --oOo--                           129270

10 | THE PEOPLE OF THE STATE OF CALIFORNIA) ACTION # 155885
   |                                     ) DEPARTMENT: 2
11 |                          PLAINTIFF,) CHARGE: 261.P.C. ATT
   |                                     )           4 PRIORS
12 |          VS.                        )
   |                                     )
13 | DAVID OLIVER ALLEN,                 )
   |                                     )
14 | _____ DEFENDANT.)

15

TRANSCRIPT OF PROCEEDINGS

16

MUNICIPAL COURT,

17 | CITY OF BERKELEY, COUNTY OF ALAMEDA, CALIFORNIA
   | JANUARY 10, 1997. -- 9:45 O'CLOCK A.M.

18

--oOo--

19

A P P E A R A N C E S

20

FOR THE PEOPLE:                 JILL KLINGE

21 |                                DEPUTY DISTRICT ATTORNEY

22

FOR THE DEFENDANT:              ERIC SWENSON

23 |                                ASSISTANT PUBLIC DEFENDER

24

THE DEFENDANT IS PRESENT IN COURT

25

--oOo--

26

27

28

1

2                              (PROCEEDINGS)

3

4              THE COURT:  IT'S MY UNDERSTANDING THAT THERE IS A

5     RESOLUTION OF THIS MATTER BASED ON A PLEA TO THE AMENDED

6     COMPLAINT WHICH HAS TO WHICH A PLEA HAS NOT YET BEEN ENTERED.

7              FOR THE RECORD I WAS SERVED WITH A SUBPOENA YESTERDAY

8     TO APPEAR AT A MOTION OPPOSING THE AMENDED COMPLAINT SCHEDULED

9     FOR JANUARY THE 14TH AT 9:00 A.M.  IT IS MY UNDERSTANDING THAT

10    THE PUBLIC DEFENDER IS WITHDRAWING THAT SUBPOENA AND DOES NOT

11    OBJECT TO MY HEARING THIS MATTER FOR PURPOSES OF TAKING THIS

12    PLEA; IS THAT CORRECT?

13             MR. SWENSON:  THAT IS CORRECT, YOUR HONOR.  IN FACT I

14    HAVE ALREADY RECEIVED THE SUBPOENA FROM YOU AND BY

15    AGREEMENT --WELL, ASKING THAT IT BE-- THE MOTION THAT WAS IN

16    CONNECTION WITH, IS IN CONNECTION WITH, IS WITHDRAWN IN VIEW OF

17    THE DISPOSITION.

18             MS. KLINGE:  ONE MORE SECOND TO CLARIFY SOMETHING

19    ABOUT THE DISPOSITION WITH MR. SWENSON.

20

21                         (OFF THE RECORD DISCUSSION)

22

23             MR. SWENSON:  WE ARE READY TO PROCEED, YOUR HONOR.

24             THE COURT:  MR. SWENSON, IF YOU WOULD STATE THE

25    DISPOSITION FOR THE RECORD THEN I WILL VOIR DIRE.

26             MR. SWENSON:  YOUR HONOR, FIRST THERE IS A PENDING

27    MOTION TO AMEND THE COMPLAINT BY THE PEOPLE.  IN ACCORDANCE WITH

28    THIS DISPOSITION WE'LL SUBMIT IT ON THE QUESTION OF THE MOTION

ROBERT M. CAYA, OFFICIAL COURT REPORTER

1   TO AMEND ON THE UNDERSTANDING THAT YOUR HONOR WILL GRANT THE
2   MOTION TO AMEND.

3           THE DISPOSITION WILL THEN CONSIST OF THE PEOPLE
4   AGREEING TO STRIKE ALL THE PRIOR CONVICTIONS ALLEGED EXCEPT THE
5   FIRST PRIOR CONVICTION.

6           MY CLIENT WILL PLEAD NO CONTEST ON THE UNDERSTANDING,
7   OR THAT HE WILL BE FOUND GUILTY OF THE OFFENSE CHARGED IN THE
8   AMENDED COMPLAINT, AND FIRST, HE WILL ADMIT THE FIRST PRIOR
9   CONVICTION.  THE REST HAVING BEEN STRICKEN.

10          IT IS HIS UNDERSTANDING THAT HE WILL BE SENTENCED TO
11  13 YEARS IN THE STATE PRISON.  THAT IS ARRIVED AT AS FOLLOWS;
12  THE AGGRAVATED TERM OF 8 YEARS OF A COMPLETED OFFENSE WILL BE
13  REDUCED TO 4 YEARS BECAUSE THIS IS CHARGED AS AN ATTEMPT, BUT
14  BECAUSE IT'S A STRIKE THE PRISON RANGE WILL BE DOUBLED BACK TO 8
15  YEARS.

16          THE SERIOUS FELONY PRIOR WILL ADD 5 YEARS FOR A TOTAL
17  OF 13.

18          THE COURT:  MR. ALLEN, THAT YOUR UNDERSTANDING OF THE
19  AGREED DISPOSITION?

20  A.   YES.

21  Q.   NOW, YOU DO NOT HAVE TO DO THIS.  YOU HAVE A RIGHT TO HAVE
22  A PRELIMINARY HEARING.  THAT IS A HEARING TO DETERMINE IF THE
23  CRIME PROBABLY WAS COMMITTED AND YOU PROBABLY DID IT.  BY
24  ENTERING A PLEA TODAY YOU ARE GIVING UP YOUR RIGHT TO HAVE THAT
25  PRELIMINARY HEARING.

26          DO YOU UNDERSTAND THAT?

27  A.   YES.

28  Q.   DO YOU GIVE UP THAT RIGHT?

1    A.   YES.

2    Q.   IF YOU WERE HELD TO ANSWER, THAT IS, IF THE COURT FOUND

3    THAT THE CRIME PROBABLY WAS COMMITTED AND YOU DID PROBABLY DO IT

4    THEN YOU WOULD HAVE A RIGHT TO HAVE A TRIAL EITHER BY A JUDGE OR

5    A JURY.

6         YOU UNDERSTAND WHAT A TRIAL IS?

7    A.   YES.

8    Q.   DO YOU GIVE UP YOUR RIGHT TO A TRIAL?

9    A.   YES.

10   Q.   AT BOTH A PRELIMINARY HEARING AND AT A TRIAL YOU WOULD HAVE

11   A RIGHT TO SEE, TO HEAR AND TO HAVE YOUR ATTORNEY CROSS EXAMINE

12   ANY WITNESSES WHO WOULD BE CALLED AGAINST YOU.

13        DO YOU UNDERSTAND THAT YOU HAVE THAT RIGHT?

14   A.   YES.

15   Q.   YOU GIVE IT UP?

16   A.   YES.

17   Q.   YOU HAVE A RIGHT TO USE THE POWER OF THIS COURT TO BRING IN

18   YOUR OWN WITNESSES, THE SUBPOENA POWER OF THE COURT.

19        DO YOU UNDERSTAND THAT YOU HAVE THAT RIGHT?

20   A.   YES.

21   Q.   YOU GIVE IT UP?

22   A.   YES.

23   Q.   YOU HAVE A RIGHT AGAINST SELF INCRIMINATION.  WHEN YOU SAY

24   NO CONTEST WHAT YOU ARE SAYING IS I'M NOT GOING TO FIGHT THIS

25   CHARGE, I AM GOING TO LET MY ATTORNEY STIPULATE THAT THERE IS A

26   FACTUAL BASIS FOR THE COURT TO FIND ME GUILTY.  AND A NO CONTEST

27   PLEA HAS EXACTLY THE SAME EFFECT AS A GUILTY PLEA.

28        DO YOU UNDERSTAND THAT?

1    A.    YES.

2    Q.    DO YOU WISH TO GIVE UP YOUR RIGHT AGAINST SELF

3    INCRIMINATION?

4    A.    YES.

5    Q.    THE AGREEMENT IS THAT YOU'LL SERVE 13 YEARS IN STATE

6    PRISON.

7          YOU WILL SERVE 80 PERCENT OF THAT 13 YEARS, BUT YOU

8    WILL THEN BE RELEASED ON PAROLE.  IF YOU VIOLATE PAROLE YOU CAN

9    BE SENT BACK TO PRISON FOR EVERY PAROLE VIOLATION.  DO YOU

10   UNDERSTAND THAT?

11   A.    YES.

12   Q.    THIS IS YOUR THIRD STRIKE, ALTHOUGH ONE OF THE STRIKES IS

13   BEING STRICKEN FOR PURPOSES OF SENTENCING IN THIS CASE.  THIS IS

14   A THIRD STRIKE.  ANY FUTURE FELONY CONVICTION EVEN IF IT'S FOR A

15   PETTY THEFT WITH A PRIOR CONVICTION COULD SEND YOU TO STATE

16   PRISON FOR 25 YEARS TO LIFE.

17          DO YOU UNDERSTAND THAT?

18   A.    YES.

19   Q.    THIS IS A REGISTERABLE OFFENSE.  WHAT THAT MEANS WHEN YOU

20   ARE RELEASED FROM CUSTODY YOU MUST REGISTER WITH THE POLICE

21   DEPARTMENT OF THE COMMUNITY IN WHICH YOU LIVE AS A SEX OFFENDER.

22          DO YOU UNDERSTAND THAT?

23   A.    YES.

24   O.    WHEN I SENTENCE YOU I WILL IMPOSE THE MINIMUM MANDATORY

25   FINE WHICH IS $200.  I AM REQUIRED BAY LAW TO IMPOSE THAT

26   MINIMUM MANDATORY RESTITUTION FINE.

27          NOW, BEFORE SENTENCING YOU HAVE A RIGHT TO HAVE A

28   PROBATION REPORT PREPARED AND TO HAVE THE JUDGE CONSIDER THAT

1   PROBATION REPORT.  SINCE IT IS MY UNDERSTANDING THAT YOU WANT TO

2   BE SENTENCED TODAY THERE WOULD OF COURSE BE TIME FOR THE

3   PROBATION REPORT TO BE PREPARED.  IT WILL BE PREPARED AND SENT

4   TO THE PRISON AUTHORITIES, BUT THE COURT WILL NOT HAVE THE

5   BENEFIT OF THE PROBATION REPORT IN THIS NEGOTIATED PLEA.

6            DO YOU UNDERSTAND THAT?

7   A.  YES.

8   Q.  DO YOU GIVE UP YOUR RIGHT TO HAVE THAT PROBATION REPORT

9   PREPARED BEFORE SENTENCING?

10  A.  YES.

11  Q.  YOU HAVE A RIGHT TO WAIT BETWEEN 4 HOURS AND 28 DAYS TO BE

12  SENTENCED ON THIS MATTER.

13           DO YOU WISH TO WAIVE THAT RIGHT?

14           MR. SWENSON:  ONE MOMENT, YOUR HONOR.

15

16                       (OFF THE RECORD DISCUSSION)

17

18           MR. SWENSON:  MR. ALLEN, DO YOU UNDERSTAND WHAT THE

19  JUDGE JUST SAID ABOUT THE TIME FRAME FOR SENTENCING, YOUR RIGHT?

20  A.  YES.

21  Q.  AND YOU WAIVE TIME FOR SENTENCING.

22  A.  YES.

23           THE COURT:  MR. ALLEN, DID ANYBODY PROMISE YOU

24  ANYTHING OTHER THAN WHAT HAS BEEN SAID HERE IN COURT TO MAKE YOU

25  ENTER A PLEA?

26  A.  NO.

27  Q.  DID ANYBODY THREATEN YOU?

28  A.  NO.

1   Q.   UNDERSTANDING THE RIGHTS THAT YOU GIVE UP, HOW DO YOU WISH

2   TO PLEAD TO THE CHARGE OF ATTEMPTED RAPE ON DECEMBER THE 9TH,

3   1996?

4   A.   GUILTY.

5            MR. SWENSON:  MAY WE WITHDRAW THAT, YOUR HONOR?

6            HE WISHES TO PLEA NO CONTEST.

7            THE COURT:  I WILL ACCEPT A NO CONTEST PLEA.

8            IS THERE A FACTUAL BASIS ON WHICH THE COURT CAN MAKE A

9   FINDING OF GUILT?

10           MR. SWENSON:  YOUR HONOR, IN VIEW OF THE DISCOVERY

11  THAT HAS BEEN PROVIDED, THE POLICE REPORTS, MY OWN

12  INVESTIGATION, WITH INFORMATION I HAVE RECEIVED REGARDING THE

13  PRIOR CONVICTIONS, MINDFUL OF SECTION 1101A AND B OF THE

14  EVIDENCE CODE AND 1108 IT IS MY BELIEF THAT THERE IS A FACTUAL

15  BASIS ON WHICH THE COURT MAY MAKE A FINDING AND I WOULD

16  STIPULATE.

17           MS. KLINGE:  SO STEPPED.

18           THE COURT:  I WILL MAKE THAT FINDING, MAKE A FINDING

19  THAT THE PLEA IS KNOWING AND VOLUNTARY.

20           MR. ALLEN, DO YOU WISH TO ADMIT THAT ON OR ABOUT THE

21  14TH OF NOVEMBER, 1990, YOU WERE CONVICTED IN THE SUPERIOR COURT

22  OF THE STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO, OF THE

23  FELONY CHARGE OF ASSAULT WITH INTENT TO COMMIT RAPE, A VIOLATION

24  OF SECTION 220 OF THE PENAL CODE.

25  A.   YES.

26           THE COURT:  IS THERE A FACTUAL BASIS FOR THE COURT TO

27  ACCEPT THE ADMISSION OF THE PRIOR?

28           MR. SWENSON:  YES.

1              MS. KLINGE:  SO STIPULATED.

2              MR. SWENSON:  SO STIPULATED.

3              THE COURT:  I WILL ACCEPT THAT ADMISSION OF THE FIRST

4    PRIOR, MAKING A FINDING THAT THE ADMISSION IS ALSO KNOWING AND

5    VOLUNTARY.

6              I WILL ENTERTAIN A MOTION TO STRIKE THE PRIORS, THE

7    ADDITIONAL PRIORS WHICH ARE ALLEGED, 3 OTHER PRIORS THAT ARE

8    ALLEGED.

9              MS. KLINGE:  WE WILL STRIKE THOSE FOR PURPOSES OF

10   SENTENCING, PRIORS 2, 3 AND 4.

11             THE COURT:  THE SENTENCE, MR. ALLEN, IS 13 YEARS IN

12   THE STATE PRISON.

13             MINIMUM MANDATORY RESTITUTION FINE IS $200.

14             YOU HAVE CREDIT FOR TIME SERVED FROM THE DATE OF

15   DECEMBER THE 9TH, SO THAT SHOULD BE 33 DAYS OF ACTUAL CREDIT.

16             MR. SWENSON:  HE HAD A QUESTION FOR ME, YOUR HONOR.

17             THE COURT:  YES.

18

19                       (OFF THE RECORD DISCUSSION)

20

21

22

23

24

25

26

27

28

8

STATE OF CALIFORNIA)
                    ) SS.
COUNTY OF ALAMEDA   )


    I, ROBERT M. CAYA, OFFICIAL SHORTHAND REPORTER, HEREBY

CERTIFY THAT THE FOREGOING IS A FULL, TRUE AND CORRECT

TRANSCRIPTION OF MY STENOGRAPHIC NOTES OF THE TESTIMONY GIVEN

AND PROCEEDINGS HAD IN THE ABOVE-TITLED ACTION.

DATED:  MAY 27, 1997

                              _____
                              ROBERT M. CAYA

# PROOF OF SERVICE BY MAIL

I, _____ DAVID ALLEN _____ , declare:

I am, and was at the time of the service hereinafter mentioned, over the age of 18 years and not a party to the above-entitled cause. My (residence or business) address is

P.O. Box 5003-Unit#2, Coalinga, Ca 93210-5003

and I am a resident of, or employed in, _____ FRESNO _____ County, California.

On the date of ___ May 20, 2008 ___ I served the PETITION FOR WRIT

OF HABEAS CORPUS, CERTIFICATE OF INTERESTED PARTIES, NOTICE AND INDEX

OF EXHIBITS TO BE LODGED IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS.
(exact title of document(s) served)

by depositing a copy of the document(s) in the United States mail at

(location) Coalinga State Hospital (city) Coalinga _____ ,

_____ FRESNO _____ County, California in a sealed envelope, with postage fully prepaid, addressed as follows: (In the space below insert the name and mailing address of each person you are serving with these documents. If the person is a party to the action or an attorney for a party, indicate that with the address).

Office of the Clerk
Court of Appeal
First Appellate District
350 Mc Allister Street
San Francisco, Ca 94102-4712

At the time of mailing there was regular delivery of United States mail between the place of deposit and the place of address.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: __ May 20, 2008

(Signature of person mailing)
DAVID ALLEN
(Name of person mailing, typed or printed)

# EXHIBIT "E"

1  **THOMAS J. ORLOFF**
   District Attorney
2  Alameda County
3  Masanao J. Morimoto
   Deputy District Attorney
4  State Bar #183757
   1225 Fallon Street, 9th Floor
5  Oakland, CA 94612
   Telephone: (510) 272-6222
6

7  Attorneys for Petitioner

F I L E D
ALAMEDA COUNTY

MAY 2 4 2007

CLERK OF THE SUPERIOR COURT
By _____
                      Deputy

8         **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF ALAMEDA**

10                **RENE C. DAVIDSON COURTHOUSE**

11  THE PEOPLE OF THE STATE OF CALIFORNIA,  )   No. **155532**
                                            )
12                            Petitioner,   )   PETITION FOR COMMITMENT
                                            )   AS A SEXUALLY VIOLENT
13                                          )   PREDATOR PURSUANT TO
                        v.                  )   WELFARE & INSTITUTIONS
14                                          )   CODE SECTION 6600 ET.SEQ.
                                            )
15  DAVID ALLEN,                            )
                                            )   DATE:    June 8, 2007
16                            Respondent.   )   TIME:    10:00 a.m.
    _____)   DEPT:    7
17

18       The People of the State of California, through the Petitioner, the District Attorney of the

19  County of Alameda, hereby allege that the Respondent, David Allen, is a sexually violent predator

20  as defined in Welfare & Institutions Code section ("WIC") 6600 et. seq. in that:

21       The Respondent has suffered at least one qualifying conviction for a sexually violent offense

22  described in WIC 6600(b), to wit: two violations of Penal Code section 220, assault with intent to

23  commit rape, which involved either force or substantial sexual conduct;

24       The Respondent currently suffers from at least one diagnosed mental disorder, to wit:

25  paraphilia, not otherwise specified, and antisocial personality disorder;

26       The Respondent is a danger to the health and safety of others in that he is likely to engage in

27  future sexually violent, predatory criminal behavior because of his currently diagnosed mental

28

1   disorder(s) unless he receives appropriate treatment in custody within the meaning of WIC 6601(c)

2   and WIC 6601(d);

3       Wherefore, the Petitioner respectfully requests that the Respondent be committed to the

4   custody of the Department of Mental Health for an indeterminate term.

6   DATED: May 23, 2007

                                        **THOMAS J. ORLOFF**
8                                       DISTRICT ATTORNEY

9
                                        _Masami J. Morimoto_
10                                      By: Masami J. Morimoto
                                        Deputy District Attorney
11

1 | **THOMAS J. ORLOF**
2 | District Attorney
Alameda County
3 | Masano J. Morimoto
Deputy District Attorney
4 | State Bar #183757
1225 Fallon Street, 9th Floor
5 | Oakland, CA 94612
Telephone: (510) 272-6222
6 |
7 | Attorneys for Petitioner

F I L E D
ALAMEDA COUNTY

MAY 2 4 2007

CLERK OF THE SUPERIOR COURT
By _____
                          Deputy

8 | ## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | ### IN AND FOR THE COUNTY OF ALAMEDA

10 | ### RENE C. DAVIDSON COURTHOUSE

| | | |
|---|---|---|
| 11 | THE PEOPLE OF THE STATE OF CALIFORNIA, ) | No.  $155532$ |
| 12 | Petitioner, ) | DECLARATION IN SUPPORT OF PETITION FOR |
| 13 | ) | COMMITMENT AS A |
| | v.   ) | SEXUALLY VIOLENT |
| 14 | ) | PREDATOR PURSUANT TO |
| 15 | ) | WELFARE & INSTITUTIONS CODE SECTION 6600 ET. SEQ. |
| 16 | DAVID ALLEN, ) | DATE:   June 8, 2007 |
| | Respondent.  ) | TIME:   10:00 a.m. |
| 17 | ) | DEPT:   7 |

18 | The undersigned declares the following upon information and belief:

19 | That he is the Deputy District Attorney for the County of Alameda assigned to prepare the

20 | Petition for the commitment of the Respondent, David Allen, pursuant to Welfare & Institutions

21 | Code section ("WIC") 6600 et. seq.;

22 | That the Respondent is currently an inmate at the California Department of Corrections and

23 | Rehabilitation facility located at Avenal State Prison;

24 | That the Respondent had a parole release date of May 5, 2007 but is currently being held

25 | until June 19, 2007 pursuant to WIC 6601.3;

26 | That the Respondent qualifies as a sexually violent predator ("SVP") as defined in WIC

27 | 6600 et. seq. in that he has suffered at least one qualifying conviction for a sexually violent offense,

28 | to wit: two violations of Penal Code section 220, assault with intent to commit rape, which

involved either force or substantial sexual conduct;

1

2

3

That Dr. Stephen Mayberg, Ph.D., the Director of the California Department of Mental Health, has requested that the Respondent be civilly committed as an SVP in the document attached to this declaration as "Attachment A;"

4

5

6

7

That Dr. Mayberg has requested that the Respondent be civilly committed as an SVP based upon the evaluations of two independent mental health professionals, Dr. Michael Masacco, Ph.D. and Dr. Craig Updegrove, Ph.D., whose reports are filed under seal as "Attachment B" and "Attachment C" respectively;

8

9

That doctors Masacco and Updegrove both determined that the Respondent has suffered at least one qualifying conviction for a sexually violent offense listed in WIC 6600(b);

10

11

12

That doctors Masacco and Updegrove both determined that the Respondent currently has a diagnosed mental disorder that makes him likely to engage in sexually violent, predatory criminal behavior unless he receives appropriate treatment in custody within the meaning of WIC 6601(c) and WIC 6601(d);

13

14

15

That based upon the foregoing, the undersigned believes that the Respondent is an SVP within the meaning of WIC 6600 et. seq. and thus is likely to engage in future sexually violent, predatory criminal behavior;

16

17

18

Wherefore, the undersigned respectfully requests that Court issue a holding order pursuant to WIC 6601.5 and set a probable cause hearing to determine if the Respondent should be held in custody until the adjudication of the attached Petition.

19

I do declare under information and belief that the foregoing is true and correct.

20

21

DATED this 23rd day of May, 2007 at Oakland, California.

22

23

**Masanao J. Morimoto**
Deputy District Attorney

24

25

26

27

28

~m~ Mental Health

1600 9th Street, Sacramento, CA 95814
(916) 653-1357

May 17, 2007

Thomas Orloff
**Attn: Masanao Morimoto**
Alameda County District Attorney
1225 Fallon Street, Room 900
Oakland, CA 94612

Dear Mr. Orloff:

RE: Allen, David  (CDC#: K39029)
    Referral for Civil Commitment Proceedings
    CDC Release Date: 5/5/2007 EPRD
    Controlling Discharge Date (CDD): 5/5/2010
    Inmate Location: ASP

This letter serves as a recommendation by the Department of Mental Health for commitment of the above named individual as a Sexually Violent Predator as specified in Welfare and Institutions Code (WIC) Section 6600, et seq. Subsequent to a pre-screen and referral by the Department of Corrections and Board of Prison Terms, the Department of Mental Health performed an evaluation of this person consisting of record review, risk assessment and clinical examination. Because this evaluation has concluded that all necessary statutory criteria are met, this case is being referred to your county for filing of a civil commitment petition pursuant to WIC Section 6601(h).

In accordance with WIC 6608.5(b)(1), the court makes a county of domicile determination based on documents mentioned in the statute. The Department of Mental Health recommends and requests that this determination be made upon commitment and be included in the commitment Court Order. If your office decides to pursue commitment and would like information and assistance in identifying the county of domicile, please contact the Department of Mental Health per the contact information provided below.

The mental health evaluation contained herein should be considered confidential under WIC Section 5328. Personnel involved in performing the evaluation are employees or contractors of the Department of Mental Health and can be reached through the Department. Inquiries regarding this material may be directed to the Sex Offender Commitment Program, Department of Mental Health, 1600 9th Street, Sacramento, California 95814. This office may be reached by telephone at (916) 653-1357.

Thomas Orloff
May 17, 2007
Page 2

Your office is required by WIC 6601 (I) to notify the Department of Mental Health within 15 days of making your decision in this matter. Please do not hesitate to request additional information regarding the enclosed referral and recommendation.

Sincerely,

STEPHEN W. MAYBERG, Ph.D.
Director

Enclosures

**MICHAEL M. MUSACCO, Ph.D.**
**Clinical Psychologist**
**5000 California Avenue, Suite 211**
**Bakersfield, California 93309**
**(661) 869-2610**

## WELFARE AND INSTITUTIONS CODE SECTION 6600
## COMMITMENT CLINICAL EVALUATION

Department of Mental Health
I declare that this is a true and correct copy of the
original document, **DMH Evaluator is qualified**
**pursuant to WIC 6601 (d) and/or (g).**

Gail Schifsky

Signature and Date

### I.   IDENTIFYING INFORMATION

| | |
|---|---|
| **Name:** | **David Allen** |
| **Date of Birth:** | **08/17/68** |
| **CDCR Number:** | **K-39029** |
| **CII Number:** | **A08227026** |
| **Release Date:** | **05/05/07** |
| **Facility:** | **Avenal State Prison** |
| **County of Commitment:** | **Alameda County** |
| **Date of Evaluation:** | **04/17/07** |
| **Date of Report:** | **05/01/07** |

David Allen (hereinafter referred to as "Mr. Allen") is a 38 year old, African-American male, who is currently incarcerated in the California Department of Corrections and Rehabilitation (CDCR) as the result of a 1997 conviction for PC 261(A)(2), attempted rape. This crime does not qualify as a sexual violent offense under the provisions of *Welfare and Institutions Code §6600*. However, Mr. Allen has two qualifying sexual offenses for convictions of PC 220, assault with intent to commit rape. His qualifying offenses occurred in 1985 and 1990.

I attempted to evaluate Mr. Allen at Avenal State Prison on 04/17/07. He was informed of the nature and purpose of the evaluation, which is to determine whether or not he qualifies as a Sexually Violent Predator under the provisions of *Welfare & Institutions Code* §6600.   In addition, I read the "Notice of Evaluation as a Sexually Violent Predator" consent form aloud and I asked him if he had any questions.    Mr. Allen had several questions, but ultimately indicated that he did not want to participate in the evaluation. He signed the notice indicating his decision to not participate in the evaluation. Consequently, the majority of the data presented in this report was obtained via a review of the records.

### SOURCES OF INFORMATION

In preparation for this report, the following sources were reviewed:

1.  State of California, Board of Parole Hearings, Sexual Violent Predator Letter, dated 03/23/07.
2.  State of California, Sexual Violent Predator Referral Memorandum, dated 02/03/07.
3.  State of California, Sexual Violent Predator Screening Report, dated 11/18/06.
4.  Level II Screening Report, completed by Richard Geisler, Ph.D., dated 04/03/07.
5.  Alameda County, Certificate of Magistrate and Commitment Document (Case No. 155885), dated 01/10/97.
6.  Alameda County, First Amended Complaint Report (Case No. 155885), dated 12/13/96.
7.  Alameda County, Abstract of Judgment – Prison Commitment (Case No. 129270), dated 01/27/97.
8.  Berkley Police Department, Universal Report Form (Case No. 96-65186), dated 12/09/96.
9.  Alameda County, District Attorney, Investigation Report, dated 01/28/97.
10. Alameda County, District Attorney, Felony Disposition Summary, dated 01/10/97.
11. San Francisco County, Felony Complaint Report (Document No. 1249764), dated 07/26/90.
12. San Francisco County, Abstract of Judgment – Prison Commitment (Case No. 137887), dated 11/14/90.
13. San Francisco County, Probation Officer's Report (Case No. 137887/J249764), completed on 11/14/90.
14. State of California, Department of Corrections, Charge Sheet, dated 07/30/90.
15. Marin County, Probation Officer's Report (Juvenile Court), dated 09/06/85.
16. Marin County, Pre-Trial Conference Report, dated 12/06/85.
17. Marin County, Probation Officer's Supplemental Report, dated 05/08/86.
18. Psychological Evaluation Report, completed on 02/26/86.
19. Marin County, Abstract of Judgment, dated 05/19/86.
20. Parole Officer Offense History Report, dated 03/13/86.
21. Legal Status Summary, dated 06/28/06.
22. State of California, Chronological History Report, completed between the dates of 02/10/97 and 06/28/06.
23. Institutional Staff Recommendation Summary, dated 03/06/97.
24. State of California, Rules Violation Report, completed on 10/16/97.
25. State of California, Rules Violation Report, completed on 01/09/98.
26. State of California, Rules Violation Report, completed 03/02/99.
27. State of California, Rules Violation Report, completed on 05/31/02.
28. State of California, Rules Violation Report, completed on 04/16/04.
29. State of California, Rules Violation Report, completed on 02/23/05.
30. CLETS Database Arrest Report, generated on 02/13/07.
31. Central and Medical File

Evaluation Procedures

1.  Records Review

Commitment Clinical Evaluation

RE: David Allen

2.    Mental Status Examination (attempted)
3.    Clinical Interview (attempted)
4.    Static-99
5.    Minnesota Sex Offender Screening Tool - Revised (MnSOST-R)
6.    Hare Psychopathy Checklist - Revised (PCL-R) (attempted)

## II.    FINDINGS

### A.    Has the inmate been convicted of a sexually violent criminal offense against one or more victims? YES

The data associated with Mr. Allen's qualifying offenses is referenced in the table below.

| Count | Conviction | Date of Offense | Victim | DOB | Age |
|-------|------------|-----------------|--------|-----|-----|
| 1 | PC 220 | 08/21/85 | Mary B. | Unknown | Adult |
| 2 | PC 220 | 07/25/90 | Su-Lam L. | Unknown | Adult |

Victim #1, Mary B., date of birth unknown, age unknown, Marin County Superior Court (Case No. 9680)

Mr. Allen's crimes against this victim were referenced in the Marin County Abstract of Judgment, completed on 05/19/86. This document indicated that Mr. Allen was convicted of one count of PC 220, assault with intent to commit rape; one count of PC 245 (A)(1), assault with a deadly weapon; and one count of PC 243.4, sexual battery. These crimes occurred on 08/21/85 and he was convicted by jury on 02/05/86. He was sentenced to incarceration for a period of nine years at the California Youth Authority. This crime was described in the following documents: Marin County Juvenile Probation Officer's Report, completed on 09/06/85; Marin County Pretrial Conference Probation Officer's Report, completed on 02/06/85; and Marin County Probation Officer's Supplemental Report, completed 05/08/86.

According to the Juvenile Probation Officer's Report, Mr. Allen was initially charged with the crimes of assault with intent to commit rape, assault with a deadly weapon, sexual battery, and kidnapping. The Pretrial Conference Report described the crime. According to this report, on 08/21/85 a Marin County Sheriff's officer was dispatched to the report of an assault. The victim was found lying in a creek, partially disrobed, and suffering from severe physical trauma. The officers obtained a description of the offense by interviewing Mr. Allen.

Mr. Allen reported that he been living in a boy's group home when he was involved in an argument with a group home counselor. He left the home and was wandering around school

property where a creek was. He reported that he saw the victim jogging nearby and positioned himself at the end of the bridge so that he could attack her as she approached.

Mr. Allen reported that he met the victim face-to-face, knocked her to the ground, and began punching her in the face with both fists as she screamed and yelled. He placed his body in a sitting fashion on top of the victim's chest and continued to strike her in the face while she continued to scream. Mr. Allen reported that he intended to have anal and vaginal sex with the victim. He reported that he drug the victim under a bridge so that he could rape the victim without being observed. He indicated that the victim's face was extremely bloody, messy, and spurting blood. He dropped the victim's head, shoulders, and upper chest into the creek water in order to wash off the blood. He dragged her to another location by some shrubbery in order to continue the assault without being caught. He began to remove the victim's clothing while the victim continued to yell and scream although her protests were not as loud as previously. Mr. Allen then covered the victim's face with her short pants in an effort to quiet her. Mr. Allen reported that at one time he struck the victim's stomach with his right hand and pressed hard on her stomach in order to stop her from making any other sounds. He noted that the victim began going into possible convulsions. Around this time, he noticed several children in the area and he became frightened as he believed that the victim may die and that he had been observed. Consequently, he fled the area. Mr. Allen reported that he had assaulted the victim using only his fists, but sheriff's officers found a large bloody stick in a location close to the attack.

On Page 9 of the Probation Officer's Report, dated 09/06/85, the victim's injuries were chronicled. The doctor treating the victim indicated that she suffered from extensive compression of the left check, nose, and right eyebrow bones. The victim's upper jaw was disconnected from her skull and free-floating. Her left cheekbone was broken and depressed into the sinus cavity. Her right eyebrow was fractured and compressed and four fingertips of her left hand were crushed. The victim's right forearm was fractured and she suffered from abrasions across her neck and a slight abrasion to her skull. The victim's right lung had accumulated fluid, which may have been blood coming down from her nasal cavity. The doctor indicated that he initially believed that the victim's injuries had occurred as the result of a fall from a height. When the doctor was interviewed, he indicated that the victim was still in intensive care, drifting in and out of consciousness. She was unable to control her bodily functions and her facial bones were wired shut and she had to breathe and eat through a tube placed in the base of her throat for a period of approximately two months. The doctor indicated that the victim could have died as a result of her injuries.

**Sexual Violent Offense**

The crime of PC 220 against this victim is found to be a sexually violent offense as statutorily defined. This offense involved an extreme degree of physical force and violence, causing serious injuries to the victim. Menace and fear were also a component of this crime. Consequently, this offense is found to be a sexually violent offense as statutorily defined.

| Commitment Clinical Evaluation | Page 5 |
|---|---|
| RE: David Allen | 04/17/07 |

Victim #2, Su-Lam L, date of birth unknown, age unknown, San Francisco County Superior Court (Case No. 137887)

The crimes involving this victim were identified in the San Francisco County, Felony Complaint Report, completed on 07/26/90. According to this report, Mr. Allen was charged with one count of assault with intent to commit rape, one count of penetration with a foreign object, and one count of assault with a deadly weapon. The Abstract of Judgment, completed on 11/14/90, indicated that Mr. Allen pled guilty to Count #2, assault with intent to commit rape, on 10/12/90. He was sentenced to prison for a period of six years as a result of this conviction. This crime was described in the San Francisco County, Probation Officer's Report, completed on 11/14/90, and the State of California, Charge Sheet, completed on 07/30/90.

The 1990 Probation Officer's Report indicated that state police officers were conducting a security check at the TransBay Terminal on Mission Street when a custodian approached them to report that a man and a woman were arguing by the bus lines. The police officers responded to this location and found the victim on the ground. Mr. Allen attempted to run off at this time. Officers interviewed the victim who was bleeding severely from several areas. The victim indicated she had finished work and she was waiting for a bus to return home. She saw Mr. Allen and as he walked past her, he stated, "You look good" and he grabbed her by the collar of her coat. He attempted to rip off the victim's clothing and he moved her toward some dumpsters. He picked her up by the upper torso and buttocks area between her legs. The victim reported that Mr. Allen held her in a choke-hold from behind while he was trying to rip her clothing off. She began screaming and fighting with Mr. Allen as he drug her toward the dumpster. She knew that she would be in a secluded area and she attempted to fight off Mr. Allen by biting him on the forearm. When the victim did this, Mr. Allen became angry and threw her to the ground. He then stood over the victim with his feet at her sides and began punching her in the face and side of her head. He held the victim's legs down as he was ripping off her clothing and she felt him use multiple fingers to penetrate her vagina. The next thing she recalled, Mr. Allen was gone and the state police were there with her. She reported that she believed that Mr. Allen was going to kill her.

The officers noted that the victim suffered from a laceration to her right eyelid, a cut to her left ear, and severe swelling below both eyes. There were abrasions and contusions on her chest, her clothing was torn, and her underpants and pants were ripped. The report noted that the victim was reluctant to describe Mr. Allen or discuss the crime.

When Mr. Allen was in a holding cell at the substation, he made the following comments, "I should have never bothered with that woman, I should have gotten on the bus. I'm so sorry, I'm so sorry...I feel like the lowest scum in the world, like pond scum." Mr. Allen was reminded of his Miranda Rights, but several minutes later stated, "I fucked up. I just got out a month ago and I'm going back in...that's what happens when you drink too much."

When Mr. Allen was interviewed by the probation officer, he indicated that he was angry and frustrated. He reported that he was intoxicated and took out his anger and frustrations on the victim. He acknowledged that he hit the victim several times in the face, but he denied that he had the intention of committing rape. He reported that he was going to back away from her when she bit him at which time he became angrier and just wanted to hurt her. Mr. Allen reported that he loathed rapists and did not consider himself to be a rapist. He discussed his 1985 offense and indicated that he "was acting out a fantasy of what a rapist does." He indicated that he realized that he had a problem with anger and wanted psychiatric help. He wanted to prevent another such incident from happening again.

**Sexual Violent Offense**

The crime of PC 220 against this victim is found to be a sexually violent offense as statutorily defined. This offense involved force and violence as Mr. Allen repeatedly struck and attacked the victim. Menace and fear were also a component of this crime. This crime involved substantially physical aggression leading to the victim's injuries as previously described. Consequently, this offense is found to be a sexually violent offense as statutorily defined.

Mr. Allen has been convicted of two qualifying offenses against two victims leading me to conclude that he is positive on Criterion A; he has been convicted of a sexually violent offense against one or more victims.

## B.     Does the inmate have a diagnosable mental disorder that predisposes the person to the commission of criminal sexual acts? YES

As previously noted, Mr. Allen did not participate in the interview. Thus, the majority of the historical information was obtained via a review of the records. However, in this case there appears to be a good deal of records describing his early history. The Probation Officer's Report, completed on 09/06/85, described his early history.

Mr. Allen's contact with the police began at the age of 7 when Berkley police officers noted that he was missing from his home. At the age of 10, Mr. Allen was charged with burglary, but he was counseled and released. Later that year, he was found to be a runaway on several occasions. The following year (02/27/79) he was found to be beyond control and was charged with running away and resisting arrest.

In 1979, he was declared a ward of the court after he was charged with illegally operating a vending machine. He was placed in a boy's home in Marin County. He was charged with approximately nine counts of running away from the boy's home between 09/22/79 and 03/05/80. He remained in the St. Vincent's School for Boys where he had been living at the time that he committed his first qualifying sexual offense. The report noted that Mr. Allen had multiple behavior problems; however, there was no prior history of violence. He was described as exhibiting low stress tolerance and used anger to cope with his frustration. The report noted

Commitment Clinical Evaluation                                    Page 7
RE: David Allen                                                   04/17/07

that Mr. Allen was unable to return to his father's care due to his inability to follow the rules and
the father's inability to improve his parenting skills or cooperate with family counseling.

On 10/29/84, a juvenile court report indicated that Mr. Allen continued to violate curfew, use
abusive language toward others, and abuse alcohol and drugs. He was placed in Juvenile Hall
for breaking and entering a home and he was later suspected of being in possession of marijuana.
Group home staff indicated that Mr. Allen had a tendency toward depression and suicidal
behavior.

On Page 11 of the 09/06/85 Probation Officer's Report, a family history was obtained. This
report noted that Mr. Allen was placed in the full-time custody of his father when he was an
infant. He had little contact with his mother since he was four months old. He lived with his
father in his paternal grandmother's home until 1979 and there was no report of abnormal
development up to this point. However, when Mr. Allen's father began living with a woman,
Mr. Allen's behavior deteriorated. He began running away from home in 1978 and Mr. Allen
accused his father of excessive beatings. In 1979, Mr. Allen was placed in the St. Vincent's
Boy's Home. While at the group home, it was noted that Mr. Allen had not developed any close
friendships during the six year period of time he was in the home. He was twenty credits behind
in school, but he was identified as possessing average intelligence. It was noted that Mr. Allen
did not follow through and complete his assignments. The program director at St. Vincent's Boy
Home reported that he had known Mr. Allen for a period of six years. He indicated that Mr.
Allen was indifferent and his biggest problem was that he wanted to be independent, but he
could not care for himself.

**PSYCHIATRIC HISTORY**

Mr. Allen was evaluated by a psychiatrist and a psychologist after he committed his 1985
qualifying sexual offense. Both reports were completed on 02/26/06. According to the
psychologist, Mr. Allen was described as somewhat anxious. He minimized responsibility for his
offenses and denied that he had planned to rape the victim. He claimed that his confession was
coerced and inaccurate. According to Mr. Allen, the victim had "startled him" as she jogged by
and he "freaked" and began hitting her. He continued to assault her as she was screaming. Mr.
Allen reported that he did not want to discuss the crime in further detail because he did not want
to be reminded of the event.

Mr. Allen reported that he had been upset on the day of the offense at "life in general" and the
psychologist noted that Mr. Allen tended to portray himself as a victim of life. For example, Mr.
Allen stated, "Trouble finds me." The psychologist described Mr. Allen as "continually
annoying and irritating both in his subtle resistance to cooperate with some of the testing and in
his tendency to avoid talking about sensitive personal areas." The psychologist noted that Mr.
Allen had been the victim of emotional and physical abuse during his childhood. Mr. Allen
"proudly" displayed scars from beatings administered by his father. The report noted that Mr.

Allen denied homosexual prostitution which was referenced in other reports. His intelligence was measured to fall within the average range although specific I.Q. scores were not reported.

A psychiatrist completed an evaluation of Mr. Allen on the same day. This report noted that Mr. Allen was "of huge physical stature." Mr. Allen told the psychiatrist that he had assaulted the victim, but he was unable to provide any reasons for the act and he denied that there was a sexual intent to the assault. When describing the offense, he reported, "It was an accident." He described his behaviors as "impulsive," but he responded in vague and obscure terms when describing his offense. The evaluator described that Mr. Allen as emotionally detached, noting,

> His offense demonstrates that he lacks the capacity for empathy and is therefore capable of perpetrating unspeakable cruelty without experiencing a sense of horror or revulsion. There is no indication of remorse for his offense. He claims to have had no nightmares regarding the offense, and in fact, takes pride in claiming that he can determine the nature of his dreams which are therefore pleasant.

The report noted that Mr. Allen suffered a head injury when he was four years old, but there was no evidence of organicity. A diagnosis of a Mixed Personality Disorder was offered.

The next available mental health progress note was a psychiatric evaluation completed on 01/25/90 prior to Mr. Allen's release from the California Youth Authority. At this time, he was described as superficially cooperative, but evasive. There was no evidence of depression or symptoms of psychosis. When asked about his crime, Mr. Allen admitted that he was guilty of attempted rape. He admitted that he assaulted the victim and committed "sexual battery" because he "touched her nipples." However, he reported that the police coerced him into admitting other portions of the crime. Mr. Allen indicated that he did not know why he attacked the victim, but was not interested in raping her. According to him, he heard her jog by and "it just happened." He reported that he reacted "like in combat" as if he had to "defend against a threat." He reported that he took the victim's clothing off in order to wash her off because she was bleeding. He reported that he "went blank," but the evaluator noted that he was able to describe events if he wanted too. The psychiatrist noted that Mr. Allen did not offer any spontaneous expression of remorse or concern for the victim.

It was noted that Mr. Allen had refused to participate in the sex offender group. Mr. Allen told the evaluator that he was unable to offer any explanation for this offense other than to note that he beat the victim because of "years of taking shit from other people." The psychiatrist offered the following comment: "If he did intend to rape her, he is guilty of a serious sexually motivated attack. If he didn't intend to rape her, then he is guilty of a totally irrational attack seemingly without motivation..." The evaluator noted that there was no evidence that Mr. Allen had demonstrated insight into his offense and there was no evidence that he had changed in a substantial way. Thus, the evaluator concluded,

Commitment Clinical Evaluation
RE: David Allen

There is no reason to predict that he will not again behave in a similar fashion. Nonetheless, there is no evidence that this young man is suffering from any mental or brain disorder that would in any way relieve him of the responsibility for his behavior. He is capable of controlling his behavior and must be held strictly accountable for it.

The next available mental health progress note was completed by a psychiatrist in CDCR on 07/01/02. At this time, Mr. Allen had been self-referred due to stress and depression. However, he indicated that he did not want to be in the mental health treatment population and there was no further reference to his mental state.

On 03/04/05, Mr. Allen was evaluated by a psychologist after he was charged with a Rules Violation Report for being overfamiliar with female staff. He was described as alert and oriented with good grooming and hygiene. There was no reference to symptoms of psychosis and no indication of a mental illness. Mr. Allen was found to be appropriate for General Population.

## SEXUAL/LEGAL HISTORY

The majority of Mr. Allen's illegal behavior and various Rules Violation Reports are associated with his sexual behaviors. Thus, the sexual history and legal history will be described below.

After Mr. Allen was convicted of his initial qualifying offense, he was sentenced to the California Youth Authority for a period of nine years. However, he was convicted of his second qualifying offense shortly after he was released to parole from his initial qualifying offense. Specifically, when Mr. Allen was arrested on 07/25/90, he told the officers that he had been out of the California Youth Authority for a brief period of time prior to his second qualifying offense. As previously indicated, on page four of the Probation Officer's Report, Mr. Allen was quoted as saying, "I fucked up, I just got out a month ago and I'm going back in." After Mr. Allen was convicted of his second qualifying offense in 1990, he was sentenced to prison for a period of six years. However, he was convicted of an additional sexual offense after he was released to parole following his second qualifying offense. Specifically, Mr. Allen was convicted of attempted rape, PC 261(A)(2), which occurred on 12/09/96. This crime was referenced in the Alameda County, First Amended Complaint Form, completed on 12/06/96. According to this report, Mr. Allen was charged with the crime of attempted rape against victim Patricia K. The associated Abstract of Judgment indicated that he pled guilty to this crime on 01/10/97 and he was sentenced to prison for a period of thirteen years. This crime was described in the Berkley Police Department Arrest Report, completed on 12/09/96.

According to the Arrest Report, the victim was walking down the street when she saw Mr. Allen's vehicle parked next to a curb. Mr. Allen was seated in the front passenger seat with the door open. After the victim passed, she looked backward and saw that Mr. Allen had exited the car completely naked. He was holding his penis with both hands and running toward her. She yelled at him and he stopped. She then ran away and contacted a police officer. When Mr.

Allen's car was searched, officers found tape, electrical cord, gloves, knife, sexual lubricant, and an empty pornographic tape case. The officers opined that these items were intended to be used for an abduction and sexual assault crime. Mr. Allen invoked his Miranda Rights and offered no comment at the time of his arrest. The Arrest Report described Mr. Allen's possessions which included numerous plastic bags of skin lotions, oils, ointments, perfumes, and lubricants as well as tape, a mixed collection of gloves, numerous small flashlights, and a ball of speaker wire. The officer deemed that these materials constituted "rape kit," which Mr. Allen had collected.

I did not have access to data which identified the amount of time Mr. Allen had been in the community after his second qualifying offense prior to the commission of his 1996 nonqualifying offense. However, in CDCR Mr. Allen has received numerous Rules Violation Reports for sexual behavior.

On 10/16/97, Mr. Allen received a Rules Violation Report for inappropriate sexual behavior while he was housed in the California Men's Colony Prison. According to this report, Mr. Allen approached an officer in a nervous manner and indicated that he was trying to mail an envelope. He handed the officer an empty envelope and the officer noted that Mr. Allen was fidgeting in his pants pockets. He turned toward the officer, smiling and began rubbing a bulge on the outside of his pants while looking at the officer. Mr. Allen pled not guilty for the crime and denied that he had smiled at the officer. He reported that the officer was female and she had misunderstood his behavior. He acknowledged that he rubbed his genitals, but he denied that the offense was sexual.

A Rules Violation Report completed on 01/09/98 referenced the 10/16/97 offense and indicated that Mr. Allen had been charged with disrespect to staff. When he was asked about the prior offense, he acknowledged that he had touched his crotch area because he had psoriasis . He indicated that he did not have a bulge in his pants and he did not smile at the officer. Mr. Allen noted, "A person would have to be nuts to come up here and draw that kind-of attention to himself."

On 03/02/99, Mr. Allen received a Rules Violation Report for obstructing a peace officer in the performance of duties. At this time, it was noted that he did not lie down on the ground in response to an alarm. There was no evidence to indicate that this offense was associated with sexual motivation.

On 05/31/02, Mr. Allen received a Rules Violation Report for masturbation. On 05/30/02, Mr. Allen's work supervisor found Mr. Allen lying on his back masturbating. Apparently, he was supposed to be working and instead was found in an act of masturbating on the jobsite. Mr. Allen indicated that the officer who found him was incorrect. He noted, "Her story is incorrect...I was not masturbating."

On 04/16/04, Mr. Allen received a Rules Violation Report for being unshaven. He received similar Rules Violation Reports for violating the grooming standards.

Mr. Allen's last Rules Violation Report occurred on 02/23/05 when he was charged with attempted overfamiliarity with staff. This report noted that Mr. Allen had been at the library and he attempted to loiter and remain after the library was closed. The female officer noted that Mr. Allen knocked on the door after the library was closed. He told the officer that he had left his pen in the library. The officer contacted additional staff and Mr. Allen was interviewed. At this time, he admitted that he intentionally returned to the library in an effort to talk to and be alone with the female employee. He acknowledged that he was hoping to obtain the female employee's telephone number, but he denied that he had any intention of harming this person. Mr. Allen provided the following statement, "I had no intention of any harm, it was an error of judgment. I was a little over-familiar, but I didn't want to do any harm to her. I wanted to talk to her. I wanted her phone number." The report noted that Mr. Allen had a history of sexual-related offenses and his attempt to become overfamiliar with a female staff member was deemed to be a threat to the safety of the institution. Mr. Allen was housed in the Administration Segregation Unit as a result of this behavior. Mr. Allen has not accumulated any other Rules Violation Reports.

## MENTAL STATUS EXAMINATION

Mr. Allen read the Notice of Evaluation Form and mulled over the contents of this document for a period of at least ten minutes. During this time, he expressed concern about participating in the evaluation. He had several questions regarding the nature of the evaluation and his interactions with me were unremarkable. There was no evidence of an overt impairment in his mood, thoughts, or reality contact. His appearance was remarkable for his size as he appeared to be approximately 6'6" and 280 pounds. However, his appearance and behavior were otherwise unremarkable. Eventually, Mr. Allen indicated that he did not want to participate in the evaluation as he did not believe that his participation would be in his best interest. No further data was obtained in my face to face contact with this individual.

## RESULTS

The results of this evaluation indicate that Mr. Allen has the following diagnostic profile:

Axis I      Paraphilia, Not Otherwise Specified (Nonconsent)

Axis II     No Diagnosis, Antisocial Personality features

The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition – Text Revision (DSM-IV-TR) describes a Paraphilia, Not Otherwise Specified, as a coding for Paraphilia that do not meet the criteria for any of the specific categories. The essential features of a Paraphilia as described in the DSM-IV-TR are as follows: over a period of at least six months, recurrent, intense, sexually arousing fantasies, sexual urges or behaviors generally involving 1) non-human objects, 2) a suffering or humiliation of one's self or one's partner, or 3) children or other non-

| Commitment Clinical Evaluation | Page 12 |
| RE: David Allen | 04/17/07 |

consenting persons that occur over a period of at least six months. The behaviors, sexual urges or fantasies, cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

I offered the diagnosis of Paraphilia, NOS (Nonconsent) to account for Mr. Allen's history of sexual behaviors which date back to 1985. As described under Criterion A, Mr. Allen was convicted of two qualifying sexual offenses in 1986 and 1990. These offenses involved a high degree of violence and physically assaultive behaviors which appeared to be consistent with a Paraphilia. It was noted that Mr. Allen was released to parole for only a brief period of time after his initial offense and prior to the commission of his second offense. Mr. Allen was convicted of a third sexual offense of attempted rape. I am unsure how long he was out in the community prior to the commission of this crime. Nevertheless, his pattern of behavior in the community reveals repeated acts of sexually aggressive behaviors reflecting an impairment in his emotional and volitional control associated with a finding of a Paraphilia. Furthermore, in CDCR he has been charged with Rules Violation Reports for inappropriate sexual behavior, masturbation, and overfamiliarity with staff. These behaviors appear to reflect an ongoing impairment in his emotional-behavioral functioning associated with his Paraphilia. Thus, the diagnosis of Paraphilia, NOS (Nonconsent) is offered.

It is noted that *Welfare & Institutions Code §6600* defines a mental disorder in the following way:

> A diagnosed mental disorder includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to criminal sexual acts to a degree constituting the person a menace to the health and safety of others.

Mr. Allen meets the criteria for a diagnosis of Paraphilia, NOS (Nonconsent). He has demonstrated a substantial impairment in his volitional and emotional capacity, which predisposes him to criminal sexual acts. The impairment in his volitional and emotional capacity is best illustrated by his comments as noted in the arrest documents. After Mr. Allen was arrested for his first qualifying sexual offense, he indicated that he had decided to attack the victim in order to sexually assault her. The victim was severely injured in the course of this offense and Mr. Allen indicated that he planned to rape the victim anally and vaginally. Several months after this offense, Mr. Allen was evaluated by a psychologist and a psychiatrist at which time he indicated that his offense was not sexually motivated. Instead, he indicated that the victim "startled" him and he "freaked out" and began hitting her. He told the psychiatrist that his behavior was an "accident like an impulse, but not quite." After serving time for this offense, he was released to the community for a brief period of time before he committed his second qualifying offense in 1990. When Mr. Allen was arrested for this crime, he indicated that he regretted his offense noting, "I feel like the lowest scum in the world, like pond scum." He then noted, "I fucked up, I just got out a month ago and now I'm going back in. That's what happens when you drink too much." When he was interviewed by the probation officer, he indicated that

Commitment Clinical Evaluation | Page 13
--- | ---
RE: David Allen | 04/17/07

he was angry and frustrated and he took out his frustration on the victim. At this time, he described his initial qualifying offense indicating that he was "acting out a fantasy of what a rapist does." However, he denied that he considered himself a rapist. He also told the probation officer that he wanted to obtain mental health treatment because he wanted to prevent another such incident from happening.

Nevertheless, after he committed his second sexual qualifying offense, he was convicted of a third nonqualifying sexual offense. This crime was previously described. The victim reported that Mr. Allen ran toward her, completely naked, holding his penis. When Mr. Allen was arrested at this time, officers opined that he was in possession of a rape kit. Mr. Allen has continued to engage in sexual behaviors in the prison setting which have brought him to the attention of female officers. He has been charged with over-familiarity, masturbation, and inappropriate sexual behaviors. Thus, Mr. Allen has demonstrated an impairment in his emotional and volitional capacity, which predisposes him to criminal sexual acts. It is my opinion that he does suffer from a *Welfare and Institutions Code §6600* mental disorder and he is found positive on Criterion B.

## C. Is the inmate likely to engage in sexually violent predatory criminal behavior as a result of his diagnosed mental disorder without appropriate treatment and custody? YES

Static-99

In order to establish a baseline probability for sexual recidivism, I scored the Static-99 (Hanson & Thorton, 2000), which is an actuarial measure of risk for sexual offense recidivism. This instrument has been shown to be a moderate predictor of sexual re-offense, which was defined on this instrument as being convicted of a new sexual offense. As the table below illustrates, Mr. Allen received a total score of 8, which places him in the High Risk Category for being convicted of another sexual offense. When compared to sexual offenders from the Static-99 sample group, who were also placed in the High Risk category, it is noted that after five years, at least 39% sexually re-offended. After ten years, at least 45% sexually re-offended, and after 15 years, at least 52% sexually re-offended.

### Static-99 Score Summary

| | Risk Factor        Yes = 1,   No = 0 | Scores |
--- | --- | ---
| 1 | Under the age 25 at release? | 0 |
| 2 | Single (no two year relationship)? | 1 |
| 3 | Index non-sexual violence, any conviction? | 0 |
| 4 | Prior non-sexual violence, any conviction? | 1 |
| 5 | Prior sexual offenses? (Score range is 0-3) | 3 |
| 6 | Prior sentencing dates (excluding index)? | 1 |
| 7 | Convictions for non-contact sex offenses? | 0 |
| 8 | Any unrelated victims? | 1 |

Commitment Clinical Evaluation                                          Page 14
RE: David Allen                                                         04/17/07

| 9 | Any stranger victims? | 1 |
| 10 | Any male victims? | 0 |
| | TOTAL SCORE  = | 8 |

Mr. Allen's Static-99 score was calculated as follows:

(1)   Mr. Allen obtained a score of 0 on Item 1, as he is over the age of 25.

(2)   Mr. Allen obtained a score of 1 on Item 2, as there is no evidence indicating that he has
      lived with a lover or intimate partner for at least two consecutive years.

(3)   Mr. Allen obtained a score of 0 on Item 3, as he does not have an index conviction for
      non-sexual violence.

(4)   Mr. Allen obtained a score of 1 for Item 4, as he has a prior conviction for non-sexual
      violence (assault with a deadly weapon – 1985).

(5)   Mr. Allen obtained a score of 3 for Item 5, as he has four or more convictions occurring
      prior to his index sexual offense.

(6)   Mr. Allen obtained a score of 1 for Item 6, as he has four or more sentencing dates
      occurring prior to his index sexual offense.

(7)   Mr. Allen obtained a score of 0 on Item 7, as he has not been convicted of a non-contact
      sexual offense.

(8)   Mr. Allen received a score of 1 on Item 8, as his victims were unrelated.

(9)   Mr. Allen obtained a score of 1 on Item 9, as his victims were strangers as defined by the
      coding rules.

(10)  Mr. Allen obtained a score of 0 on Item 10, as he has no male victims.

Minnesota Sex Offender Screening Tool - Revised (MnSOST-R)

The Minnesota Sex Offender Screening Tool - Revised (MnSOST-R) is another actuarial
measure of sexual offense recidivism shown to be a moderately accurate predictor of sexual re-
offense.

On the MnSOST-R, Mr. Allen received a score of 11, which places him in the High Risk range,
which is associated with a group that has a 57% chance of being charged or convicted of another
sexual offense within six years of release from their last sexual offense.

Commitment Clinical Evaluation                                           Page 15
RE: David Allen                                                          04/17/07

The results of the Static-99 and the MnSOST-R were consistent as both instruments fell in the
high risk range.

### Hare Psychopathy Checklist – Revised (PCL-R)

The Hare Psychopathy Checklist – Revised (PCL-R) is the definitive standard in assessing the
construct of psychopathy. This test was first published in 1991, and it has been used in a variety
of clinical and forensic settings in order to assess for the presence of psychopathy as a
personality construct.

I did not attempt to score the Hare Psychopathy Checklist. Mr. Allen's failure to interview
prevented me from obtaining data necessary to accurately score this instrument.

Although the Static-99 and MnSOST-R are to provide an empirical baseline for sexual re-offense
potential, they do not include a complete evaluation of all of the risk factors, which are known to
be associated with sexual offense recidivism. Consequently, the following empirically derived
static and dynamic risk factors were also considered.

### Additional Static Risk Variables

Static risk factors for sexual re-offense refer to variables associated with sexual recidivism that
usually do not change over time. The static risk factors described below are not scored on the
Static-99 or the MnSOST-R, but have been shown to be significantly related, through research,
to sexual offense recidivism. It should be noted that those variables most likely to have a high
degree of intercorrelation have been grouped together in clusters. These variables are as follows:

- Sexual Deviance variables
  - Prior sexual offenses against two or more children under the age of 12, with at least one
    unrelated child victim (male or female)
  - Sexual offenses as a juvenile and an adult

Mr. Allen has a history of sexual offense behaviors occurring as a juvenile and as an adult.
However, he does not have sexual offense charges against children. Overall, it appears that he
possesses some sexual deviance consistent with his high risk ratings as noted above.

- Dropping out of most recent attempt at sexual offender specific treatment

I did not obtain evidence to indicate that Mr. Allen has participated in sexual offender-specific
treatment. Thus, this variable is inapplicable.

- General Criminality/Lifestyle Instability
  - Childhood maladjustment. Defined by two or more of the following instances that are separated by more than 12 months: Grade failure, psychiatric treatment, group home placement, or running away from home
  - Criteria for Conduct Disorder met
  - Psychopathy in Severe range (PCL-R $\geq$ 30)
  - Violation of conditional release or a new offense while on community supervision
  - Frequently unemployed as defined by the inmate being employed less than 50 percent of the last 12 months prior to incarceration

Mr. Allen possesses childhood maladjustment and he has violated conditional release on multiple occasions. I did not obtain specific evidence to confirm that he possesses a Conduct Disorder nor did I obtain information to indicate that he possesses severe psychopathy. Nevertheless, it appears that he possesses some elements of general criminality/lifestyle instability, which contribute to his risk for sexual re-offense.

Stable Dynamic Risk Variables

In addition to the Static Risk Factors described above, it is important to review the relevant Dynamic Risk Factors in order to assess Mr. Allen's risk for sexual re-offense. A Dynamic Risk Factor refers to something that has the capacity to change over time. There are two types of Dynamic Risk Factors – Stable and Acute. The Stable Risk Factors are more relevant to the assessment of long-term risk potential. The Acute Risk Factors can change rapidly and, if present, are more indicative of imminent risk of re-offense.

In order to facilitate a review of the relevant stable risk factors, operational definitions from the Stable 2000 (Hanson & Harris, 2003) were used. As with the static risk factors described above, the Stable 2000 organizes variables into clusters in order to minimize redundancy. It should be noted that these variables are rated by considering both current and historical information. These variables are described below.

It should be noted that Mr. Allen's failure to interview impacted my ability to assess these variables. Furthermore, it appears that Mr. Allen has spent the vast majority of his adulthood in prison which impacts my ability to assess how these variables would apply to his behavior in the community.

- Intimacy deficits

This variable is evaluated by examining three components that represent potential problem areas for sexual offenders. These components include the absence of (or significant problems with) an intimate partner, emotional identification with children, and a lack of concern for others.

| Commitment Clinical Evaluation | Page 17 |
|---|---|
| RE: David Allen | 04/17/07 |

I did not obtain evidence to indicate that Mr. Allen has ever been involved in a stable, intimate relationship.

• Sexual self-regulation

Sexual self-regulation is also divided into three components. These include sexual drive/preoccupation, sex as a coping mechanism, and deviant sexual interests.

Mr. Allen's sexual offense behaviors suggest that he possesses a high sexual drive and he has used sex as a coping mechanism. Furthermore, the degree of violence which he has used in the commission of his sexual offense behaviors suggests deviant sexuality. Furthermore, he has managed to accrue several sexual-related Rules Violation Reports in CDCR. Thus, I believe that he possesses a substantial impairment in his sexual self-regulation which contributes to his risk for sexual recidivism.

• Attitudes tolerant of sexual assault

Attitudes tolerant of sexual assault are assessed by having the individual identify the types of situations where a sexual offense would be acceptable.

The records indicate that Mr. Allen has been indifferent to his sexual offense behaviors. At times, he has indicated that he regrets his behaviors and at other times he has indicated that he was innocent of any offense behaviors. However, I did not obtain evidence to indicate that Mr. Allen has specifically stated that his sexual offense behaviors would be acceptable. Thus, it is difficult to assess how this variable impacts Mr. Allen's risk for sexual re-offense.

• Cooperation with supervision

This variable measures whether the individual is able and willing to work with supervision or a treatment program. Individuals who see themselves as not at risk for re-offense are more likely to place themselves in High-Risk situations.

Mr. Allen has demonstrated a distinct impairment in his ability to cooperate with supervision. Specifically, his last two periods of community release were cut short due to a sexual re-offense. Consequently, it is my opinion that Mr. Allen possesses deficits in his ability to cooperate with supervision, which will aggravate his risk for sexual recidivism.

• General self-regulation

The variable of general self-regulation also has three components including impulsive acts (other than sexual), poor problem solving skills, and negative emotionality.

It appears that Mr. Allen has not demonstrated impulsivity outside of his sexuality. Furthermore, I did not see evidence of impaired problem solving skills outside of his sexual problems. Thus, I did not obtain evidence of an aggravating factor associated with this variable.

- Diagnosed Cluster B Personality Disorder

Cluster B personality disorders would include antisocial, borderline, histrionic, and narcissistic personality disorders. Research has demonstrated that the presence of one of these personality disorders is associated with an increased risk for sexual re-offense.

I did not offer an Axis II diagnosis. I considered the diagnosis of an Antisocial Personality Disorder, but it appears that the majority of Mr. Allen's antisocial behaviors are a product of his Paraphilia rather than a personality disorder. Consequently, I did not obtain evidence of an aggravating factor associated with this variable.

### Protective Factors

The variables referenced below have been associated with reduced risk for sexual re-offense.

- Have been in community sex offense free for a significant period of time since committing index sexual offense
- Less than 15 years left in the offender's estimated life span due to age or poor health
- Successful completion of cognitive-behavioral sexual offender specific treatment program

I did not obtain evidence of any protective factors, which apply in this case.

### Clinical Issues

The only clinical issue obtained in this evaluation revolved around Mr. Allen's extreme use of violence with his first victim. The second victim also appeared to be assaulted in a severe fashion. In both cases, the offenses appeared to be carried out in an impulsive and unplanned fashion resulting in an impairment in Mr. Allen's volitional control. The third offense is also somewhat unusual insofar as Mr. Allen was completely naked when he chased the victim in public. This also appears to reflect some impairment in his volitional and emotional control. Mr. Allen's violent behaviors is extreme in my experience and raises a concern for the potential of severe physical harm carried out as a result of his Paraphilia. However, no other clinical issues were noted.

### Age

Research has shown that sexual offense recidivism tends to decrease with advancing age. Beginning around the age of 40 and continuing until older years, individuals with sexual offense

| Commitment Clinical Evaluation | Page 19 |
|---|---|
| RE: David Allen | 04/17/07 |

histories show a decrease in sexual recidivism. This is most prominently shown in individuals who are age 60 and older. Thus, this factor was considered in the course of this evaluation.

Mr. Allen is now 38 years old. Thus, his age would not be considered a mitigating variable. Furthermore, he has engaged in some sexually inappropriate behaviors in the recent past supporting this opinion.

Predatory

In addition to determining whether or not Mr. Allen's is "likely" to sexually re-offend, it is also necessary to consider whether or not a sexual re-offense would be "predatory" pursuant to the definition of *Welfare & Institution Code* §6600. *Welfare & Institution Code* §6600 defines predatory as an act that is directed towards a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom the relationship was established or promoted for the primary purpose of victimization.

All of Mr. Allen's sexual offense behaviors have been predatory insofar as the offenses were carried out against stranger victims.

Community Release Plan

I did not obtain evidence that Mr. Allen possesses a community release plan which mitigates his risk for sexual re-offense.

Summary

Mr. Allen is a 38 year old, African-American male, who meets the criteria for a diagnosis of Paraphilia, NOS (Nonconsent). Mr. Allen has spent less than several years in the community without being arrested or convicted of a new sexual offense. His crimes have been extremely violent and it appears that his first qualifying victim could have died as a result of injuries sustained in the attack. Although Mr. Allen has lamented his offense behaviors and indicated that he needs help, he has not received any help for his sexual behavioral problems. Furthermore, he has continued to engage in inappropriate sexual and interpersonal behaviors in the prison setting, illustrating the impairment in his functioning.

The results of the actuarial risk instruments indicate that Mr. Allen possesses a high risk for sexual recidivism. A review of the additional static and stable dynamic risk variables did not reveal any significantly mitigating factors. Mr. Allen possesses aggravating factors associated with his sexual self-regulation, intimacy deficits and inability to cooperate with supervision. As noted under Criterion B, it is my opinion that Mr. Allen suffers from a qualifying mental disorder. Furthermore, it is my opinion that Mr. Allen is "likely" to commit criminal sexual acts in the future without appropriate treatment in custody. Therefore, Mr. Allen is found positive on Criterion C.

| Commitment Clinical Evaluation | Page 20 |
| RE: David Allen | 04/17/07 |

## III.  CONCLUSIONS

Based on the above information, in my opinion, Mr. Allen does meet the criteria as a Sexually Violent Predator, as described in Section 6600(a) of the *Welfare & Institution Code.*

Respectfully,

Michael Musacco, Ph.D.

# Craig A. Updegrove, Ph.D.
## P.O. Box 12860
## San Luis Obispo, CA 93406
## (805) 544-8573

## SEXUALLY VIOLENT PREDATOR PROGRAM CLINICAL EVALUATION
## (WIC 6600 EVALUATION REPORT)

### I.    IDENTIFYING INFORMATION

| | |
|---|---|
| Inmate Name: | David Allen |
| CDCR Number: | K-39029 |
| CII Number: | A08227026 |
| Date of Birth: | 8-27-68 |
| EPRD: | 5-5-07 |
| CDCR Facility: | Avenal |
| County of Commitment: | Alameda |
| Date of Evaluation: | 4-26-07 |

Department of Mental Health
I declare that this is a true and correct copy of the original document, DMH Evaluator is qualified pursuant to WIC 6601 (d) and/or (g).

*Gail Schafsky*

Signature and Date

Sources of Information:    Mr. Allen is a 38 year old Black inmate who was contacted at Avenal State Prison for a period of 15 minutes in a private conference room. His Central File and medical chart were also reviewed and considered. Materials reviewed include:

Probation Officers Reports dated 11-14-90 (Case #137887/1249764)
      and 12-6-85/2-5-86/5-8-86 (Case # 14007)
Berkeley Police Department Report dated 12-9-96, 12-17-96
Alameda County District Attorney letter dated 1-28-97
Victim Statement dated 12-9-96
Institutional Staff Recommendation Summary dated 3-6-97
Parole Charge Sheet dated 7-30-90
Psychological Evaluation dated 2-25-86
Psychiatric Evaluation dated 2-26-86, 1-25-90
Abstract of Judgment
CLETS Database Response
State of California Criminal History Transcript
County Criminal Complaint

The nature and purpose of the evaluation was explained to the inmate and he appeared to understand this. He was given the English language printed version of the "Notification of Evaluation as a Sexually Violent Predator" to follow as this was read out loud by the examiner. Through the use of the "Notification" and the inmate's spoken responses to it, the examiner concluded that he understood its

intended meanings as well as his current situation and potentials in reference to the SVP law. He was informed that the evaluation report would be shared and that the evaluation was not confidential. Mandated reporting requirements pertaining to non-reported prior abuse were discussed. He was told that he could decline the interview, but that the evaluation would then be completed using only other sources of information. He declined to be interviewed for this evaluation as a sexually violent predator. His signed Notification Form is attached to this report. He received a copy of this form.

As the inmate refused to be interviewed, the evaluation was limited to a review of available records only. There was no opportunity to obtain the inmate's perspective on the documentation or to get first hand input from him regarding his future plans.

## II.    Findings (WIC 6600 Criteria)

### A. Has the inmate been convicted of a sexually violent offense against at least one victim?    YES.

Berkeley Police Department Reports dated 12-9-96 and 12-17-96 were reviewed. An Alameda County District Attorney letter dated 1-28-97 was also reviewed. The inmate was charged with PC 261a (2) (rape) and convicted for PC 261(a)/664 (attempted rape) for an offense committed on 12-9-96. The inmate was sentenced to 13 years in state prison. Although this offense does not qualify for WIC 6600 purposes, the circumstances of the offenses are detailed below.

Victim #1 (Patricia K., dob 8-23-74) was a 22 year old white female who was walking on a sidewalk before 5 a.m. when Allen got out of his car. He was completely naked, holding his penis with both hands and running towards her. She yelled at him and he stopped. She flagged down police who were able to stop Allen and detain him. Allen's car was missing a rear license plate and the front plate appeared to have been intentionally bent down and inward in a manner that prevented it from being easily identified. Found in the glove box were a large knife, box cutter and a pornographic video. Directly behind the driver's seat on the floor were found 2 plastic bags full of skin lotions, oils, ointments, perfumes, lubricants, a roll of tape, a mixed collection of gloves, numerous small flashlights and a ball of speaker wire. Allen had been released from parole in September 1996. The victim believed that he intended to rape her and was thoroughly frightened by what happened.

An Institutional Staff Recommendation Summary dated 3-6-97 noted that the inmate was in agreement with court transcripts.

The Probation Officers Report (POR) from the County of San Francisco dated 11-14-90 was reviewed. The inmate was convicted of PC 220 for an offense which occurred on 7-25-90. He had been charged with rape, assault to commit rape, assault with deadly weapon and sexual penetration with foreign object. The inmate was sentenced to 6 years in state prison. The circumstances of the offenses are detailed below.

Victim #2 (Su-lam L., Count # ) was an adult Asian woman who was assaulted by Allen on 7-25-90, one month after he had been released on parole. Police were contacted by a custodian who reported an argument between a man and a woman in an isolated unlit area of a bus terminal not open to pedestrian traffic. The victim was bleeding severely from several areas. Her clothes were torn and in disarray. Her underpants were torn apart and hanging around her ankle. Her blouse was torn open, exposing her chest area.  As police arrived, Allen ran off but was apprehended.

The victim had been waiting for a bus after getting off work. Allen also appeared to be waiting for  bus. As they walked past each other, he grabbed her by the collar of her coat and said "you look good".  He immediately tried to rip off her clothing while moving her toward the dumpsters. He picked her up and had her in a  choke hold from behind while trying to rip her clothes off.  The victim had been trying to fight him the entire time.  She began screaming, knowing they would be in a secluded area.  She bit him and he got angrier.  He threw her to the ground, face up.  He stood over her and "began slugging her in the face and on the sides of her head".  He ripped away her clothing and used one or two fingers to penetrate her vagina.  The next thing she remembered was when the police arrived.  When they were behind the dumpster, she saw him put his hands in his pockets and take something out.  She feared that it was a knife but never saw it.  She began telling him she was sorry in an effort to placate him but he got angrier.  She thought he was going to kill  her and was very frightened.

The victim refused a sexual assault exam, believing that he had not had a chance to do anything other than digitally penetrate her.  She didn't want to go to court as she didn't want the public to know of the offense.  Allen was found to have dried blood on the fingers of both hands.

While in a holding cell, Allen spontaneously said "I should have never bothered with that woman.  I should have gotten on the bus.  I'm so sorry, I'm so sorry.  I feel like the lowest scum in the world, like pond scum".  He later said "I fucked up.  I just go out a month ago and am going back in.  That's what happens when you drink too much".

The inmate  told the probation officer that he was angry, frustrated and intoxicated and took out his anger and frustrations on the victim.  He admitted hitting the victim several times in the face but claimed he had no intentions of committing rape.  He was about to back away from her when she bit him.  He

then became more angry and just wanted to hurt her. He stated that he loathed rapists and did not consider himself to be one. At the time of his 1986 assault to commit rape offense, he was acting out a fantasy of what a rapist does. He saw the reality of what happens to a rape victim and he did not like the results. He was committed to CYA. He realized that he had a problem with his anger and wanted psychiatric help and wanted to prevent another such incident from happening again. He wanted to talk to someone when he is feeling angry and didn't want the anger to build up inside him. He claimed to have drank almost a liter of vodka on the night of the offense.

<u>Sexually violent offense:</u>

According to WIC 6600, the criteria for a "sexually violent offense" is met when an individual is convicted for violating a specified section of the Penal Code and the offense involved an element of force, violence, duress, menace or fear. Force and violence refer to the act of using power and strength to overcome resistance for the purpose of violating, damaging or abusing another. Menace means any threat, declaration or act which shows an intention to inflict an injury upon another. Duress (according to Penal Code Section 261(7)(b) means direct or implied threat or force, violence, danger or retribution, sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act, which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted.

The circumstances of the offense indicate that force, violence, menace duress and fear were involved in the offense given that he picked the victim up, choked her and struck her in the face repeatedly. In summary, the offense on this victim qualifies as a sexually violent offense per WIC 6600.

Probation Officers Reports (POR) from the County of Marin dated 12-6-85, 2-5-86 and 5-8-86 were reviewed. The inmate was convicted of assault to commit rape (PC220), assault with deadly weapon (PC 245a1) and sexual battery (PC 243.4) for an offense which occurred on 8-21-85. He had also been charged with kidnapping and attempted murder but not convicted by the jury. The inmate was sentenced to 9 years in state prison. The circumstances of the offenses are detailed below.

<u>Victim #3</u> (Mary B.) was a female jogger who was sexually assaulted by Allen shortly after 5 p.m. on 8-21-85. She had been found lying in a creek and was partially disrobed, wearing only her socks and one jogging shoe. The victim suffered very serious injuries. When admitted to the hospital, she had difficulty breathing, was semi-comatose, agitated and had suffered blood loss. Her injuries were medically evaluated as easily life-threatening. She suffered several lacerations on the face, had a disconnected jaw, broken cheek bone, crushed

fingers and fractured arm. The victim weighed 110 pounds and 5 feet 3 inches tall (Allen was 238 pounds and 6 feet 6 inches tall).

The victim had told her daughters the day or so before the assault that she had seen a large Black man at the school. He had two sticks and was wandering about. The victim had become nervous and jogged over to the track to jog until the man left. A witness had found the victim with her top above the nipples and her pants off. The victim was holding her stomach and moaning. Even though the witness knew the victim, he did not recognize her due to her severe injuries.

Allen told Sheriff's deputies that he had gotten into an argument with a counselor in the St. Vincent group home and had wandered to a creek area. He saw a female jogger running by him. He shortly afterwards saw her running towards him and positioned himself so he could attack her as she passed. He knocked her to her knees and began punching her in the face with his fists as she screamed and yelled. He had also apparently hit her with a piece of wood (he was observed carrying a large tree branch twice as big as a baseball bat just prior to the offense). He sat on top of her chest and continued to strike her face as she continued to scream. He said he intended to have sex with her and was interested in both anal and vaginal sex. He was concerned about being seen and dragged her on a path under a bridge. He described her as being "extremely bloody, messy and spurting blood". He dropped the victim's head, shoulders and upper chest into the creek waters to wash off the blood. He then dragged her into some shrubbery so they wouldn't be observed.

He began removing her clothing. He tried to eliminate her screams and moans by covering her face with her shorts. At one point he had used extreme force by striking her in the stomach with his right hand and then pressed hard on her stomach to stop her from making any other sounds. He noticed that she seemed to be having convulsions and he became scared and frightened thinking the victim might die or that he had been seen. He then decided to flee the area.

A Psychological Evaluation dated 2-25-86 noted that Allen denied planning to rape the victim or having any sexual intent whatsoever. His confession after the crime was coerced and was not accurate. He claimed that the lady "startled him" as she jogged by and he "freaked" and started hitting her. He continued to assault her as she started screaming. He stated that he was upset at "life in general" that day as he couldn't play high school football that year. He generally portrayed himself as a victim of life and said "trouble finds me".

A Psychiatric Evaluation dated 2-26-86 noted that he considered the assault to be an "accident". He denied any sexual intention or that he was displacing angry impulses. There was no evidence of remorse for his offense. He was given a diagnosis of mixed personality disorder with schizoid and histrionic characteristics.

A Psychiatric Evaluation dated 1-25-90 noted his statements that he assaulted the woman and committed sexual battery. He admitted to touching her nipples but maintained that "the police coerced me into saying I did this and that ". He spoke of various subtle ambiguities and discrepancies in the trial as though he might not be guilty. He was unable to explain why he attacked the victim except to say that he was not interested in raping her. He heard her jog by "and it just happened". His reaction was "like in combat to defend against a threat". He took her clothes off "in order to wash her off because she was bleeding". At times he explained that he "went blank" but was clearly able to describe some of the events if he wanted to. There was no spontaneous expression of remorse or concern for the victim but he at one point commented blandly "every bone in her face was busted". He could offer no explanation for his behavior other than his "years of taking shit from other people". He had refused to participate in a sex offender group as he didn't want to listen to other people's "sob story and further no matter what I say it won't make any difference". He admitted that he got angry and lost his temper with the group leader and said "I told him if I was violent I'd nail you in the head with a chair". He declined another opportunity to consider the treatment group. He was felt to demonstrate his lack of emotional and behavioral control and he was seen as being extremely dangerous.

Sexually violent offense:

The circumstances of the offense indicate that force and violence were involved in the offense given his repeated and brutal physical attack on the victim. In summary, the offense on this victim qualifies as a sexually violent offense per WIC 6600.    In summary, this inmate has committed a sexually violent offense on two victims.

**B. Does the inmate have a diagnosable mental disorder that predisposes him to the commission of criminal sexual acts? YES.**

Developmental History:

The 1985 POR noted that Allen, as a result of harsh and abusive treatment from his father, had become a chronic runaway and truant by the age of 10. His parents were never married but they decided when he was 4 months of age that the father was to have permanent custody. He had little contact with his mother since that time. He lived with his father in the grandmother's home until about 1977. Things were apparently good until his father began living with a woman. He then began running away from home on several occasions for 2-3 days before being returned by police. He claimed excessive beatings but the father denied this. He was placed in St Vincent's Home in 1979.

The 1986 POR noted that he had become a chronic runaway and truant by the age of 10 and progressed to thefts and homosexual prostitution. He was later

expelled from a school due to repeated misbehavior and failure to follow instructions. By 1-18-82, his anger had decreased and his overall adjustment was good. There was extensive therapy with Allen and his father but it was decided for him to not return home to live. When Allen visited his father on weekends, he would wander away and keep irregular hours. By 6-17-83, he was considered to be resistant to any authority figures.

The 1990 POR noted that he received a GED while in CYA. He claimed to work part time as a model but could not provide any information on the employer. He had not been married but said his partner was Francyne.

An Institutional Staff Recommendation Summary dated 3-6-97 noted that he claimed work skills as a dishwasher, model and warehouseman.

Criminal History:

The 1990 POR noted that the inmate had a juvenile arrest history. He was declared a ward and placed in a School for Boys (residential treatment facility) after a sustained petition on 2-27-79 for runaway, curfew violation, resisting arrest and illegally operating a vending machine. It was noted that there were 20 instances of being a runaway between 7-9-78 and 12-2-79, although this was reported as early as 3-31-75. A petition was sustained on 5-25-84 alleging burglary and he was placed in Juvenile Hall. He was later returned to the School for Boys. He was committed to prison on 5-20-86 after a petition alleging assault to commit rape. He was paroled on 6-23-90.

While in custody, the inmate has received CDCR 115 disciplinary reports for disrespect to staff (10-16-97), obstruct peace officer (3-2-99), masturbation (5-30-02), being off bunk (11-20-03), being unshaven (2-13-04, 4-16-04) and over familiarity with staff (2-23-05). He had good work reports from 1999-2002.

On 10-16-97, Allen approached an officer in a nervous manner and showed the officer what appeared to be an empty envelope. A few minutes later, he was seen fidgeting in his pants pockets. He smiled towards the officer and the officer observed a bulge in the front of his pants. He then began rubbing the bulge on the outside of his pants while looking in her direction. Allen subsequently denied smiling at the officer but said he is a man and he did in fact have a bulge in his pants. He felt the female officer was the one with the problem and exaggerated the circumstances.

On 5-30-02, Allen was observed in the laundry area lying on a table and isolated by a cart that had been placed in front of the table he was lying on. His hand was inside his pants and he appeared to be masturbating. When he became aware of the officer's presence, he became flustered, straightened his clothes and returned to his work area. The staff person had observed suspicious behavior in the past as well. Allen denied that he was masturbating.

On 2-23-05, Allen was hesitant to leave the library at closing time and appeared to be stalling. The door was locked and secured but Allen returned one minute later and stated that he had forgotten his pen. He admitted that he had intentionally returned to the library in an effort to talk and to be alone with the female staff member. He had hopes of obtaining her telephone number. He stated later that he had no intention of any harm and it was an error of judgment. He "was a little over-familiar, but I didn't want to do any harm to her. I wanted to talk to her. I wanted her phone number".

## Mental Health History:

A Psychological Evaluation dated 2-25-86 noted that Allen was bothered by a prior diagnosis of "minimum brain damage" as he believed there was nothing wrong with himself. He described emotional deprivation and physical abuse as a child and proudly displayed scars from beatings by his father. He claimed frequent use of marijuana with his peers. He admitted a half hearted suicide attempt at the age of 11 when he stood on a railroad track as a train approached. He was considered to have average intelligence.

A Psychiatric Evaluation dated 1-25-90 referred to a history of physical abuse by his father to the extent of his stepmother intervening when he was 10 years of age as "he was afraid he might beat me to death". He admitted to being in 5-6 fights "in the blind" at the Karl Holton (CYA) school while denying a significant history of violence himself. He claimed that his first heterosexual intercourse was at age 14 with a same age peer while denying any homosexual activity or interest. He had been described by staff as intimidating, subtle and streetwise. He was superficially cooperative but evasive.

Mr. Allen was seen in prison by self referral for being stressed, depressed and in need of counseling on 7-1-02. He expressed no interest in medications and said he didn't want to be in the mental health population.    He was seen on 3-4-05 due to being in Administrative Segregation as a result of his disciplinary problem of over familiarity with female staff. He had attempted to get the female staff's phone number. He did not show indications of mental illness.

Prison chronos note that he was psychiatrically cleared for the general population on 2-14-97 and 3-4-05.

## Substance Abuse History:

The 1990 POR noted that he thought he might have an alcohol abuse problem as he had been drinking quite a bit upon his release from custody. An Institutional Staff Recommendation Summary dated 3-6-97 noted that he denied the use of drugs.

Current interview on  4-26-07:

The inmate was contacted by the evaluator.  He presented as a large, tall Black male.  He appeared friendly and talkative.  He immediately smiled widely and made an appeal to be "honest with each other" and quickly asked how his case looked and whether the evaluator believed him to have a mental condition.  He explained "I'm in CDC.  Any documentation is going to be biased.  I want to get out of prison, I've spent half of my life in prison.  I'm at a crossroads – to keep doing this stupid shit or to enjoy life like everyone is supposed to.  I'm older and see things differently.  The last time I was put in a bad situation on parole.  It will be the same thing this time".  He then asked if the evaluator was "scribbling the off-the-record tirade".

The inmate explained that he had previously declined the interview with another evaluator and declined to sign the Notification.  He believed that he had heard of some problem with signing the form.  He had planned to go to the library to research this but had not gotten around to doing this.  Nevertheless, he hesitated for a lengthy period before verbalizing that he was also declining the current interview.

Diagnoses:

The Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition - Text Revision (DSM-IV-TR) is the definitive reference work in the mental health field which provides diagnostic criteria for various mental disorders.  Mental disorders are defined as clinically significant behavioral or psychological patterns associated with distress, disability or impairment.  Personality disorders, which are diagnosed on Axis II, are inflexible and maladaptive patterns of functioning that cause significant impairment or distress.  The inmate was assigned the following diagnoses using the DSM-IV-TR as a reference.

Due to the inmate's recurrent and sexually arousing behaviors involving nonconsenting persons which have occurred over a period of several years, he would meet the diagnostic criteria for paraphilia not otherwise specified.

Regarding this diagnosis, the DSM-IV-TR states that the essential features of a paraphilia include recurrent, intense, sexually arousing fantasies, sexual urges or behaviors generally involving nonhuman objects, the suffering or humiliation of oneself or one's partners or children or other non-consenting persons occurring over a period of at least six months.  In addition, the behaviors, sexual urges or fantasies cause clinically significant distress or impairment in social, occupational or other important areas of functioning.

The paraphilic qualities of the inmate's offenses include his repeated non-consensual sexual activity with at least 3 women. His offenses have had a primary sexual motivation. He sexually reoffended in 1990 after only being back in the community for one month despite detection and incarceration for his sexual offense in 1985. His 1996 offense involved chasing a young female while naked and holding his penis in the early morning hours. A search of his vehicle at that time revealed items consistent with continued deviant sexual interests. He also has disciplinary infractions during his most recent custody from 1997-2005 which reflect deviant sexual motivations. It is possible that the inmate could meet the criteria for a sexual sadism diagnosis. Two of his offenses against women have been particularly brutal, utilizing force and suffering far beyond what would have been necessary to gain compliance for sexual victimization.

The inmate  meets the criteria for a diagnosis of antisocial personality disorder due to his pervasive pattern of disregard for and violation of the rights of others occurring since early teen years. He has failed to conform his behavior to social norms, been impulsive, showed reckless disregard for the safety of self or others, has been aggressive, consistently irresponsible and shown a lack of remorse.

It is possible that the inmate could meet diagnostic criteria for a substance disorder but information is currently lacking. He has voiced concern about possible alcohol abuse in the past. This diagnosis will be deferred at present.

The following clinical diagnoses (DSM-IV-TR) are rendered:

| AXIS I: | 302.9 | Paraphilia not otherwise specified (non-consenting partners) (Rule out sexual sadism) |
| AXIS II: | 301.7 | Antisocial personality disorder |

The WIC 6600 statute defines a diagnosed mental disorder as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others". His mental disorder makes it difficult for him to control his sexually violent behavior. His volitional capacity is affected in that his drive to engage in coercive sexual behavior overcame obvious barriers such as his victims' protests and a history of being detected and incarcerated for such behavior in the past. In addition, his condition affects his emotional capacity in that he is less likely to appropriately respond to the fear, protests and resistance of his victims. His level of callous disregard for the feeling of others predisposes him to repeating his sexually violent behavior in the future.

## C.    Is the inmate likely to engage in sexually violent predatory criminal behavior as a result of his diagnosed mental disorder without appropriate treatment and custody?    YES.

In my clinical opinion, this inmate is likely to commit a new sexually violent crime as a result of his diagnosed mental disorder without appropriate treatment and custody. He would present a substantial danger of committing sexually violent crimes if he were released to the community.    Factors involved in coming to this conclusion include clinical variables as well as an examination of statistical research findings.  A large body of research literature has identified several salient risk factors which predict sexual reoffense. These various clinical and research factors are discussed below.

In order to establish a baseline level of risk that the inmate  will commit another sexually violent offense, he was scored on the Static-99, an actuarial instrument developed by Hanson and Thornton (2000) to predict sex offense recidivism. The Static-99 is intended for use in measuring long-term risk potential and as a screening device to give rough estimates of recidivism risk.  The scale has been shown to be a moderate predictor of future reconviction for a sexual offense. The validity of the scale was tested on several different population samples with the scale showing similar predictive accuracy across different settings.  An individual's score can range from 0-12 with scores of 0-1 being classified as low risk, 2-3 as moderate-low risk, 4-5 as moderate-high risk and 6+ as high risk for sexual reoffense.  The inmate obtained a score of 7 on the Static-99 (high risk) and suggesting a  39% probability of reconviction within five years, a  45% probability of reconviction within ten years and a  52% probability of reconviction within fifteen years following release.

It should be noted that the above scoring does not give a point for being single. It is unknown whether the inmate has lived in an intimate relationship with another person for a full 2 year period.  Although the inmate would have had limited opportunity to accomplish this, no point was assumed.  The categorization of his risk, however, would be unchanged if this item was scored.

Because many sex offenses are never reported or the offender is never identified, the Static-99's prediction of sexual reoffense is likely to underestimate, perhaps significantly, the true incidence of sexual reoffense.  In addition, the Static-99 predicts sex offense convictions which would underestimate actual sexual offending.  The Static-99 is not intended to provide a comprehensive assessment of all the relevant risk factors pertaining to recidivism as it excludes numerous risk factors which research has established to be associated with sex offense recidivism.  Therefore, the following empirically derived static and dynamic risk factors, not explicitly considered by the use of the Static-99 alone, were also considered.

A static risk factor for sexual reoffense refers to a variable associated with sexual recidivism that does not change over time. The following static factors which are most likely to have a high degree of intercorrelation have been grouped together in clusters. These variables are as follows:

Sexual deviance variables

      -Sexual offenses against 2 or more children under 12 years of age,
          with at least 1 unrelated child victim
      -Juvenile and adult sex offenses

Treatment

      -Dropping out of sex offender specific treatment (most recent
          attempt)

General criminality/lifestyle instability

      -Childhood maladjustment (grade failure, psychiatric treatment,
          group home placement, running away from home; at least 2
          incidents over at least 12 months)
      -Conduct disorder criteria met
      -Psychopathy
      -Violation of conditional release or a new offense while on
          community supervision
      -Frequent unemployment (less than 50% employed for last 12
          months prior to incarceration)

Protective factors

      -Have been in community over 5 years without sexual reoffense
      -Reduced life span expectancy due to age or poor health
      -Successful completion of cognitive-behavioral treatment program
          for sex offenders

Sexually deviant preferences have been shown to be a strong predictor of sexual recidivism. The inmate has not sexually offended against 2 or more child victims under the age of 12 with at least 1 unrelated child victim. He does not appear to have this additional risk factor.

The inmate has a history of both juvenile and adult sexual offenses. He was almost 17 years of age at the time of his first documented sexual offense in 1985. Recidivism research has indicated that offenders who have both juvenile and adult sexual offenses are at higher risk to sexually reoffend. He would have this additional risk factor.

The inmate has apparently not participated in cognitive behaviorally oriented sex offender specific treatment in the past and has not since his most recent sexual offense. As research has indicated that successful involvement in treatment can

reduce sexual recidivism risk, he would not have the benefit of his recidivism risk being reduced by such treatment.

The inmate had a history of childhood maladjustment. Examples of childhood maladjustment would be grade failure, psychiatric treatment, group home placement and running away from home. Recidivism research has indicated that individuals who have had two or more instances of childhood maladjustment as defined above are at increased risk for sexual reoffense. He would have this additional risk factor.

The inmate appears to have met the criteria for conduct disorder prior to the age of 16 as evidenced by a history of truancy, runaways, fighting, thefts, sexual behavior and opposition to authority. Recidivism research has indicated that the presence of this factor would increase the risk for sexual reoffense.

The inmate's employment status in his last year in the community is unknown. Unemployment has been associated with increased risk for sexual reoffense. The impact of this risk factor is unclear.

In addition to the static risk factors described above, it is also important to consider relevant dynamic risk factors in an overall risk assessment. A dynamic risk factor refers to a variable which has the capacity to change over time, due perhaps to treatment or increased maturity. Below is a list of dynamic risk factors that are not scored on the Static-99 but which have been shown to be significantly related to sexual offense recidivism. These factors are contained in the STABLE Assessment, a dynamic risk assessment instrument developed by Hanson and Harris (2002).

Intimacy deficits
Problems with sexual self-regulation
Attitudes tolerant of sexual assault
Lack of cooperation with supervision
Problems with general self-regulation
"Cluster B" personality disorder (antisocial, narcissistic, histrionic or borderline)

It should be noted that the above list was developed with sexual offenders who were already in a community setting. The inmate's ratings on these factors, therefore, could not be done in exactly the same manner as the community sample. Researchers have still recommended considering these variables even though some of the items may need to be rated based on prior behavior in the community or recent institutional behavior. The current state of research on sexual reoffense would suggest that dynamic risk factors are important to consider, but have been less widely researched and should probably be given less weight than actuarial and static risk factor predictors. The information used is based upon current and historical information.

Intimacy deficits are evaluated by examining 3 components including lovers/intimate partners, emotional identification with children and lack of concern for others. In the rating of the Stable 2000, if there was a concern with any of these components, the cluster is then considered to be positive. With regard to the inmate, it is not known whether he is currently involved in an intimate relationship.  The quality of any possible past relationships is unknown. He has, however, shown a general lack of concern for others as evidenced by a low level of remorse and callous behavior.  He would likely be positive on this factor.

Sexual self-regulation is divided into 3 components including sex drive/preoccupation, sex as coping and deviant sexual interests.  The inmate's history of deviant sexual interest and history of using coercive sex would suggest the presence of this risk factor to some degree. His sexual infractions while in custody are also consistent with this as is his past apparent involvement with male prostitution.

The inmate has also had a mixed or poor level of cooperation with community supervision in the past.  Although he sexually reoffended within a month of his 1990 release from prison, he was apparently able to complete a parole period from 1993-96 without reoffense or serious violation. While in custody, the inmate has often continued an antisocial orientation towards staff and has had several behavioral incidents but there are indications that he has used some of his period of incarceration constructively and has positive work evaluations (1999-2002).

The inmate has had a substantial problem with anger in the past.  Recidivism research has suggested that anger problems are associated with increased risk for sexual reoffense.  The past presence of this risk factor for the inmate may indicate that he is at increased risk for sexual reoffense.

General self-regulation has 3 components.  These include impulsive acts (non-sexual), poor problem solving skills and negative emotionality.  The inmate has not particularly shown problems in these areas in recent years.  It is not known if the inmate  has had a significant problem with drug use and alcohol consumption in the past.

The inmate  has a long history of antisocial behavior with many arrests.  He has spent a substantial portion of his life in custody.  He has an antisocial personality disorder.  The presence of personality disorder has been shown by recidivism research to increase recidivism risk for sexual reoffense. The factor of criminality would increase his sexual reoffense risk.

In considering risk to sexually reoffend, it is important to question why his behavior in the future will be different than it has been in the past. There is nothing to suggest that his capacity to control his sexually deviant impulses would be different in the future.  Without treatment, there is nothing to suggest that his future behavior would be any different than his past behavior or that his

risk for sexual reoffense would be any different than it was at the time of his last offense in 1996.

The inmate would not be considered to be amenable to outpatient treatment at this time. He would pose a serious and substantial risk for committing other violent sexual offenses if in the community, with or without treatment. Mr. Allen's sexual offenses can occur quickly and with extreme violence. Despite lengthy mental health and social interventions as a youth and in early adulthood, Mr. Allen has continued to sexually reoffend. He has been resistant to treatment providers in the past and authority figures in general and sees himself as a victim. He has a history of mixed compliance with community supervision. Mr. Allen's history and potential for extreme sexualized violence will require lengthy community monitoring after successful completion of lengthy sex offender treatment done in a secure setting.

WIC 6600 defines "predatory" as "an act directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists or an individual with whom a relationship has been established or promoted for the primary purpose of victimization. The inmate's future sexual offenses are likely to be predatory in nature because he has sexually assaulted strangers in the past.

In summary, the inmate  received a Static-99 risk rating in the high range, indicating a 52% chance of sexual reconviction over 15 years. Considering other static and dynamic risk factors would suggest that the Static-99 estimate for sexual reoffense is an underestimate of actual reoffense potential. This is based on the presence of additional static risk factors, the lack of protective static factors and indications that the dynamic factors would aggravate his reoffense risk. Due to the above and to the fact that the Static-99 generally underestimates true sexual offending, this individual would meet the "likely" standard specified in WIC 6600.

## III.   CONCLUSION

**Based on the above information, in my opinion the inmate <u>does meet</u>  the criteria as a sexually violent predator as described in Section 6600 (a) of the Welfare and Institutions Code.**

Respectfully submitted,

*Craig A. Updegrove Ph.D.*

Craig A. Updegrove, Ph.D.
License # PSY 6529
CAU:cp

# EXHIBIT "F"

**SEX OFFENDER COMMITMENT PROGRAM (SOCP)**
**WIC 6600 (SEXUALLY VIOLENT PREDATOR)**

# CLINICAL EVALUATOR HANDBOOK
# AND
# STANDARDIZED ASSESSMENT PROTOCOL

## JANUARY 2004

California Department of Mental Health
Sacramento, California

# CLINICAL EVALUATOR HANDBOOK
# TABLE OF CONTENTS

INTRODUCTION................................................................................................ PAGE 1

STANDARDIZED ASSESSMENT PROTOCOL.............................................. PAGE 2

EVALUATOR PANEL AND LIABILITY.............................................................. PAGE 2

REFERRAL FROM DEPARTMENT OF MENTAL HEALTH............................. PAGE 3

SPECIAL REQUESTS FROM COURTS AND ATTORNEYS........................... PAGE 4

SCHEDULING AN EVALUATION..................................................................... PAGE 4
    ACCESS TO INSTITUTIONS

DEFINITIONS RELEVANT TO SOCP............................................................... PAGE 6

BEGINNING THE SOCP EVALUATION........................................................... PAGE 8
    THE CLINICAL INTERVIEW
    HISTORICAL INFORMATION
    DRAWING CLINICAL CONCLUSIONS

REPORT WRITING............................................................................................ PAGE 11
    SUBMITTING THE REPORT
    UPDATING THE REPORT

COURT TESTIMONY......................................................................................... PAGE 12
    SUBPOENAS AND DEPOSITIONS

SOCP CLINICAL EVALUATION PROTOCOL (SYNOPSIS)............................. PAGE 14

SOCP CLINICAL EVALUATION PROTOCOL (ANNOTATED)......................... PAGE 15

SVP COMMITMENT EXTENSION EVALUATIONS.......................................... PAGE 31

APPENDICES................................................................................................... PAGE 35

Address questions regarding this Clinical Evaluator Handbook to:

Department of Mental Health
Sex Offender Commitment Program
Long Term Care Services
1600 9th Street Room 250
Sacramento, CA 95814
Telephone: (916) 653-1357
Fax:        (916) 653-2257

Clinical Evaluator Handbook

## INTRODUCTION

The California Sexually Violent Predator (SVP) law is contained in Welfare and Institutions Code Section (WIC) 6600 et seq. (see Appendix A). This law was enacted in October 1995 and became effective January 1, 1996. It established a new category of civil commitment for persons found, upon release from prison, to be sexually violent predators. The SVP commitment term is two years, and may be renewed through the filing of a new petition for civil commitment. The SVP commitment is ended if the Department of Mental Health determines that the individual's diagnosed mental disorder has so changed that he or she is not likely to commit future acts of sexual violence. The statute has been amended numerous times since its enactment. A current version is contained in the appendix of this handbook. Over the years, Supreme and Appellate Court decisions have had a direct impact on the SVP evaluation process. This protocol includes references to the most relevant of these court decisions.

The Department of Mental Health (DMH) program that implements evaluation and treatment responsibilities under the SVP statute is the Sex Offender Commitment Program (SOCP).

Under this statute, DMH assigns two clinical evaluators (psychiatrists and/or licensed psychologists) to determine if an identified inmate has a diagnosed mental disorder such that he or she is likely to engage in acts of sexually violent predatory behavior without appropriate treatment and custody. These initial evaluators may also be state government employees. If these two evaluators agree that the inmate meets the criteria, the Director of DMH will request the designated counsel, in the county of last Department of Corrections (CDC) commitment, file a petition for civil commitment. If the initial evaluators are split in their opinion, DMH will assign two additional, but independent, evaluators to evaluate the inmate. These independent evaluators must also be psychiatrists or licensed psychologists, cannot be state government employees, and must have at least five years of experience in the diagnosis and treatment of mental disorders. If criteria are met, a letter recommending civil commitment may be sent to the district attorney in the county of last commitment to CDC. DMH will send such letters to multiple county district attorneys if an evaluated prison inmate is serving simultaneous prison sentences from multiple counties.

Enclosed with the DMH recommendation are all evaluations (positive and negative) completed by the initial and/or independent clinical evaluators, earlier SVP evaluations if the person was previously evaluated by DMH, additional material collected by DMH, as well as all background information originally provided to DMH by CDC. If the district attorney concurs with the recommendation, a petition for civil commitment is filed in that county's Superior Court. In the event of multiple counties, the involved district attorneys will determine which county will be responsible for a civil commitment petition.

## STANDARDIZED ASSESSMENT PROTOCOL

WIC Section 6601(c) requires that a person referred from CDC be evaluated in accordance with a standardized assessment protocol, developed and updated by the DMH. This clinical evaluator handbook is the centerpiece of that protocol. This handbook may be supplemented by additional instructions to clinical evaluators as necessary. This handbook and all supplemental instructions to DMH staff and contractors in the implementation of the SVP law is the required standardized assessment protocol.

## EVALUATOR PANEL

The DMH utilizes state employees and contractors as its clinical evaluators. All evaluations are assigned, supervised, and submitted to the SOCP Evaluation Unit in Sacramento in accordance with instructions contained in this handbook. The address and phone number for the SOCP Evaluation Unit is located on the Table of Contents page at the front of this handbook.

State contract evaluators are selected, trained and supervised by the SOCP Evaluation Unit. Evaluators are required to interview and evaluate persons in accordance with the protocol contained within this handbook, as well as present their findings in court when necessary. In accordance with the requirement for independent evaluations (WIC 6601(e)), state contractors are the sole resource for the Department when the first two evaluations result in a split opinion.

## EVALUATOR LIABILITY

In Section 1618 of the Penal Code, the following statement addresses liability for staff or contractors who perform evaluations and provide court testimony in SVP cases:

The administrators and the supervision and treatment staff of the Forensic Conditional Release Program shall not be held criminally or civilly liable for any criminal acts committed by the persons on parole or judicial commitment status who receive supervision or treatment. This waiver of liability shall apply to employees of the State Department of Mental Health, the Board of Prison Terms, and the agencies or persons under contract to those agencies, who provide screening, clinical evaluation, supervision, or treatment to mentally ill parolees or persons under judicial commitment, or considered for placement under a hold by the Board of Prison Terms.

## CASE REFERRAL FROM DEPARTMENT OF MENTAL HEALTH

Upon assignment of a case referral to the evaluator, SOCP sends a referral package. This package contains:

- The CDC or Board of Prison Terms (BPT) material that was sent to DMH.

- Additional supporting documentation obtained by SOCP record reviewers.

- A cover letter that includes the name of the CDC inmate, the inmate's location, release date, controlling discharge date and the date the completed evaluation is due, and the name and phone number of the responsible record reviewer. The need for a translator or interpreter is also noted in this letter.

Before the case is referred for evaluation, DMH record review staff have reviewed the material to ensure basic SOCP legal criteria are met (i.e., number of convictions, victims, etc.). However, the evaluator should confirm this information since it will be included in the final report. Should any additional information be needed regarding the case referral, contact the responsible SOCP record reviewer.

It is not unusual for a previously evaluated case to be re-referred to DMH from CDC. This may happen if there was a previous negative evaluation finding, or if the referral to the county did not result in an SVP commitment and the person was returned to CDC custody. In cases where there has been a previous evaluation, the Department has several options:

- The Department will consider all relevant information related to the case, including changes to the evaluation protocol since the last review by DMH. At the Department's discretion, the case may be assigned to the most recent evaluators for new evaluations.

- If a previous evaluator is no longer available, the case will be assigned to a new evaluator. Evaluations from the evaluator who is no longer available will become part of the case record and will be available to any and all evaluators handling that case.

- The Department may consider assignment patterns and workloads and may assign new evaluators when the previous evaluators remain on the contract panel.

Evaluators may read the past evaluations of those evaluators who are not currently assigned to the case, as these reports are considered part of the individual's history. Evaluators are not provided with, nor should they review, reports of active evaluators on the same case. Until the SVP case is resolved in some fashion, DMH recommends that there is no discussion among the current evaluators regarding the case. This caution is not intended to restrict necessary consultation with designated consultants.

## SPECIAL REQUESTS FROM COURTS AND ATTORNEYS

The Department of Mental Health has developed policies and procedures to provide order to a complex process. Evaluators or DMH may receive court orders or attorney requests that are not consistent with these policies and procedures. DMH expects that evaluators will notify the SOCP Unit in Sacramento of all court orders and attorney requests that do not conform to these policies and procedures. DMH will then direct the evaluator in his/her response to such orders/requests.

## SCHEDULING AN EVALUATION

The evaluator is responsible for scheduling the evaluation at the prison or facility where the inmate is housed. The majority of the inmates are in CDC institutions, although some inmates may be in local custody or at Atascadero State Hospital (ASH). The SOCP Unit recommends the evaluator confirm the inmate's location when the interview appointment is scheduled. SOCP staff will assist in locating the individual, if necessary. Procedures for gaining access to these facilities are as follows:

### Access to the Prisons

1. Call the Classification and Parole Representative (C&PR) at the prison where the inmate is housed to schedule the evaluation. The C&PR, or a designee, will schedule the interview and usually be the contact person at the prison.

2. Tell the C&PR that the following are needed:
   a. Gate clearance to get into the prison, unless you possess a CDC ID card.
   b. Time to review the Central and Medical files prior to the interview. Specify the amount of time needed.
   c. Someone to make copies of relevant records from the files.
   d. Quiet interview room with an optimal amount of privacy.
   e. Time for the clinical interview of the inmate. Specify the amount of time needed.
   f. Appropriate supervision to ensure safety.

3. Once at the prison, enter through the main gatehouse. Inform the gate officer of your assigned contact person. Your contact person will assist you in the logistics of moving through the prison and in the file review process. It is helpful to have the contact person's phone number with you, as the gate officers sometimes do not have this information.

4. Do not wear jeans, any denim-type material, or any light blue shirt with navy colored pants. This is the inmates' attire and CDC staff needs to be able to identify visitors as separate from the inmate population.

5. If you experience any difficulty, including lengthy waiting prior to an interview, please call DMH at (916) 653-1357 for assistance.

## Access to Atascadero State Hospital

As a reminder, ASH is a forensic facility with rules that must be followed:

1. Call the Health Information Management Department, Legal Section, Review Desk to schedule the interview. Two-day advance noticed is required for all appointments. Exceptions do apply when an evaluator has been given a rush assignment. ASH operates on a reservation system. If a reservation is made to interview a patient, it is extremely important to notify the hospital if the appointment cannot be kept.

   The individual's CDC file will be retained at the California Men's Colony (CMC) and a separate visit must be made for its review.

2. Check in at the main reception area for directions to the Health Information Department. ASH records may be reviewed at this location prior to the interview.

3. Return to the main reception area to check into the secured area of the hospital for the actual interview.

4. Do not wear khaki or any similar colored material.

5. Visiting hours are from 8:15 am to 1:45 pm. Appointments that may extend beyond normal work hours must have prior approval.

   It is possible that an evaluation may need to be conducted at a state hospital other than ASH if the inmate has been temporarily housed there. The above rules may also apply. Before visiting any state hospital to conduct an evaluation, contact the Forensic Coordinator at the hospital for specific instructions.

## Access to County Jails

   The evaluator should call the jail to arrange for the interview. If necessary, access to individual county jails can be facilitated through the SOCP record review staff.

## DEFINITIONS RELEVANT TO SOCP

WIC 6600 sets forth several legal definitions. These are the definitions that are used in evaluations and in court. Court decisions clarifying some of these definitions are noted or referenced.

A.    **"Sexually violent predator"** - A person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

For the purposes of counting offenses and victims, consider the "sexually violent offenses" listed in section (B) below. Countable convictions (listed in (B)) include: a prior or current conviction that resulted in a determinate prison sentence, a conviction for an offense that was committed prior to July 1, 1977, and that resulted in an indeterminate prison sentence, a prior finding of not guilty by reason of insanity and a prior conviction for which the inmate received a grant of probation. A conviction resulting in a finding that the person was a mentally disordered sex offender (MDSO) counts regardless of the convicted offense. One juvenile adjudication may be counted as a conviction if the inmate was at least 16 years of age at the time of the juvenile offense and the juvenile was sentenced to the California Youth Authority. A conviction in another state for an offense that includes all the elements of an offense listed in (B) below, shall also be deemed to be a sexually violent offense even if the offender did not receive a determinate sentence for that prior offense.

B.    **"Sexually violent offense"** - One of several specified crimes committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, and that are committed on, before, or after the effective date of this article and result in a conviction. "Sexually violent offenses" consist of the following Penal Code sections:

| | |
|---|---|
| PC 261(a)(2) | Rape by Force and Violence |
| PC 262(a)(1) | Rape of Spouse by Force and Violence |
| PC 264.1 | Defendant Acted in Concert with Another Person to Commit and Act in Section 261, 262, or 289 |
| PC 286 | Sodomy |
| PC 288(a)* | Lewd Act on Child Under 14 Years |
| PC 288(b) | Lewd Act on Child Under 14 Years by Force and by Force and Violence |
| PC 289(a) | Rape with Foreign Object by Force and Violence |
| PC 288a | Oral Copulation |

(a)    Lewd acts on a child under 14 years of age, convicted under PC 288(a), are deemed to be sexually violent when they involve "substantial sexual conduct."

(b)     **"Substantial sexual conduct"** means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either by the victim or the offender.

C.      **"Diagnosed mental disorder"** - A congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.

D.      **"Danger to health and safety of others"** - Does not require proof of a recent overt act while the offender is in custody.

E.      **"Predatory"** - An act directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization.    Initial screening based upon the definition of predatory was discontinued in January 2002 based upon a California Supreme Court Decision People v. Torres (2001) 25 Cal. 4th 680.

F.      **"Prior Juvenile Adjudication"** – The juvenile was 16 years of age or older at the time he or she committed the offense; the juvenile was adjudged a ward of the court; the offense committed by the juvenile was one of the offenses listed in WIC 6600(b); and the juvenile was committed to the California Youth Authority for the sexually violent offense.

G.      "**Volitional Impairment**" – Condition involving individuals who have serious difficulty in controlling their behavior. In Kansas v. Crane (2002) 534 U.S. 407, the United States Supreme Court held that the federal constitution does not require an absolute lack of control. The California Appellate Court in People v. Burris (2002) 102 Cal. App. 4th 1096 contains a discussion as to the lack of deterrence of past criminal sanctions providing evidence of volitional impairment.

## BEGINNING THE SVP CLINICAL EVALUATION

The role of the clinical evaluator is that of fact finder. The only objective is to determine if the case facts match the sexually violent predator legal criteria. The evaluator must maintain a neutral position throughout the process, and be open to reconsideration of a conclusion based on new information.

The evaluation outcome decision is based on several factors including, but not limited to: 1) a review of records, 2) a clinical interview, if possible, 3) diagnostic formulation and 4) a risk assessment targeting sexual recidivism. Only after all available data is reviewed should the clinical evaluator arrive at a conclusion.

The evaluation begins by reviewing available data including CDC central, medical and psychiatric files (if available) in the prison where the inmate is housed. Pertinent information will be contained throughout the CDC files, but the Probation Officers Report (POR), Arrest Reports (if available), Disciplinary Reports, Parole Reports, the CII Report (rap sheet) and any psychiatric evaluations are essential to review. Many of the inmates to be evaluated will have had only brief mental health screenings or not have had a psychiatric evaluation, while others have had prior admissions to state and county psychiatric facilities. All psychiatric and criminal records available from both inside and outside of California should be reviewed prior to completing the clinical evaluation. While the evaluations require review of a substantial amount of material, the scope of the questions to be answered is narrow. The review of files and the clinical interview should be done with the specific forensic task in mind, namely, to answer the three questions that are included in WIC 6600:

A) Has the inmate been convicted of a sexually violent criminal offense specified in WIC 6600 against two or more victims?

B) Does the inmate have a diagnosed mental disorder that predisposes the person to the commission of criminal sexual acts?

C) Is the inmate likely to engage in sexually violent predatory criminal behavior as a result of his or her diagnosed mental disorder without appropriate treatment and custody?

## THE CLINICAL INTERVIEW

Although the inmate may view the clinical interview as adversarial, the evaluation is, in fact, one of several steps required before a court considers the matter of a civil commitment. The reports that the DMH evaluators and independent evaluators generate will be a primary resource for district attorneys to determine if they will file a petition for commitment on an individual. They will be read by attorneys and judges, and may be presented to juries in the form of expert testimony. These evaluations need to provide the courts with more than just a summary of professional conclusions. Key facts must be included in the body of the evaluation and must clearly state the reasoning that led the evaluator to his or her conclusions.

The evaluator should begin the interview by describing the interview process and responding to questions from the inmate. The inmate should be asked to sign a "Notification of Evaluation as a Sexually Violent Predator" (Appendix B). The inmate may want to interview without signing the Notification, which is permissible since the purpose of the Notification is to provide information about WIC 6600 to the inmate, rather than to serve as legal informed consent. If the inmate refuses the interview, use the space provided on the Notification document for "decline" and obtain the inmate's signature. If the inmate refuses to attend the interview and the Notification cannot be signed, the evaluator should make a notation on the Notification form regarding the inmate's refusal and should report the refusal in the evaluation.

If a language barrier or hearing impairment exists, a translator or interpreter may be required and, if possible, should be arranged in advance by the evaluator. The preferred method is to contact the court in the county where the institution housing the inmate is located and arrange for a court certified language interpreter. The final report should describe any accommodations made.

In "update" or "replacement" interviews, the court may issue an order that the interview be tape-recorded, and/or an attorney be allowed to be present. The evaluator should comply with that order. Court-ordered tape recording/attorney presence does not apply to initial interviews of prison inmates, or initial interviews of persons being evaluated for extension of commitment.

There may be an obligation, under California's child and elderly abuse reporting laws, to report specific new crimes that the inmate reveals if they involve child victims or elderly victims if the crimes have not previously been reported, and/or there is a person who has been abused or is likely to suffer continuing abuse. The inmate should be informed of this reporting requirement prior to the evaluation as stated in the Notification document.

Limits of confidentiality should be explained to the inmate. The inmate should be notified that the evaluation report will be provided to the DMH, court officers in the county of CDC commitment in accordance with the statute, the Board of Prison Terms, and, in some cases, CDC Parole. Also, information from the evaluation may be entered into evidence in court or be the subject of court testimony and consequently may become available to the press and the community.

In rare instances, an inmate may become a threat to him/herself, others or you during the clinical interview. Just as you would make every effort to provide for the safety of all concerned in a community setting, you should do the same in the prison setting. If the inmate becomes a threat, immediately notify custody staff. Each prison has medical and/or psychiatric staff either present or on call who are designated to deal with this type of emergency. Report your clinical findings verbally to the designated prison clinician who should write a progress note to be included in the inmate's CDC medical file. Inform state hospital staff if the evaluation is conducted at a state hospital. In your note, address your assessment of inmate risk of self-harm or danger to others, and how the situation was resolved.

There are various approaches to interviewing sex offenders, and the determination of how to approach and structure the interview is made by the evaluator. While this Evaluator Handbook protocol specifies the questions that must be answered and formats to be used, it does not address everything an evaluator may need to consider. The interview will vary depending on many factors, such as the type of offense, the inmate's history, and his/her willingness to discuss case factors. The DMH makes available to evaluators an interview schedule that may be used in whole or part.

## HISTORICAL INFORMATION

As in other clinical situations, the evaluator may not always be able to confirm information given by the inmate. This will often be the case with inmates who believe their self-interests are best served by denying their sexual disorder, criminal history, or psychiatric symptoms and attempting to present themselves in a favorable light. Reliable history and prior clinical evaluations from the inmate's records should be used to provide a basis for decision making in SVP evaluations. The examiner can then integrate this information with data gained from the clinical interview.

## DRAWING CLINICAL CONCLUSIONS

The evaluator needs to consider each of the three major clinical questions and offer clear and unambiguous opinions regarding these WIC 6600 criteria. It is in the nature of clinical evaluation that qualified professionals will sometimes draw different conclusions from the same data or emphasize some data over other data in formulating their opinions. Each evaluator should produce a report that represents his or her best judgment. Clearly stated definitive opinions with a YES or NO answer to each clinical question are required. At times, the facts may be conflicting or incomplete, making an unequivocal clinical opinion impossible. If, after review of all the information available, you are unable to support an affirmative conclusion regarding a criterion, then that criterion has not been met and the answer is **NO**.

## REPORT WRITING

An evaluation is properly completed when it clearly describes how each of the criteria are met, or are not met. The evaluation report must comport with the SVP statute, be internally consistent, and be written in a length and style that will allow parties at later legal proceedings to understand the evaluator's reasoning and conclusions. With the exception of diagnostic terms, evaluators should avoid unnecessary technical language from psychology, psychiatry and the law. The format for the report is provided in this handbook.

## SUBMITTING THE REPORT

After the evaluator has formed his/her conclusion, a clinical evaluation summary (see Appendix C) must be completed and faxed as soon as possible to DMH. Depending on release date time frames, DMH may take action based on the clinical evaluation summary. Therefore, the summary should represent the final conclusion of the evaluator. The final report, with original signature, must be delivered to DMH by the due date assigned by the scheduling staff. It is critical that timelines be met. The SOCP program will call the evaluator if a report has not been submitted on time.

## UPDATING THE REPORT

Summary of requirements for updating reports:

- The District Attorney who filed the SVP petition must request updates of reports through the DMH SOCP Unit.
- Evaluators must re-interview an SVP respondent if the respondent will voluntarily interview, or there is a court order for an interview.
- The interview of an update report will be audiotaped only if ordered by the court.
- Evaluators may use medical and non-medical information to update reports, and to apply risk assessment tools to assess the SVP respondent.
- Updated reports are to be forwarded to the DMH SOCP Unit.
- The statute requires DMH to provide a copy of the report to the inmate's attorney.

If the evaluator, through whatever means, obtains significant new information regarding a previously completed SVP report, a contact should be made with the DMH SOCP Unit in Sacramento, usually the record reviewer. The record reviewer will determine if the other evaluators on the same case should be provided the information. Evaluators should not complete a formal update of their report unless requested to do so by the District Attorney.

## COURT TESTIMONY

As part of the evaluator's agreement in accepting a case for evaluation, he/she may be asked to provide court testimony in various hearings and trials. The District Attorney, who will contact the evaluator directly, will usually request this testimony. If the evaluation resulted in a difference of opinion, and there was a conclusion that criteria were not met, he/she may be subpoenaed by defense counsel to testify as to the findings. The evaluator should be prepared to explain his or her evaluation. It is recommended that the evaluator consult with the District Attorney prior to the testimony to offer information as to how the conclusion was reached.

As an expert witness, the evaluator should be familiar with the SVP law, research literature pertaining to risk assessment of sex offenders and the specifics of the case. Regardless of who requires the evaluator's attendance in court, or what conclusions are contained in the report, the evaluator remains a "fact finder" having applied the requirements of the SVP statutes to a particular case. If presented with contradictory or different information after submission of the report, the evaluator is obliged to consider the new information and change his/her conclusion if the new information so warrants.

The California Supreme Court decision of Cooley v. Superior Court of Los Angeles (2002) 29 Cal. 4th 228 clarifies that a probable cause determination must consider all the elements contained in the definition of the Sexually Violent Predator statute that are required to be proven at trial. Therefore, the evaluator should be prepared to testify at the probable cause hearing and address pertinent questions regarding the case findings.

## SUBPOENAS AND DEPOSITIONS

Clinical evaluators must comply with subpoenas for appearances in relation to cases they have evaluated. Subpoenas may also require evaluators to produce documents. Some documents, such as training materials provided to all evaluators, are kept at the SOCP office in Sacramento. The evaluator may contact the SOCP staff regarding assistance in obtaining past training materials. When the SOCP responds to a subpoena, every effort is made to notify the evaluator of what materials are sent to courts and attorneys. If subpoenas hold conflicting appearance dates, the first subpoena to arrive generally takes precedence. Communication with the issuers of the subpoenas is recommended. It is essential to respond to all subpoenas.

Evaluators should not rely on the SOCP for all materials. It is the responsibility of the evaluator to keep sufficient records to be able to respond to subpoenas. Each evaluator should be aware of and be able to respond to questions regarding their income from doing contract SVP evaluations, a common subpoena request. The evaluator should also be prepared to provide copies of any other materials, not provided to him/her by the SOCP Unit, that were used in his or her formulation of evaluation findings. Sometimes, subpoenas request that confidential information be provided. Examples of such items include names or evaluations of other SVP cases you have

evaluated for the DMH and all income for specified tax years. If your receive such a subpoena, notify DMH who will advise you on how to proceed.

A subpoena may require production of "raw data" from psychological tests administered to the person evaluated. If ethical guidelines require such data to be provided only to persons appropriately trained to interpret the test data then, the recommended response is that the data will be provided to a trained person, or to the court for appropriate distribution. If the court orders production of the data, it must be provided.

**SEX OFFENDER COMMITMENT PROGRAM
CLINICAL EVALUATION PROTOCOL
(Synopsis)**

## I.    IDENTIFYING INFORMATION

## II.    FINDINGS (WIC 6600 criteria)

A.    Has the inmate been convicted of a sexually violent criminal offense specified in WIC 6600 against two or more victims?  (Yes/No)

B.    Does the inmate have a diagnosed mental disorder that predisposes the person to the commission of criminal sexual acts?  (Yes/No)

C.    Is the inmate likely to engage in sexually violent predatory criminal behavior as a result of his/her diagnosed mental disorder without appropriate treatment and custody?  (Yes/No)

## III.    CONCLUSION

"Based on the above information, in my opinion the inmate meets/does not meet the criteria as a sexually violent predator as described in Section 6600 (a) of the Welfare and Institutions Code."

**SEX OFFENDER COMMITMENT PROGRAM
CLINICAL EVALUATION PROTOCOL
(Annotated)**

## I.    IDENTIFYING INFORMATION

A.    Inmate Name
B.    California Department of Corrections Number (CDC number)
C.    Criminal Identification and Investigation number (CII)
D.    Date of Birth (DOB)
E.    Earliest Possible Release Date (EPRD), or Revocation Release
       Date (RRD), or Parole Revocation Release Date (PRRD), or
       Controlling Discharge Date (CDD)
F.    Facility
G.    County of Commitment
H.    Date of evaluation

Include here a short narrative discussion of the circumstances pertaining to the evaluation. This should include a brief description of the location and length of the clinical interview, documentation on the discussion of confidentiality and mandatory reporting and notification of evaluation as a sexually violent predator. Note if the inmate declined to be interviewed and include the limitations of a record review only evaluation. The following is an example from an evaluation:

Mr. SVP was interviewed at Avenal State Prison by Dr. Evaluator on June 7, 2000, in a facility conference room for two hours. Mr. SVP was informed of the nature and purpose of the interview, that was to determine whether he qualifies as a Sexually Violent Predator (SVP) under the Welfare and Institutions Code (WIC) Section 6600. Issues of confidentiality and mandated reporting were explained to the inmate. He read aloud and signed a *Notification of Evaluation as a Sexually Violent Predator Form*, which provides information about the commitment procedure. After answering questions posed by the inmate about the SVP Act, Mr. SVP agreed to participate in a clinical interview pursuant to WIC 6600 and signed the notification form accordingly.

### SOURCES OF INFORMATION

List all documents you read and relied upon to form your clinical opinion. Include the date and case number of each document for clarification.

### PSYCHOLOGICAL TESTING

List any psychological tests administered.

## II.    FINDINGS (WIC 6600 Criteria)

### A.    Has the inmate been convicted of a sexually violent criminal offense specified in WIC 6600 against two or more victims?  (Yes/No)

Always cite the source of your information regarding the offense and then list each arrest and conviction for the relevant PC violations (i.e., PC 261(a)(2); PC 262 (a)(1) PC 264.1; PC 288(a); PC 288(b); PC 289(a); PC 286; or PC 288) that make a subject eligible for referral under WIC 6600. An example from a report illustrates this documentation.

> On October 2, 1994, the inmate was charged with PC 288(a)(count 1) and PC 288(a)(c)(count 2) as noted in the San Francisco County Criminal Complaint, Case No. 1234.  The San Francisco County Abstract of Judgment-Prison Commitment, Case No. 1234 indicated that the inmate was convicted by a plea of guilty to PC 288(a)(count 1) on April 12, 1995 and sentenced to four years in prison.

List dates and provide narrative descriptions of the crimes involved.  Descriptions of the crimes are contained in Arrest Reports, Probation Officer's Reports and Preliminary Hearing Transcripts.  If you have inadequate information describing the crimes, contact the Record Review staff member at the Department of Mental Health who is responsible for the case and request additional records.

A thorough description of the sexually violent offenses (see page 6) check on this is necessary for several reasons.  First, you will need to have an accurate account of the circumstances of the offense for court testimony.  Second, this is often the only way one can untangle the complex circumstances that often arise, especially where multiple victims are involved.  Use first names and last initial to identify the victims.  Never use victims' full names in the evaluation report.

For each qualifying victim indicate whether force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person was involved.  Evaluators sometimes assume that since they have already described the crime in detail that a summary statement indicating that force and violence was involved in the offense is adequate.  This is not the case.  The evaluator needs to quote facts of the case and specific behaviors which indicate that force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person have occurred **for each qualifying victim.**

A prior MDSO finding is considered an SVP qualifying conviction, regardless of what offense led to the MDSO.  It is not necessary to find that the underlying offenses was committed by force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victims or another person.  The MDSO is sufficient to meet the SVP conviction requirement.  Documentation is still needed that there were at least two victims.

Additionally, when the victim is under the age of 14, evaluators must note whether the behavior involved "**substantial sexual conduct.**" If it did, the offense is countable as a "sexually violent offense" *whether or not* it contained "force, violence, duress, menace or fear of immediate or unlawful bodily injury on the victim or another person." However, substantial sexual conduct is not necessary for an offense to qualify if there were elements of force, violence, menace, duress and fear. Substantial sexual conduct never applies to cases where the victim is 14 years or older, such as in cases of adult rape.

A summary statement should be made to address whether or not the conditions of Criterion "A" are met.

**B.    Does the inmate have a diagnosed mental disorder that predisposes the person to the commission of criminal sexual acts?  (Yes/No)**

According to this statute, the continuing danger posed by these inmates and the continuing basis for their judicial commitment is their currently diagnosed mental disorder predisposes them to engage in sexually violent criminal behavior.

"Diagnosed mental disorder" is defined in WIC 6600 as "including a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others."

While the definition of a "diagnosed mental disorder" is statutorily defined, clinicians utilize the diagnostic categories in the Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition-Text Revision (DSM-IV-TR) to describe the diagnosed mental disorder. Since V Codes are not contained in the sixteen major diagnostic categories in the DSM-IV-TR and only represent conditions that may be a focus of clinical attention or treatment, the use of V Codes for diagnostic purposes in SVP evaluations is inappropriate (see p. 731 in DSM-IV-TR).

The DSM-IV-TR contains many classifications of mental disorders; however, the WIC 6600 statutory definition of a mental disorder includes only those conditions that predispose the person to the commission of criminal sexual acts. Paraphilias, antisocial personality disorder and substance abuse or dependence are common diagnoses associated with criminal sexual acts. There may also be other conditions that are relevant to the issue of a "predisposition to the commission of criminal sexual acts" such as, but not limited to mood, psychotic or personality disorders. These disorders should be discussed in terms of their nexus to the commission of deviant sexual acts. In some cases, there are multiple diagnoses present that together affect the individual's emotional and volitional capacity. Alternatively, the individual may suffer from other psychiatric conditions that the examiner believes are not related to the commission of criminal sexual acts. These disorders can be discussed in terms of their clinical presentation but distinguished from those that comprise "diagnosed mental disorders" according to WIC 6600.

The diagnosed mental disorder offered should be based on psychiatric history, the mental status examination, psychological testing and if conducted, current findings from the clinical interview. If a clinical interview is not conducted, a diagnostic impression can be offered if adequate records are available to confirm a diagnostic impression. While an evaluation completed using a record review alone and based on adequate records is both clinically and ethically appropriate when an interview is not conducted, limitations of a record review only should be clearly stated in the clinical evaluation.

The following areas should be addressed in an SVP evaluation and discussed in Criterion "B":

- Brief developmental history
- Psychiatric history
- Substance abuse history
- Juvenile and adult criminal history
- Parole history
- Institutional history
- Psychosexual history
- Relationship history
- Mental Status Examination, behavioral observations and attitudes of the inmate
- Psychiatric diagnosis in **list format on AXIS I and AXIS II**
- Explanation of psychiatric diagnosis offered
- Justification for the psychiatric diagnosis

For inmates with a documented psychiatric history in CDC, a summarized chronological account of pertinent evaluations and treatment should be documented along with the source of the information and the date.

A Mental Status Examination should be performed during the clinical interview and the evaluator should note behavioral observations and current attitude of the inmate. This clinical information along with historical data and psychological testing, if administered, will form the basis for the diagnosed mental disorder on AXES I and II.

The importance of a thorough sexual history is obvious for SVP evaluations. Since the level of deviant sexual preference is linked to the paraphilia diagnosis and contributes to offender risk, the evaluation should contain a thorough description of the offender's paraphiliac symptoms and behavior. The sexual history can afford the examiner an opportunity to determine the individual's level of deviant sexual preference, the presence of multiple paraphilias, the onset and chronicity of deviant sexual preoccupation, paraphiliac symptoms and behavior, precocious sexuality and other areas relevant to the development of sexual orientation. It should be noted, however, that offender interview information in the SVP process may be limited by social desirability factors (e.g. desire to appear non-deviant), as well as the non-confidential nature of the evaluation and the purpose of the process (i.e. potential placement in a locked psychiatric facility).

The obtained sexual history should therefore be considered in light of demonstrated sexual behaviors as noted in the records. If an offender engages in the same sexually deviant behavior repeatedly, then an interest or preference is easily established. In instances where the activity has occurred only once, it is more difficult to determine if it is really a sexual preference, and hence a paraphilia. Basically, the longer the pattern of sexually deviant behavior, the stronger the preference. Data indicates that an identified deviant sexual preference is associated with a higher risk for sexual reoffense. The Hanson and Bussiere (1998) meta-analysis identified variables associated with sexual deviance that were significant correlates with sexual recidivism. The strongest predictor variable in this study is sexual arousal towards children as measured by phallometric assessment.

**Psychological testing**

The use of psychological tests in SVP evaluations is left to the discretion of the clinical evaluator, but should be selected appropriately to answer the clinical referral questions. While some evaluators prefer to give a more extensive battery of tests, others may find that a thorough clinical interview and record review provides adequate basis to determine which offenders are at risk for future sexual reoffense by reason of their diagnosed mental disorder.

While most personality tests provide a better understanding of the inmate's personality functioning, personality disorders and presence of mood or psychotic disorders do not generally provide direct information to assist the clinician in differentiating which offenders will sexually reoffend. The clinician is cautioned that only the PCL-R has shown modest predictive accuracy in identifying sexual recidivists (Rice, Harris, Quinsey, 1990; Quinsey, Rice & Harris, 1995).

**C.    Is the inmate likely to engage in sexually violent predatory criminal behavior as a result of his or her diagnosed mental disorder without appropriate treatment and custody?  (Yes/No)**

Criterion C requires a determination of the inmate's likelihood to engage in future sexually violent predatory behavior based upon the presence of a diagnosed mental disorder. While evaluators may organize their risk assessment in their own unique way, they must rely on the guidelines of this protocol and include the following elements of risk assessment.

**Approaches to Risk Assessment**

A frequently cited finding in sexual recidivism literature is that unguided clinical judgments are significantly less accurate than clinical judgments that are based upon empirically derived risk factors and actuarial risk scales. Actuarial instruments used to evaluate sex offender recidivism combine empirically derived variables via explicit rules that translate the ratings on the individual variables into an overall risk percentage or level. The use of actuarial instruments for sex offender recidivism is the first step in evaluating sex offender risk.

To date, there are no pure actuarial rating scales that incorporate all risk factors for sexual re-offense. Additionally, each offender may present case specific factors that affect his risk for sexual reoffense. Consequently, the SVP evaluation is more accurately termed an adjusted actuarial approach. The adjusted actuarial approach begins by identifying an initial risk classification (e.g., low, medium, or high), which is derived from the actuarial risk scale being used. Then, expert evaluators may choose to adjust the actuarial-derived estimate of risk after considering other factors that are associated with sexual recidivism, but were not included in the actuarial measure (Quinsey, Lalumiere, Rice, & Harris, 1995; Hanson, 1998).

## Actuarial Risk Assessment

Since January 2000, the Static-99 risk assessment instrument has been used by DMH in sex offender risk assessments. The Static-99 combined items from the Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR: Hanson, 1997) and an English actuarial instrument, the Structured Anchored Clinical Judgment (SACJ-Min: Grubin, 1998). Because the combination of items from these two rating scales showed improved predictive accuracy over either scale alone, the Static-99 is recommended for use by evaluators in California's SOCP. In addition, the Static-99 is currently the risk assessment instrument with the most complete scoring guidelines and is the instrument with the most empirical support to date. The Static-99 has consistently been identified as a moderate predictor of sexual offense recidivism (Hanson & Thornton, 2000; Harris, Phenix, Hanson & Thornton 2003).

In conjunction with the Static-99, evaluators may choose to use additional validated actuarial instruments. There are several other validated risk assessment instruments for sexual recidivism that are appropriate for use in sexual offender risk assessments such as the Sex Offender Risk Appraisal Guide (SORAG) (Quinsey, Harris, Rice & Cormier, 1998), the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R), (Epperson, Kaul & Hesselton, 1999) and the RRASOR. The predictive accuracy of these instruments has been measured in the moderate range on repeated cross-validations.

## Adjusting an Actuarial Risk Score

Because an adjusted actuarial approach for risk assessment of sex offenders is being used, it is sometimes appropriate to adjust the base rate prediction from the actuarial instrument either up or down, depending upon the presence or absence of risk factors for sexual recidivism. When adjusting actuarial risk estimates, evaluators should consider whether there are external factors that can reasonably be considered to increase or decrease the risk estimate provided by the actuarial instrument(s). External factors are those that are related to sexual offense recidivism but are not fully accounted for within the actuarial scale. Evaluators should exercise caution in utilizing risk factors that may be highly intercorrelated with each other.

A review of additional factors that support risk, as well as those which mitigate risk, offers a balanced risk assessment and goes toward the basic purpose of the SVP evaluation as a neutral fact-finding process. The basic question is whether the number

of external risk factors are more or less than would be expected for an offender with a given actuarial score.    Before adjusting an actuarial risk estimate up or down, the evaluator should consider how many external risk factors would be expected based on the individual's risk classification.    Some external risk factors would always be expected and their presence does not, in itself, justify an adjustment.    Adjustments are most easily justified when there are many variables that are inconsistent with the actuarial estimate, a few prominent variables are present, or when there are pertinent individual risk factors.

## Static Risk Factors to Consider Outside the Static-99

A static risk factor for sexual reoffense refers to a variable associated with sexual reoffense recidivism that usually does not change over time.    The following are some static risk factors that are not scored in entirety on the Static-99, but have been shown to be significantly related, through research, to sexual recidivism.    It should be noted that those variables most likely to have a high degree of intercorrelation have been grouped together in clusters.    The evaluator should consider whether the following empirically derived risk factors are present or absent and consider adjusting the actuarial risk estimate accordingly.    Because the Static-99 considers several variables that are associated with sexual recidivism, the evaluator should increase or decrease the risk estimate of the actuarial instrument cautiously.    In most cases, little or no adjustment is necessary.    Adjustments to the risk estimate are most easily justified when the extraneous variables reviewed are unusually high or low in comparison to the Static-99 estimate of risk. The static variables recommended for consideration were selected from the Hanson and Bussiere's review of recidivism risk predictors (1998) article, "Predicting Relapse: A meta-analysis of sexual offender recidivism studies" as well as from a recent meta-analysis by Hanson and Morton (in press) and Hanson and Thornton (2003).    This list was developed in consultation with R. Karl Hanson, Ph.D., co-author of the Static-99.

- Sexual Deviance Variables
  - Prior sexual offenses against two or more children under the age of 12, with at least one unrelated child victim (male or female)
  - Sexual offenses as a juvenile (under age 18) and an adult

- Treatment
  - Dropping out of most recent attempt at sex offender specific treatment

- General Criminality/Lifestyle Instability
  - Childhood maladjustment as defined by two or more of the following instances, separated by more than 12 months – History of grade failure, psychiatric treatment, group home placement, or running away from home
  - Criteria for conduct disorder met
  - Psychopathy (Hare Psychopathy Checklist-Revised (PCL-R of 30 or above)
  - Violation of conditional release or a new offense while on community supervision

– <u>Frequently unemployed as defined by the inmate being employed less than 50 percent of the last 12 months prior to incarceration</u>

## Dynamic Risk Factors

In addition to the static risk factors described above, it is also important to review relevant dynamic risk factors when assessing one's risk for sexual reoffense. The Static-99 does not contain dynamic risk factors so it is necessary to examine them outside the actuarial instrument. A dynamic risk factor refers to something that has the capacity to change over time, for example with treatment. Dynamic risk factors may be "stable" or "acute." Stable dynamic factors are amenable to change but, without intervention, tend to remain relatively constant such as one's <u>sexual deviance</u> or cooperation with supervision. Acute dynamic risk factors comprise relatively immediate precursors to reoffense and can be considered factors that can quickly change in the month prior to sexual reoffense , e.g., intoxication.

The Stable-2000 (Hanson & Harris, 2003) is an empirically based assessment developed to evaluate dynamic risk factors for sexual reoffense. <u>The operational definitions for the risk factors below were obtained from the Stable-2000. It should be noted that the listed Stable-2000 items include those that have empirical support. The recent Hanson and Morton meta-analysis (in press) provided empirical support for a number of the following factors. Additionally, cluster B personality disorders have been added to the list of stable risk factors that are associated with risk for sexual reoffense. These items and their operational definitions are provided below. Also, in order to assess these items thoroughly, it is recommended evaluators review the Stable-2000 scoring manual by Hanson and Harris (2003) and consider the information provided by Andrew Harris, Ph.D., in his November 2002 training on the use of the dynamic risk factors in an institutional setting.</u>

Below is a list of dynamic risk factors <u>recommended for review at this time. The individual risk factors are organized into clusters. For example, the "Intimacy Deficits" cluster includes three main subcategories: a) Lovers/intimate partners, b) Emotional identification with children, and c) Lack of concern for others. It is not necessary for an offender to have problems in all subcategories for the cluster to be relevant to the risk assessment. The basic question is whether the offender shows more (or less) problems than would be expected based upon the other information already considered in the evaluation.</u>

- **Intimacy Deficits:** This section has three parts, each representing a potential problem area for sexual offenders.

    - Lovers/intimate partners: Individuals without intimacy deficits will have a stable romantic relationship with an appropriate partner, and several constructive long-term friendships. Higher risk is associated with relationships that may be short-term, conflicted or problematic or marked by infidelity. Highest risk is associated with not having any intimate relationships.

- Emotional identification with children: Child molesters may be attracted to children based on feeling emotionally close or intimate with them. They may feel that children are their peers or equals and may feel that they can relate to children more easily than to adults. When the offender has no obvious identification with children they pose low risk on this factor. Higher risk is associated with adults who have immature relationships or see children as having special qualities of understanding or communication that adults do not. Highest risk is associated with offenders who obviously feel more comfortable with children than adults and have children as "friends."

- Lack of concern for others: Low risk on this factor is associated with individuals who have a normal range of emotional expression or those who may be callous/indifferent to some people (e.g., adversaries) in specific circumstances, but are generally emotionally responsive and caring. Risk is increased as the individual typically shows little remorse or concern for others and their interactions are utilitarian with little attachment to others. <u>Individuals at high risk on this factor do not have an "in group" to whom they feel connected.</u>

- **Sexual self-regulation**: This need area concerns poorly controlled expressions of sexual impulses. Three aspects of sexual disregulation should be considered:

  - Sex drive/Preoccupation: This area focuses on recurrent sexual thoughts and behaviors that are not directed to a current romantic partner. Examples of sexual pre-occupations include the following:
    - Masturbation more than once a day
    - <u>Daily masturbation for a period of three months or more</u>
    - Regular use of prostitutes, strip bars, massage parlors, phone-sex
    - Sex-oriented internet use, such as sexually explicit sites, chat rooms
    - Pornography collection
    - Cruising for impersonal sex
    - Excessive sexual content in typical conversations
    - Pre-occupations with own/other's sex crimes
    - Self-report of difficulty controlling sexual impulses
    - Any disturbing sexual thoughts
    - A history of multiple sexual partners (e.g., 30 or more)

  - Sex as coping: When faced with life stress or negative emotions, some sex offenders start thinking sexual thoughts or engage in sexual behavior in efforts to manage their emotions. Increased risk is associated with occasional lapse into sexual fantasy when stressed, but it is not the typical reaction. Highest risk is associated with offenders for whom negative emotions or life events typically invoke sexual thoughts or behaviors.

  - Deviant sexual interests: This factor is present when the offender is sexually aroused by or sexually interested in people, objects or activities

that are illegal, inappropriate or highly unusual. These interests could include, but are not limited to, sexual interest in children, non-consenting adults, voyeurism, exhibitionism, cross-dressing, and fetishism. Increased risk is associated with some behavioral history of deviant sexual behavior, but insufficient to establish a pattern or preference. Highest risk is associated with repeatedly engaging in specific type of deviant sexual behavior, self-reported deviant sexual interests or phallometric assessment indicating deviant sexual preferences.

- **Attitudes tolerant of sexual assault:** Sex offender risk is increased if the offender holds attitudes or values that excuse, permit or condone deviant sexual behavior. This is assessed by identifying the range of situations when a sexual offense would be acceptable for anyone to commit. Attitudes tolerant of sexual assault would be considered high if there are several situations where sexual abuse of others is acceptable; moderate if there are rare instances when it is acceptable; and low when there are no situations where sexual assault is acceptable.

- **Cooperation with supervision:** This area concerns the offender's ability to self-monitor and comply with the rules of community and institutional supervision. When assessing this variable, consider whether or not an offender believes he is at risk for sexual reoffense. If not, then his ability to cooperate with conditions of community supervision would be compromised. Additionally, offenders with general criminal lifestyles would be expected to have more supervision problems. Offenders may be disengaged in supervision. These offenders may "just be going through the motions," keep secrets and not be invested in treatment. Some offenders are manipulative by trying to "play the system" or to be your equal. They may lie and be deceptive or ask for special favors. They may play one staff member against another. Higher risk on this factor is associated with offenders who miss scheduled appointments, show up late or frequently reschedule. Poor prognostic indicators are breaking the conditions of community supervision or conditional release and placing oneself in high-risk situations. In general, this variable is related to whether one feels an offender is working with or against a supervisor or, more generally, a treatment program. When offenders see themselves as no risk then they are more likely to place themselves in high risk situations that may increase their chance of violating conditions of community supervision.

- **General self-regulation:** This construct concerns the offender's ability to self-monitor and inhibit antisocial thoughts and behaviors. Offenders often have unstable lifestyles characterized by behavioral impulsivity, and frequent or poorly thought out changes in work, residences and relationships. The capacity to self-regulate is important for offenders wishing to change their behavior. The three components of general self-regulation include 1) impulsive acts 2) poor cognitive problem solving and 3) negative emotionality/hostility. Impulsivity refers to the extent the offender is easily bored, seeks thrills and has little regard for personal safety or the safety of others in multiple settings. Poor cognitive problem solving is characterized by the offender's failure to identify the problems they have,

propose unrealistic solutions (or none at all), lack of long-term plans and failure to recognize the consequences of their actions. Negative emotionality is a tendency towards feeling hostile, victimized, resentful and vulnerable to emotional collapse when stressed. The offender may engage in hostility, aggression, suspicion, rumination, victim blaming, entitlement, emotional collapse when stressed and explosive expressions of emotion.

- **Diagnosed Cluster B Personality Disorder:** Cluster B personality disorders have been associated with increased risk for sexual offense recidivism. Although other personality clusters may aggravate risk as well, there is less empirical support given limited numbers of subjects. The severity of the personality disorder will affect the impact of this variable.

The degree to which these variables are consistently present or absent affects the degree to which an offender's overall risk estimate is considered higher, lower, or consistent with the risk estimate provided by the Static-99. As pointed out earlier, evaluators should look for converging evidence regarding an offender's estimate of risk. For example, if the offender is considered to be a low risk for sexual reoffense per the Static-99 and most of the extraneous variables reviewed are present, then the evaluator may conclude the overall level of risk is higher than the Static-99 estimate. Likewise, if the actuarial estimate is high and most extraneous risk factors are absent, then the evaluator may opine the overall level of risk is lower than the Static-99 estimate. In most cases, however, these variables are present in a pattern that is consistent with the Static-99 estimate.

## Protective Factors

The variables below, if present, have been associated with reduced risk for sexual reoffense and should be considered in addition to the variables described above.

- **Have been in community sex offense free for significant period of time**

If an offender has been in the community for a significant period of time without committing a new sexual or violent offense and they have not been returned to confinement for a significant period of time (e.g. several months), then their estimate of risk may be mitigated in accordance with the table on page 60 of the Static-99 Coding Rules (Harris, Phenix, Hanson, and Thornton 2003). Because most evaluations are completed on individuals who have been incarcerated for a significant period of time, the variable rarely applies. Also, if the offender was in the community for a significant period of time and was then returned to confinement for a significant period of time, their credit for being in the community offense free is voided. Most often this variable would apply to an individual who was successful on parole for at least two years and was then returned to confinement for a minor violation.

- **Less than 15 years left in offender's time at risk due to age or poor health**

  In particular, it is important to consider how age and health may impact an individual's opportunity, ability, or motivation to reoffend sexually. Research indicates that older offenders reoffend at lower rates than younger offenders (Hanson, 2002). Therefore, it is important to assess the impact of age, poor health and limited mobility on a case by case basis and in the context of the individual's offense history.

- **Successfully completed cognitive-behavioral treatment program for sexual offenders**

  Research has shown that offenders who complete appropriate sexual offender treatment are at lower risk to reoffend than offenders who do not complete treatment (Hanson et al. 2002). Not all treatment programs, however, are effective in reducing recidivism. Cognitive-behavioral treatment programs have the strongest research support. When considering whether treatment completion should mitigate risk, consider the extent to which the program addressed the offender's most serious risk factors, and whether the duration and intensity of treatment was sufficiently long that changes on these factors would be expected.

**Case Specific Risk Factors**

Case specific risk factors may also increase or decrease the risk of reoffense. For example, self-admission of urge to re-offend, multiple detected offenses not reflected in arrests or convictions, neurological disorders contributing to increased impulsivity and an extreme history of deviant sexual preference such as sexual sadism are likely to increase risk estimates. Factors such as health concerns, advanced age, sex offender treatment and level of community supervision may decrease an individual's risk in some cases.

**Procedure for Conducting an Adjusted Actuarial Risk Assessment for the purpose of an SVP evaluation**

Although the determination of how to complete a sex offender risk assessment is ultimately the responsibility of each evaluator, the following guidelines may assist the evaluator in completing an actuarial-adjusted risk assessment for SVP.

1.   Begin by summarizing the contribution of the diagnosed mental disorder(s) to sexual recidivism risk.

2.   Determine an approximate base rate for sexual reoffense:

     Calculate the individual's score on the Static-99. Consider that these recidivism base rate estimates are based on data of convicted sex offenders. Because most sex offenses are unreported, these base rates underestimate the true risk of a sex offender. Also, the risk estimate on the Static-99 spans 15 years and there is a slow but steady increase in sexual recidivism from 15 years to 25 years

after release into the community (Hanson, Scott, & Steffy, 1995; Hanson, Steffy, & Gauthier, 1993a; Prentky, Lee, Knight, & Cerce, 1997). This means that the base rate provided by the Static-99 is an underestimate of the individual's true risk (Barbaree & Marshall 1988).

3.    Determine the presence or absence of empirically derived static risk factors for sexual recidivism not included in the actuarial scheme and adjust or retain the risk level as measured in the Static-99.

4.    Determine the presence or absence of empirically derived dynamic risk factors not included in the actuarial scheme and adjust or retain the risk level as measured in the Static-99.

5.    Identify and consider case specific risk factors and adjust or retain the risk level as measured in the Static-99.

6.    Formulate your clinical conclusion and level of offender risk. Note if the Static-99 risk estimate, in your opinion, represents an accurate estimate, underestimate or overestimate of the inmate's probability of re-offense.

7.    Provide a summary statement under Criterion "C" as to whether the offender is, or is not, likely to engage in sexually violent predatory criminal behavior as a result of his or her diagnosed mental disorder without appropriate treatment and custody.

## "Likely", Defined

The California Supreme Court in People v. Superior Court of Marin County (2002) 27 Cal. 4th 888 (Patrick Ghilotti, Real Party in Interest) ruled on the meaning of likely within the context of evaluation for the SVP Act, that is, in the question "Is the inmate *likely* to engage in sexually violent predatory criminal behavior as a result of his or her diagnosed mental disorder without appropriate treatment and custody?"

The court defined **"likely"** as used in DMH evaluations to require "a determination that, as the result of a current mental disorder which predisposes the person to commit violent sex offenses, he or she presents a **substantial danger** – that is, **a serious and well-founded risk** – of reoffending in this way if free."

Evaluators should apply this standard to all elements of the criteria in the completion of all SVP reports. The recommended method by which one comes to this conclusion remains the guideline contained in the Evaluator Handbook and Standardized Assessment Protocol.

It is worth noting that the Court specifically stated in this decision that the standard of "more likely than not" cannot be the basis for decision in these reports. The court stated: "If an evaluator finds such a serious and well-founded risk, but nonetheless recommends against commitment or recommitment solely because the evaluator cannot conclude the person is more likely than not to reoffend, the evaluator has

applied the statute erroneously." Evaluators should not apply a standard of "more likely than not" when making SVP report conclusions. The standard is not tied to a percentage of risk, but to a judgement, considering all evidence, that there is a substantial danger, based on a serious and well-founded risk, that the person being evaluated will engage in acts of sexually violence without appropriate treatment and custody.

### Predatory Finding

It is imperative that the evaluation contains a statement that future sexually violent acts will or will not be predatory (as defined in the SVP statute). Furthermore, if the finding is that future criminal acts will be predatory, there should be a rationale based on the **"likely"** standard defined in the Ghilotti California Supreme Court Decision (2002).

## Plans for Voluntary Treatment without Commitment

The offender may suggest a voluntary plan for supervision and treatment that may affect whether a person meets the SVP criteria for commitment. The California Supreme Court in <u>Cooley v. Superior Court of Los Angeles</u> (2002) 29 Cal. 4th 228 has specifically stated that evaluators must consider the offender's amenability to voluntary treatment, as opposed to involuntary treatment in determining the risk of committing sexually violent predatory criminal acts. The evaluator should be convinced or have a high degree of confidence that the person's expressed desire to seek supervision and treatment in the community without the SVP commitment is meaningful, sincere, and sufficiently significant. The guidance regarding consideration of voluntary treatment is taken from the California Supreme Court decision of <u>People v. Superior Court of Marin County</u> (2002) 27 Cal. 4th 888 (Patrick Henry Ghilotti, Real Party in Interest).

If the offender being evaluated proposes voluntary treatment in the community, the following factors should be considered to determine the extent that the voluntary plan provides sufficient reduction of risk to reoffend: (1) the availability, effectiveness, safety, and practicality of community treatment for the individual offender, (2) whether the person's mental disorder leaves him or her likely to pursue and maintain such treatment voluntarily, (3) the intended treatment effectiveness and the influence of such effectiveness on a reasonable expectation that the person will pursue it, (4) a history of pursuing and maintaining voluntary treatment, (5) progress in ongoing treatment, the person's expressed intent, if any, to seek out and submit to any necessary treatment, whatever, its effects, and (6) any other indicia bearing on the credibility and sincerity of such an expression of intent.

The evaluator should not assume because the person will be subject to state parole conditions that any particular level of sex offender treatment will be provided, or that the offender will continue sex offender treatment at the end of the parole period. Finally, the evaluation report should not recommend a course of treatment. The purpose of the report is to determine whether an individual meets the statutory SVP criteria at the time of the evaluation. The purpose of the report is not to prescribe a course of action absent a finding that the person meets SVP criteria.

## Final Statement in Criteria C

The final statement in Criteria C must be that the inmate is, or is not, likely to engage in sexually violent predatory criminal behavior as a result of his or her diagnosed mental disorder without appropriate treatment and custody. The report should not end with statements such as "there is not enough evidence to draw positive conclusions." The evaluator must state in the report, in Criteria C, whether the person is likely, or is not likely, to commit future sexual violence, in accordance with the primary question being answered.

## III.  **CONCLUSIONS**

Finally, state your opinion regarding the inmate meeting or not meeting the three criteria pursuant to WIC 6600. For example:

Based on the above information, it is my opinion that Mr. Inmate **does or does not** meet the criteria as a sexually violent predator as described in Section 6600(a) of the Welfare and Institutions Code.

## SVP COMMITMENT EXTENSION EVALUATIONS

Extension evaluations (sometimes referred to as "recommitment" evaluations) are clinical evaluations of persons who are presently civilly committed as a sexually violent predator, and, most likely, are in custody in a state hospital. The standardized assessment protocol that is described in the Clinical Evaluator Handbook and Standardized Assessment Protocol also applies to SVP extension evaluations. However, there is supplemental information to consider that would not be necessary to consider when evaluating a person who has never been committed as a sexually violent predator. References in this supplement to an SVP means a civilly committed sexually violent predator. References to the "initial" evaluation means the evaluation of an SVP evaluation of a person who is not currently a civilly committed SVP.

## EVALUATOR RESPONSIBILITY

The SVP has been committed by a superior court to the care and custody of the state hospital. Therefore, the state hospital is responsible for all medical and evaluation services rendered to an SVP. The extension evaluation assigned to a contract evaluator by the Sex Offender Commitment Program in Sacramento has been requested by the state hospital. For this reason, the original copy of the extension evaluation is mailed to the state hospital. (At Atascadero State Hospital, this would be the Health Information Management Department.) A copy of the evaluation's first page is provided to the Sex Offender Commitment Program in Sacramento for the purpose of substantiating that the contract work has been performed. The state hospital provides the patient with a slightly modified Notification of Evaluation as a Sexually Violent Predator.

## PRIMARY DIFFERENCES FROM INITIAL EVALUATIONS

Past qualifying convictions should be noted and described, but do not require elaboration or the type of analysis that is required in an initial evaluation (e.g., descriptor of force, violence, duress, menace and fear). The elements legally qualifying the individual have been proven to be present by virtue of the person's prior SVP commitment.

The "likely" standard, as defined in this Evaluator Handbook, remains the same for persons evaluated for commitment extension.

### State Hospital Treatment Consideration

Like the initial evaluation, the evaluator's assignment is not treatment, but to evaluate static and dynamic information about the patient against legal criteria. In so doing, the hospital treatment record must be considered. The treatment provided to an SVP at a state hospital is provided in a Sex Offender Commitment Program (SOCP).

The SOCP is based on a Relapse Prevention model, delivered in five phases of treatment. These phases are:

Phase I        Treatment Readiness – This phase provides an educational overview of the treatment program, including knowledge of basic concepts and skills for working in groups. Requires no participation by the patient. The person is allowed to simply be present and listen to information being presented. Patients can continue in this Phase indefinitely. The patient must volunteer to enter Phase II and agree to the following criteria: he has committed past sexual offenses; he wants to reduce his risk of re-offending; he is willing to discuss his sexual offenses; he will cooperate with the required assessment procedures (PPG/Psychological Assessment Battery/Polygraph); and he will behave appropriately during group sessions.

Phase II        Skills Acquisition - The patient identifies significant events and thinking errors that led to past sexual offending (fundamental skills of relapse prevention). Participants also identify the consequences of sexual offending on victims of sexual abuse. At the end of this phase, participants will have completed an autobiography to help them identify situations and risks that may lead to future sexual offenses, as well as a commitment not to reoffend. In order for staff to determine that the patient is appropriate for movement to Phase III, the patient must have met the following criteria: developed a comprehensive list of his high-risk factors and cognitive distortions based on a complete review of his sexually violent criminal history; identified a variety of realistic coping responses for his high-risks and corrections for his cognitive distortions; completed Phase II assessments and specialty groups.

Phase III        Skills Application  - Patients participate in a more advanced level of identifying thinking errors that contributed to their sexual crimes, improve their ability to recognize the consequences of sexual abuse on victims, and use a journal to become more aware of other factors that could lead to reoffense.  In order to move to Phase IV, the patient must have met the following criteria: he is able to identify high-risks in his day-to-day life and utilize appropriate and effective coping responses; demonstrated that he has corrected his past cognitive distortions, has the ability to identify and correct new cognitive distortions as they arise, demonstrated specific ability to manage his deviant sexual arousal. The team is also confirming that the patient is now ready to develop an individualized community safety plan.

Phase IV        Discharge Readiness/Release Planning  - Patients continue to use a journal to identify and cope with current thoughts, feelings and behaviors that represent high risk.  They anticipate situations they will face in the community and identify how they will cope with these new situations.  They develop a community safety plan in cooperation with CONREP and sign Terms and Conditions for community supervision. When the treatment team believes that a patient is ready for transition to Phase V it is determined that the patient is not likely to commit acts of predatory sexual violence while under supervision and treatment in the community.

Phase V        Outpatient  - The patient is discharged from the hospital into the care of the Conditional Release Program (CONREP).  The patient's treatment, supervision, and monitoring proceeds according to the Terms and Conditions established in Phase IV.

The patient has the right to return to court annually to determine the need for continued placement in CONREP.

The SVP extension evaluation should not provide an opinion as to whether a state hospital patient is in the correct phase of Relapse Prevention or other treatment. The purpose of the evaluation is to provide an opinion as to whether the person presently has a mental disorder that makes it likely that he/she will commit predatory sexually violent acts in the future.

Also, it is important to underscore that the SVP patient has not completed the treatment program until all five phases of the Relapse Prevention program are completed. Since the person has been committed as an SVP by a court for "appropriate treatment" (WIC 6604), the Department believes that a person must finish the program, including the completion of a period in outpatient supervision. Only under unusual circumstances would a patient being evaluated for SVP commitment extension be deemed unlikely to commit future sexually violent acts as a result of a mental disorder, if all five phases of treatment have not been completed. If this is the case, the evaluator is required to consult with the department on their conclusion.

**ACCESS TO ATASCADERO**

## Obtaining Documents to Review

The documentation to be reviewed by the evaluator in an extension is contained in the state hospital record and at the California Men's Colony (for ASH patients) in the former inmate's central file. These include CDC information and treatment information for the period he or she has been a patient in the state hospital. To gain access to the hospital record or prison records, we recommend the following:

1. Contact the record review desk at Atascadero (805) 468-2679, to arrange a date and time to review the ASH records.

2. Contact the unit (either the nurses station, the psychologist, or social worker) and let them know that you have been asked to complete a recommitment evaluation. Have the patient contacted to determine whether he or she will interview. You can also just go to the visiting room and request to see the patient when you get there. As in the initial SVP evaluation of a prison inmate, if the person will not interview, you must perform the evaluation based on documentation only. Determining this up front may allow you to more effectively use your time.

3. Call CMC-East and arrange to review the Central File of the patient(s) you are planning to evaluate at ASH.

4. After reviewing the relevant records and interviewing or attempting to interview the patient, it is recommended that you contact the identified member of the patient's treatment team to review relevant issues and clarify the information in the chart.

5. Once you have completed the report, send the original to ASH and the first page to DMH.

## Atascadero Skill Profile (ASP)

The Atascadero Skills Profile (ASP) is an assessment instrument that focuses on functional skills in a forensically committed psychiatric inpatient population. The instrument was developed at Atascadero State Hospital to organize the initial evaluation of skill areas relevant to the patient's successful adaptation to their discharge environment. The assessment also identifies the patients' focus of treatment for skills building activities, including their response to treatment over time.

## Patient Plans for Voluntary Treatment Post-Commitment

The patient may suggest that he or she has a voluntary plan for continued relapse prevention, or treatment, if released from the SVP commitment. You may consider this information in your decision as to whether the person is likely to commit future sexual violent acts without treatment and custody. However, the California Supreme Court specifically stated that evaluators must weigh the possibility of voluntary post-commitment treatment with requisite care and caution. In other words, the evaluator should be convinced or have a high degree of confidence that the person's expressed desire to continue treatment, even without the SVP commitment, is meaningful, sincere, and sufficiently significant. It further stated that the pertinent factors to consider include (1) the availability, effectiveness, safety, and practicality of community treatment for the particular disorder the person harbors, (2) whether the person's mental disorder leaves him or her with volitional power to pursue such treatment voluntarily, (3) the intended and collateral effects of such treatment, and the influence of such effects on a reasonable expectation that one would voluntarily pursue it, (4) the person's progress in treatment, (5) the person's expressed intent, if any, to seek out and submit to any necessary treatment, whatever its effects, and (6) any other indicia bearing on the credibility and sincerity of such an expression of intent.

This guidance regarding consideration of voluntary treatment is taken from the California Supreme Court decision of People v. Superior Court of Marin County (2002) 27 Cal. 4th 888 (Patrick Henry Ghilotti, Real Party in Interest). This court case is required reading for all sexually violent predator evaluators.

## EVALUATION RECOMMENDATION

The conclusion of an extension evaluation must reflect whether the person currently meets criteria as a sexually violent predator as described in Sec. 6600(a) of the Welfare and Institutions Code. The recommendation should not be that the individual should, or should not be extended or recommitted. That is a decision first for the county attorney who may file a petition for extended commitment, and second, for court adjudication.

# Appendices:

A.     Welfare and Institutions Code 6600

B.     Notification of Evaluation as a Sexually Violent Predator

C.     Clinical Evaluation Summary Form

D.     Required Report Format for Recommitment Evaluation

E.     References - Literature

F.     References – Court Decisions

# APPENDIX A

WELFARE AND INSTITUTIONS CODE SECTION 6600-6609.3

6600. As used in this article, the following terms have the following meanings:

(a) (1) "Sexually violent predator" means a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

(2) For purposes of this subdivision any of the following shall be considered a conviction for a sexually violent offense:

(A) A prior or current conviction that resulted in a determinate prison sentence for an offense described in subdivision (b).

(B) A conviction for an offense described in subdivision (b) that was committed prior to July 1, 1977, and that resulted in an indeterminate prison sentence.

(C) A prior conviction in another jurisdiction for an offense that includes all of the elements of an offense described in subdivision (b).

(D) A conviction for an offense under a predecessor statute that includes all of the elements of an offense described in subdivision (b).

(E) A prior conviction for which the inmate received a grant of probation for an offense described in subdivision (b).

(F) A prior finding of not guilty by reason of insanity for an offense described in subdivision (b).

(G) A conviction resulting in a finding that the person was a mentally disordered sex offender.

(3) Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health. Jurors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

(4) The provisions of this section shall apply to any person against whom proceedings were initiated for commitment as a sexually violent predator on or after January 1, 1996.

(b) "Sexually violent offense" means the following acts when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, and that are committed on, before, or after the effective date of this article and result in a conviction or a finding of not guilty by reason of insanity, as provided in subdivision (a): a felony violation of paragraph (2) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262, Section 264.1, subdivision (a) or (b) of Section 288, or subdivision (a) of Section 289 of the Penal Code, or sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code.

(c) "Diagnosed mental disorder" includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.

(d) "Danger to the health and safety of others" does not require proof of a recent overt act while the offender is in custody.

(e) "Predatory" means an act is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization.

(f) "Recent overt act" means any criminal act that manifests a likelihood that the actor may engage in sexually violent predatory criminal behavior.

(g) Notwithstanding any other provision of law and for purposes of this section, no more than one prior juvenile adjudication of a sexually violent offense may constitute a prior conviction for which the person received a determinate term if all of the following applies:

(1) The juvenile was 16 years of age or older at the time he or she committed the prior offense.

(2) The prior offense is a sexually violent offense as specified in subdivision (b). Notwithstanding Section 6600.1, only an offense described in subdivision (b) shall constitute a sexually violent offense for purposes of this subdivision.

(3) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 because of the person's commission of the offense giving rise to the juvenile court adjudication.

(4) The juvenile was committed to the Department of the Youth Authority for the sexually violent offense.

(h) A minor adjudged a ward of the court for commission of an offense that is defined as a sexually violent offense shall be entitled to specific treatment as a sexual offender. The failure of a minor to receive that treatment shall not constitute a defense or bar to a determination that any person is a sexually violent predator within the meaning of this article.


6600.05. (a) Until a permanent housing and treatment facility is available, Atascadero State Hospital shall be used whenever a person is committed to a secure facility for mental health treatment pursuant to this article and is placed in a state hospital under the direction of the State Department of Mental Health unless there are unique circumstances that would preclude the placement of a person at that facility. If a state hospital is not used, the facility to be used shall be located on a site or sites determined by the Director of Corrections and the Director of Mental Health. In no case shall a person committed to a secure facility for mental health treatment pursuant to this article be placed at Metropolitan State Hospital or Napa State Hospital.

(b) A permanent facility for the housing and treatment of persons committed pursuant to this article shall be located on a site or sites determined by the Director of Corrections and the Director of Mental Health, with approval by the Legislature through a trailer bill or other legislation. The State Department of Mental Health shall be responsible for operation of the facility, including the provision of treatment.


6600.1. (a) If the victim of an underlying offense that is specified in subdivision (b) of Section 6600 is a child under the age of 14 and the offending act or acts involved substantial sexual conduct, the offense shall constitute a "sexually violent offense" for purposes of Section 6600.

(b) "Substantial sexual conduct" means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender.

6601. (a) (1) Whenever the Director of Corrections determines that an individual who is in custody under the jurisdiction of the Department of Corrections, and who is either serving a determinate prison sentence or whose parole has been revoked, may be a sexually violent predator, the director shall, at least six months prior to that individual's scheduled date for release from prison, refer the person for evaluation in accordance with this section. However, if the inmate was received by the department with less than nine months of his or her sentence to serve, or if the inmate's release date is modified by judicial or administrative action, the director may refer the person for evaluation in accordance with this section at a date that is less than six months prior to the inmate's scheduled release date.

(2) A petition may be filed under this section if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed. A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law. This paragraph shall apply to any petition filed on or after January 1, 1996.

(b) The person shall be screened by the Department of Corrections and the Board of Prison Terms based on whether the person has committed a sexually violent predatory offense and on a review of the person's social, criminal, and institutional history. This screening shall be conducted in accordance with a structured screening instrument developed and updated by the State Department of Mental Health in consultation with the Department of Corrections. If as a result of this screening it is determined that the person is likely to be a sexually violent predator, the Department of Corrections shall refer the person to the State Department of Mental Health for a full evaluation of whether the person meets the criteria in Section 6600.

(c) The State Department of Mental Health shall evaluate the person in accordance with a standardized assessment protocol, developed and updated by the State Department of Mental Health, to determine whether the person is a sexually violent predator as defined in this article. The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder.

(d) Pursuant to subdivision (c), the person shall be evaluated by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist, designated by the Director of Mental Health. If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health shall forward a request for a petition for commitment under Section 6602 to the county designated in subdivision (i). Copies of the evaluation reports and any other supporting documents shall be made available to the attorney designated by the county pursuant to subdivision (i) who may file a petition for commitment.

(e) If one of the professionals performing the evaluation pursuant to subdivision (d) does not concur that the person meets the criteria specified in subdivision (d), but the other professional concludes that the person meets those criteria, the Director of
Mental Health shall arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g).

(f) If an examination by independent professionals pursuant to subdivision (e) is conducted, a petition to request commitment under this article shall only be filed if both independent professionals who evaluate the person pursuant to subdivision (e) concur that the person meets the criteria for commitment specified in subdivision (d). The professionals selected to evaluate the person pursuant to subdivision (g) shall inform the person that the purpose of their examination is not treatment but to determine if the person meets certain criteria to be

involuntarily committed pursuant to this article. It is not required that the person appreciate or understand that information.

(g) Any independent professional who is designated by the Director of Corrections or the Director of Mental Health for purposes of this section shall not be a state government employee, shall have at least five years of experience in the diagnosis and treatment of mental disorders, and shall include psychiatrists and licensed psychologists who have a doctoral degree in psychology. The requirements set forth in this section also shall apply to any professionals appointed by the court to evaluate the person for purposes of any other proceedings under this article.

(h) If the State Department of Mental Health determines that the person is a sexually violent predator as defined in this article, the Director of Mental Health shall forward a request for a petition to be filed for commitment under this article to the county designated in subdivision (i). Copies of the evaluation reports and any other supporting documents shall be made available to the attorney designated by the county pursuant to subdivision (i) who may file a petition for commitment in the superior court.

(i) If the county's designated counsel concurs with the recommendation, a petition for commitment shall be filed in the superior court of the county in which the person was convicted of the offense for which he or she was committed to the jurisdiction of the Department of Corrections. The petition shall be filed, and the proceedings shall be handled, by either the district attorney or the county counsel of that county. The county board of supervisors shall designate either the district attorney or the county counsel to assume responsibility for proceedings under this article.

(j) The time limits set forth in this section shall not apply during the first year that this article is operative.

(k) If the person is otherwise subject to parole, a finding or placement made pursuant to this article shall not toll, discharge, or otherwise affect the term of parole pursuant to Article 1 (commencing with Section 3000) of Chapter 8 of Title 1 of Part 3 of the Penal Code.

(l) Pursuant to subdivision (d), the attorney designated by the county pursuant to subdivision (i) shall notify the State Department of Mental Health of its decision regarding the filing of a petition for commitment within 15 days of making that decision.


6601.3. Upon a showing of good cause, the Board of Prison Terms may order that a person referred to the State Department of Mental Health pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601.


6601.5. Upon filing of the petition and a request for review under this section, a judge of the superior court shall review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. If the judge determines that the petition, on its face, supports a finding of probable cause, the judge shall order that the person be detained in a secure facility until a hearing can be completed pursuant to Section 6602. The probable cause hearing provided for in Section 6602 shall commence within 10 calendar days of the date of the order issued by the judge pursuant to this section.

6602. (a) A judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. The person named in the petition shall be entitled to assistance of counsel at the probable cause hearing. Upon the commencement of the probable cause hearing, the person shall remain in custody pending the completion of the probable cause hearing. If the judge determines there is not probable cause, he or she shall dismiss the petition and any person subject to parole shall report to parole. If the judge determines that there is probable cause, the judge shall order that the person remain in custody in a secure facility until a trial is completed and shall order that a trial be conducted to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release from the jurisdiction of the Department of Corrections or other secure facility.

(b) The probable cause hearing shall not be continued except upon a showing of good cause by the party requesting the continuance.

(c) The court shall notify the State Department of Mental Health of the outcome of the probable cause hearing by forwarding to the department a copy of the minute order of the court within 15 days of the decision.

6602.5. (a) No person may be placed in a state hospital pursuant to the provisions of this article until there has been a determination pursuant to Section 6601.3 or 6602 that there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior.

(b) The State Department of Mental Health shall identify each person for whom a petition pursuant to this article has been filed who is in a state hospital on or after January 1, 1998, and who has not had a probable cause hearing pursuant to Section 6602. The State Department of Mental Health shall notify the court in which the petition was filed that the person has not had a probable cause hearing. Copies of the notice shall be provided by the court to the attorneys of record in the case. Within 30 days of notice by the State Department of Mental Health, the court shall either order the person removed from the state hospital and returned to local custody or hold a probable cause hearing pursuant to Section 6602.

(c) In no event shall the number of persons referred pursuant to subdivision (b) to the superior court of any county exceed 10 in any 30-day period, except upon agreement of the presiding judge of the superior court, the district attorney, the public defender, the sheriff, and the Director of Mental Health.

(d) This section shall be implemented in Los Angeles County pursuant to a letter of agreement between the Department of Mental Health, the Los Angeles County district attorney, the Los Angeles County public defender, the Los Angeles County sheriff, and the Los Angeles County superior court. The number of persons referred to the superior court of Los Angeles County pursuant to subdivision (b) shall be governed by the letter of agreement.

6603. (a) A person subject to this article shall be entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports. In the case of a person who is indigent, the court shall appoint counsel to assist him or her, and, upon the person's request, assist the person in obtaining an expert or professional person to perform an examination or participate in the trial on the person's behalf.

(b) The attorney petitioning for commitment under this article shall have the right to demand that the trial be before a jury.

(c) (1) If the attorney petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment, the attorney may request the State Department of Mental Health to perform updated evaluations. If one or more of the original evaluators is no longer available to testify for the petitioner in court proceedings, the attorney petitioning for commitment under this article may request the State Department of Mental Health to perform replacement evaluations. When a request is made for updated or replacement evaluations, the State Department of Mental Health shall perform the requested evaluations and forward them to the petitioning attorney and to the counsel for the person subject to this article. However, updated or replacement evaluations shall not be performed except as necessary to update one or more of the original evaluations or to replace the evaluation of an evaluator who is no longer available to testify for the petitioner in court proceedings. These updated or replacement evaluations shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated, either voluntarily or by court order. If an updated or replacement evaluation results in a split opinion as to whether the person subject to this article meets the criteria for commitment, the State Department of Mental Health shall conduct two additional evaluations in accordance with subdivision (f) of Section 6601.

(2) For purposes of this subdivision, "no longer available to testify for the petitioner in court proceedings" means that the evaluator is no longer authorized by the Director of Mental Health to perform evaluations regarding sexually violent predators as a result of any of the following:

(A) The evaluator has failed to adhere to the protocol of the State Department of Mental Health.

(B) The evaluator's license has been suspended or revoked.

(C) The evaluator is unavailable pursuant to Section 240 of the Evidence Code.

(D) Nothing in this section shall prevent the defense from presenting otherwise relevant and admissible evidence.

(E) If the person subject to this article or the petitioning attorney does not demand a jury trial, the trial shall be before the court without a jury.

(F) A unanimous verdict shall be required in any jury trial.

(G) The court shall notify the State Department of Mental Health of the outcome of the trial by forwarding to the department a copy of the minute order of the court within 72 hours of the decision.


6604. The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced, or that the person be unconditionally released at the end of parole, whichever is applicable. If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health, and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment under this article or unless the term of commitment changes pursuant to subdivision (e) of Section 6605. Time spent on conditional release shall not count toward the

two-year term of commitment, unless the person is placed in a locked facility by the conditional release program, in which case the time in a locked facility shall count toward the two-year term of commitment. The facility shall be located on the grounds of an institution under the jurisdiction of the Department of Corrections.

6604.1. (a) The two-year term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The initial two-year term shall not be reduced by any time spent in a secure facility prior to the order of commitment. For any subsequent extended commitments, the term of commitment shall be for two years commencing from the date of the termination of the previous commitment.

(b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments. The rights, requirements, and procedures set forth in Section 6603 shall apply to extended commitment proceedings.

6605. (a) A person found to be a sexually violent predator and committed to the custody of the State Department of Mental Health shall have a current examination of his or her mental condition made at least once every year. The person may retain, or if he or she is indigent and so requests, the court may appoint, a qualified expert or professional person to examine him or her, and the expert or professional person shall have access to all records concerning the person.

(b) The director shall provide the committed person with an annual written notice of his or her right to petition the court for conditional release under Section 6608. The notice shall contain a waiver of rights. The director shall forward the notice and waiver form to the court with the annual report. If the person does not affirmatively waive his or her right to petition the court for conditional release, the court shall set a show cause hearing to determine whether facts exist that warrant a hearing on whether the person's condition has so changed that he or she would not be a danger to the health and safety of others if discharged. The committed person shall have the right to be present and to have an attorney represent him or her at the show cause hearing.

(c) If the court at the show cause hearing determines that probable cause exists to believe that the committed person's diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged, then the court shall set a hearing on the issue.

(d) At the hearing, the committed person shall have the right to be present and shall be entitled to the benefit of all constitutional protections that were afforded to him or her at the initial commitment proceeding. The attorney designated by the county pursuant to subdivision (i) of Section 6601 shall represent the state and shall have the right to demand a jury trial and to have the committed person evaluated by experts chosen by the state. The committed person also shall have the right to demand a jury trial and to have experts evaluate him or her on his or her behalf. The court shall appoint an expert if the person is indigent and requests an appointment. The burden of proof at the hearing shall be on the state to prove beyond a reasonable doubt that the committed person's diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged.

(e) If the court or jury rules against the committed person at the hearing conducted pursuant to subdivision (d), the term of commitment of the person shall run for a period of two years from the date of this ruling. If the court or jury rules for the committed person, he or she shall be unconditionally released and unconditionally discharged.

(f) In the event that the State Department of Mental Health has reason to believe that a person committed to it as a sexually violent predator is no longer a sexually violent predator, it shall seek judicial review of the person's commitment pursuant to the procedures set forth in Section 7250 in the superior court from which the commitment was made. If the superior court determines that the person is no longer a sexually violent predator, he or she shall be unconditionally released and unconditionally discharged.

6606. (a) A person who is committed under this article shall be provided with programming by the State Department of Mental Health which shall afford the person with treatment for his or her diagnosed mental disorder.

(b) Amenability to treatment is not required for a finding that any person is a person described in Section 6600, nor is it required for treatment of that person. Treatment does not mean that the treatment be successful or potentially successful, nor does it mean that the person must recognize his or her problem and willingly participate in the treatment program.

(c) The programming provided by the State Department of Mental Health in facilities shall be consistent with current institutional standards for the treatment of sex offenders, and shall be based on a structured treatment protocol developed by the State Department of Mental Health. The protocol shall describe the number and types of treatment components that are provided in the program, and shall specify how assessment data will be used to determine the course of treatment for each individual offender. The protocol shall also specify measures that will be used to assess treatment progress and changes with respect to the individual's risk of reoffense.

6607. (a) If the Director of Mental Health determines that the person's diagnosed mental disorder has so changed that the person is not likely to commit acts of predatory sexual violence while under supervision and treatment in the community, the director shall forward a report and recommendation for conditional release in accordance with Section 6608 to the county attorney designated in subdivision (i) of Section 6601, the attorney of record for the person, and the committing court.

(b) When a report and recommendation for conditional release is filed by the Director of Mental Health pursuant to subdivision (a), the court shall set a hearing in accordance with the procedures set forth in Section 6608.

6608. (a) Nothing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release and subsequent unconditional discharge without the recommendation or concurrence of the Director of Mental Health. If a person has previously filed a petition for conditional release without the concurrence of the director and the court determined, either upon review of the petition or following a hearing, that the petition was frivolous or that the committed person' s condition had not so changed that he or she would not be a danger to others in that it is not likely that he or she will engage in sexually violent criminal behavior if placed under supervision and treatment in the community, then the court shall deny the subsequent petition unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was

warranted. Upon receipt of a first or subsequent petition from a committed person without the concurrence of the director, the court shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing. The person petitioning for conditional release and unconditional discharge under this subdivision shall be entitled to assistance of counsel.

(b) The court shall give notice of the hearing date to the attorney designated in subdivision (i) of Section 6601, the retained or appointed attorney for the committed person, and the Director of Mental Health at least 15 court days before the hearing date.

(c) No hearing upon the petition shall be held until the person who is committed has been under commitment for confinement and care in a facility designated by the Director of Mental Health for not less than one year from the date of the order of commitment.

(d) The court shall hold a hearing to determine whether the person committed would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community. If the court at the hearing determines that the committed person would not be a danger to others due to his or her diagnosed mental disorder while under supervision and treatment in the community, the court shall order the committed person placed with an appropriate forensic conditional release program operated by the state for one year. A substantial portion of the state-operated forensic conditional release program shall include outpatient supervision and treatment. The court shall retain jurisdiction of the person throughout the course of the program. At the end of one year, the court shall hold a hearing to determine if the person should be unconditionally released from commitment on the basis that, by reason of a diagnosed mental disorder, he or she is not a danger to the health and safety of others in that it is not likely that he or she will engage in sexually violent criminal behavior. The court shall not make this determination until the person has completed at least one year in the state-operated forensic conditional release program. The court shall notify the Director of Mental Health of the hearing date.

(e) Before placing a committed person in a state-operated forensic conditional release program, the community program director designated by the State Department of Mental Health shall submit a written recommendation to the court stating which forensic conditional release program is most appropriate for supervising and treating the committed person. If the court does not accept the community program director's recommendation, the court shall specify the reason or reasons for its order on the record. The procedures described in Sections 1605 to 1610, inclusive, of the Penal Code shall apply to the person placed in the forensic conditional release program.

(f) If the court determines that the person should be transferred to a state-operated forensic conditional release program, the community program director, or his or her designee, shall make the necessary placement arrangements and, within 21 days after receiving notice of the court's finding, the person shall be placed in the community in accordance with the treatment and supervision plan unless good cause for not doing so is presented to the court.

(g) If the court rules against the committed person at the trial for unconditional release from commitment, the court may place the committed person on outpatient status in accordance with the procedures described in Title 15 (commencing with Section 1600) of Part 2 of the Penal Code.

(h) If the court denies the petition to place the person in an appropriate forensic conditional release program or if the petition for unconditional discharge is denied, the person may not file a new application until one year has elapsed from the date of the denial.

(i) In any hearing authorized by this section, the petitioner shall have the burden of proof by a preponderance of the evidence.

(j) If the petition for conditional release is not made by the director of the treatment facility to which the person is committed, no action on the petition shall be taken by the court without first obtaining the written recommendation of the director of the treatment facility.

(k) Time spent in a conditional release program pursuant to this section shall not count toward the term of commitment under this article unless the person is confined in a locked facility by the conditional release program, in which case the time spent in a locked facility shall count toward the term of commitment.


6609. Within 10 days of a request made by the chief of police of a city or the sheriff of a county, the State Department of Mental Health shall provide the following information concerning each person committed as a sexually violent predator who is receiving outpatient care in a conditional release program in that city or county:  name, address, date of commitment, county from which committed, date of placement in the conditional release program, fingerprints, and a glossy photograph no smaller than 31/8 X 31/8 inches in size, or clear copies of the fingerprints and photograph.


6609.1.  (a) When the State Department of Mental Health makes a recommendation to the court for community outpatient treatment for any person committed as a sexually violent predator, or when a person who is committed as a sexually violent predator pursuant to this article has petitioned a court pursuant to Section 6608 for conditional release under supervision and treatment in the community pursuant to a conditional release program, or has petitioned a court pursuant to Section 6608 for subsequent unconditional discharge, and the department is notified, or is aware, of the filing of the petition, the department shall notify the sheriff or chief of police, or both, the district attorney, or the county's designated counsel, that have jurisdiction over the following locations:

(1) The community in which the person may be released for community outpatient treatment.

(2) The community in which the person maintained his or her last legal residence as defined by Section 3003 of the Penal Code.

(3) The county that filed for the person's civil commitment pursuant to this article.

The department shall also notify the Sexually Violent Predator Parole Coordinator of the Department of Corrections, if the person is otherwise subject to parole pursuant to Article 1 (commencing with Section 3000) of Chapter 8 of Title 1 of Part 3 of the Penal Code.  The notice shall be given at least 15 days prior to the department' s submission of its recommendation to the court in those cases in which the department recommended community outpatient treatment.

(b) When the State Department of Mental Health makes a recommendation to pursue recommitment, makes a recommendation not to pursue recommitment, or seeks a judicial review of commitment status pursuant to subdivision (f) of Section 6605, of any person committed as a sexually violent predator, it shall provide written notice of that action to the sheriff or chief of police, or both, and to the district attorney, that have jurisdiction over the following locations:

(1) The community in which the person maintained his or her last legal residence as defined by Section 3003 of the Penal Code.

(2) The community in which the person will probably be released, if recommending not to pursue recommitment.

(3) The county that filed for the person's civil commitment pursuant to this article.

The State Department of Mental Health shall also notify the Sexually Violent Predator Parole Coordinator of the Department of Corrections, if the person is otherwise subject to parole pursuant to Article 1 (commencing with Section 3000) of Chapter 8 of Title 1 of Part 3 of the Penal Code. The notice shall be made at least 15 days prior to the department's submission of its recommendation to the court.

Those agencies receiving the notice referred to in this subdivision shall have 15 days from receipt of the notice to provide written comment to the department regarding the impending release. Those comments shall be considered by the department, which may modify its decision regarding the community in which the person is scheduled to be released, based on those comments.

(c) If the court orders the release of a sexually violent predator, the court shall notify the Sexually Violent Predator Parole Coordinator of the Department of Corrections. The Department of Corrections shall notify the State Department of Mental Health, the sheriff or chief of police, or both, and the district attorney, that have jurisdiction over the following locations:

(1) The community in which the person is to be released.

(2) The community in which the person maintained his or her last legal residence as defined in Section 3003 of the Penal Code.

The Department of Corrections shall make the notifications required by this subdivision regardless of whether the person released will be serving a term of parole after release by the court.

(d) If the person is otherwise subject to parole pursuant to Article 1 (commencing with Section 300) of Chapter 8 of Title 1 of Part 3 of the Penal Code, to allow adequate time for the Department of Corrections to make appropriate parole arrangements upon release of the person, the person shall remain in physical custody for a period not to exceed 72 hours or until parole arrangements are made by the Sexually Violent Predator Parole Coordinator of the Department of Corrections, whichever is sooner. To facilitate timely parole arrangements, notification to the Sexually Violent Predator Parole

Coordinator of the Department of Corrections of the pending release shall be made by telephone or facsimile and, to the extent possible, notice of the possible release shall be made in advance of the proceeding or decision determining whether to release the person.

(e) The notice required by this section shall be made whether or not a request has been made pursuant to Section 6609.

(f) The time limits imposed by this section are not applicable when the release date of a sexually violent predator has been advanced by a judicial or administrative process or procedure that could not have reasonably been anticipated by the State Department of Mental Health and where, as the result of the time adjustments, there is less than 30 days remaining on the commitment before the inmate's release, but notice shall be given as soon as practicable. In no case shall notice required by this section to the appropriate agency be later than the day of release.

(g) The provisions of this section are severable. If any provision of this section or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.


6609.2. (a) When any sheriff or chief of police is notified by the State Department of Mental Health of its recommendation to the court concerning the disposition of a sexually violent predator pursuant to subdivision (a) or (b) of Section 6609.1, that sheriff or chief of police may notify any person designated by the sheriff or chief of police as an appropriate recipient of the notice.

(b) A law enforcement official authorized to provide notice pursuant to this section, and the public agency or entity employing the law enforcement official, shall not be liable for providing or failing to provide notice pursuant to this section.

6609.3. (a) At the time a notice is sent pursuant to subdivisions (a) and (b) of Section 6609.1, the sheriff, chief of police, or district attorney notified of the release shall also send a notice to persons described in Section 679.03 of the Penal Code who have requested a notice, informing those persons of the fact that the person who committed the sexually violent offense may be released together with information identifying the court that will consider the conditional release, recommendation regarding recommitment, or review of commitment status pursuant to subdivision (f) of Section 6605. When a person is approved by the court to be conditionally released, notice of the community in which the person is scheduled to reside shall also be given only if it is (1) in the county of residence of a witness, victim, or family member of a victim who has requested notice, or (2) within 100 miles of the actual residence of a witness, victim, or family member of a victim who has requested notice. If, after providing the witness, victim, or next of kin with the notice, there is any change in the release date or the community in which the person is to reside, the sheriff, chief of police, or the district attorney shall provide the witness, victim, or next of kin with the revised information.

(b) At the time a notice is sent pursuant to subdivision (c) of Section 6609.1 the Department of Corrections shall also send a notice to persons described in Section 679.03 of the Penal Code who have requested a notice informing those persons of the fact that the person who committed the sexually violent offense has been released.

(c) In order to be entitled to receive the notice set forth in this section, the requesting party shall keep the sheriff, chief of police, and district attorney who were notified under Section 679.03 of the Penal Code, informed of his or her current mailing address.

SEC. 12. No reimbursement is required by Section 1 of this act pursuant to Section 6 of Article XIIIB of the California Constitution for certain costs that may be incurred by a local agency or school district because in that regard this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIIIB of the California Constitution.

However, notwithstanding Section 17610 of the Government Code, if the Commission on State Mandates determines that this act contains other costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code. If the statewide cost of the claim for reimbursement does not exceed one million dollars ($1,000,000), reimbursement shall be made from the State Mandates Claims Fund.

Notwithstanding Section 17580 of the Government Code, unless otherwise specified, the provisions of this act shall become operative on the same date that the act takes effect pursuant to the California Constitution.

# APPENDIX B

## NOTICE OF EVALUATION AS A SEXUALLY VIOLENT PREDATOR

You are being evaluated to determine whether you may be a Sexually Violent Predator (SVP) under Section 6600 of the California Welfare and Institutions Code. The purpose of the evaluation and interview is to decide if you have a mental condition that makes you likely to commit sexual crimes in the future. If you are determined to meet the criteria for the SVP law, you could be sent to court for trial. If the court finds you to be an SVP, you would not be released from custody. You would be sent to a treatment program at a state mental hospital for two years. This would be an involuntary commitment to a sex offender treatment program run by the California Department of Mental Health. The commitment can be renewed every two years. If you are currently committed as an SVP, this evaluation may be for the purpose of determining whether you continue to meet the criteria for commitment. The commitment would end and you would be released from the treatment program when the court determines you are no longer likely to commit sexual crimes.

You will be evaluated by two doctors (psychologists or psychiatrists). Their job is to provide an unbiased assessment of your risk to commit future sexual crimes. Both doctors must decide that you meet legal criteria as an SVP for the Department of Mental Health to recommend your commitment to the District Attorney in the county which last sentenced you to prison. If the District Attorney decides not to file the case, you will be paroled, or released from custody. If the District Attorney decides to file a petition for commitment, your case will go to court. A defense attorney would then be appointed to defend you and protect your rights under the law. Based on the outcome of the court proceedings, you may be paroled or committed to the treatment program.

If the two doctors disagree whether you qualify as an SVP, one or two additional doctors will evaluate you. The doctors conduct their evaluations independently, and do not consult with each other while preparing their evaluations.

The evaluation includes review of your records, an interview, and sometimes psychological testing. The interview is voluntary. The doctors will write reports on your case, and may later testify if your case goes to court. Any information you provide during an interview may be used in the doctor's reports and court testimony. If you give any new information about abuse of children or elders that has not been previously reported, the doctors are legally required to report this information to the authorities. If you do not consent to the interview, the evaluation will be completed using only your records.

---

I have been informed about my evaluation as a Sexually Violent Predator and I have been offered a copy of this notification. (check) _____

I   (circle)   **agree**   /   **do not agree**   to be interviewed by Dr. _____

---

_____
Date

_____
Inmate's Signature

_____
Date

_____
Evaluator's Signature

Evaluator: Describe any reasonable accommodation provided to the person being evaluated.

# APPENDIX C

| CLINICAL EVALUATION SUMMARY[1] |
| --- |

## WIC 6600 CIVIL COMMITMENT

## I.    IDENTIFYING INFORMATION

Inmate Name:_____        CDC#_____

## II.    FINDINGS (WIC 6600 criteria)                                    YES        NO

**A.    Has the inmate been convicted of a sexually violent offense against two or more victims?**

Convicted of a qualifying offense(s)?......................................1.    ☐        ☐

Use of force, fear, etc., and/or substantial sexual conduct?.1a.    ☐        ☐

Against two or more victims?..................................................2.    ☐        ☐

**B.    Does the inmate have a diagnosable mental disorder that predisposes person to the commission of criminal sexual acts?**

(If YES, specify)....................4.    ☐        ☐

Axis I    _____
_____
_____

Axis II    _____
_____
_____

**C.    Is the inmate likely to engage in sexually violent predatory criminal behavior as a result of his/her diagnosed mental disorder without appropriate treatment and custody?**

5.    ☐        ☐

## III.    CONCLUSION

Based on the above information, in my opinion the inmate:

☐ MEETS            ☐ DOES NOT MEET

the criteria as a sexually violent predator as described in section 6600(a) of the Welfare and Institutions Code.
(If a NO response is marked for any of the above questions (1-5), then the inmate does not meet criteria)

_____            _____
SIGNATURE                                            DATE

_____            _____
PRINT NAME                                          LICENSE NUMBER

_____
[1] Revised 10/1/02

# APPENDIX D

## REQUIRED FORMAT FOR EXTENSION EVALUATION

### I.  IDENTIFYING INFORMATION:

- Name, DOB, marital status, County of commitment, AT#, CDC#, CII#, initial admission date, initial commitment date, current housing unit.

- Sources of Information – cite sources used in the preparation of the report (including medical, legal, and institutional documents relied upon), patient interview, treatment team input, and psychological testing (if used).

### II.  FINDINGS (WIC 6600 CRITERIA):

#### A.    Sexually Violent Offenses Found to Qualify Under WIC 6600

- Refer to primary sources to the extent possible.
- This section must include the following statement:

"It has been determined by the original committing court that the patient has been convicted of two or more qualifying offenses."

#### B.    Does the patient have a diagnosed mental disorder that predisposes the person to the commission of criminal sexual acts? (Yes or No)

Include a discussion of the following within this section:

- Brief developmental history.
- Relationship history.
- Psychosexual history.
- Criminal history.
  -Include juvenile history, institution adjustment, and behavior on parole/probation.
- Substance abuse history.
- Psychiatric history.
  - Psychiatric history prior to SOCP.
  - **III.**    Treatment Progress in SOCP.
    Include a review of the treatment plan, current and completed groups, medications, behavioral incidents, parole revocation's while in SVP custody, and extent of patient's involvement in treatment, and results of any psychometric testing and phallometric assessment and/or behavioral treatments.  Also provide input from patient's treatment team in this section.
- Mental Status Examination, behavioral observations and attitudes of the inmate.
- Psychiatric diagnosis in list format on AXIS I and AXIS II.
- Explanation of psychiatric diagnosis offered.
- Justification for the psychiatric diagnosis.

**III.    Is the patient likely to engage in sexually violent predatory criminal behavior as a result of his or her diagnosed mental disorder without appropriate treatment and custody?  (Yes/No)**

- Provide Comprehensive Risk Assessment
- Discuss why future sexual offenses are likely to be predatory per WIC 6600(e).
- Explain whether the patient described a plan for voluntary treatment in the community, and how this was considered in the clinical evaluation.

**III.    CONCLUSION:**

"Based on the above information, in my opinion, the patient meets the criteria as a sexually violent predator as described in section 6600(a) of the Welfare and Institutions Code."

Or,

"Based on the above information, in my opinion, the patient does not meet the criteria as a sexually violent predator as described in Section 6600 (a) of the Welfare and Institutions Code."

Signature

# APPENDIX E

### REFERENCES – LITERATURE

American Psychiatric Association. (2000). Diagnostic and Statistical Manual of Mental Disorders. Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association.

Barbaree, H. E., Marshall, W. L.  (1988). Deviant sexual arousal, offense history, and demographic variables as predictors of re-offense among child molesters. Behavioral Sciences and the Law, Vol. 6, 267-280.

Grubin, D. (1998). Sex offending against children: Understanding the risk. Police Research Series Paper 99. London: Home Office.

Hanson, R. K. (1997). The development of a brief actuarial risk scale for sexual offense recidivism. (User Report 97-04). Ottawa: Department of the Solicitor General of Canada.

Hanson, R. K. (1998). What do we know about sex offender risk assessment? Psychology, Public Policy and Law, 4, (1/2), 50-72.

Hanson, R. K. & Bussiere, M. (1998). Predicting relapse: A meta-analysis of sexual offender recidivism studies Journal Of Consulting and Clinical Psychology, 66, 348-362.

Hanson, R. K., & Harris, A. J. R. (2003).  Materials for the dynamic supervision of sexual offenders.  Unpublished assessment materials; Solicitor General Canada. Available by e-mail from the authors: harrisa@sgc.gc.ca

Hanson, R.K., & Morton, K. (In Press), Predictors of Sexual Recidivism: An Updated Meta-Analysis

Hanson, R. K., Scott, H., & Steffy, R. A. (1995). A comparison of child molesters and non-sexual criminals: Risk predictors and long-term recidivism. Journal of Research in Crime and Delinquency, 32(3), 325-337.

Hanson, R. K., Steffy, R. A., & Gauthier, R. (1993a). Long-term recidivism of child molesters. Journal of Consulting and Clinical Psychology, 61, 646-652.

Hanson, R. K., & Thornton, D. (2000). Improving risk assessments for sex offenders: A comparison of three actuarial scales. Law and Human Behavior, 24, (1), 119-136.

Prentky, R. A., Lee, F. S., Knight, R. A., & Cerce, D. (1997). Recidivism rates among child molesters and rapists: A methodological analysis. Law and Human Behavior, 21, (6), 635-659.

Quinsey, V., Rice M., & Harris G. (1995). Actuarial prediction of sexual recidivism. Journal of Interpersonal Violence, 10, (1) 85-105.

Quinsey, V. L., Lalumiere, M. L., Rice, M. E., & Harris, G. T. (1995). Predicting sexual offenses. In J.C. Campbell (Ed.), Assessing dangerousness: Violence by sexual offenders, batterers, and child abuser (pp. 114-137). Thousand Oaks, CA: Sage.

Rice M., Harris G. and Quincey V. (1990). A follow-up of rapists assessed in a maximum security psychiatric facility.  Journal of Interpersonal Violence 5 (4), 435-448.

# APPENDIX F

## REFERENCES – COURT DECISIONS

Cooley v. Superior Court of Los Angeles (Paul Marentez, Real Party in Interest), S094676, November 25th 2002 (29 Cal. 4th 228)

Hubbart v. Superior Court of Santa Clara County (People), S052136, January 21st, 1999 (19 Cal. 4th 1138)

Kansas v. Crane (00-0957, 1/22/2002), Supreme Court of the United States, 534 U.S. 407 (151 L.Ed.2d 856, 122 S. Ct. 867)

People v. Burris, E029416, October 10th, 2002 (102 Cal. App. 4th 1096)

People v. Torres, S079575, May 21st, 2001 (25 Cal. 4th 680)

People v. Superior Court of Marin County (Patrick Ghilotti, Real Party in Interest), S102527, April 25th 2002 (27 Cal. 4th 888)